## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**RICHARD JANIGIAN, JR.** )
by his attorney-in-fact, )
**PAUL JANIGIAN** )
8007 Carroll Avenue )
Takoma Park, Maryland 20912 )
)
   -and- )    Civil No. _____
)
**LINDA ANDERSON** )
by her conservator, )
**KATHY MANCUSI** )
4423 Lehigh Road, #433 )
College Park, Maryland 20740 )
)
      on behalf of themselves and )
      all others similarly situated, )
)
        Plaintiffs )
)
   v. )
)
**GREGORY A. PAYNE** )
in his capacity as Director of the )
Department of Health for the )
District of Columbia )
825 North Capital Street, N.E. )
Washington, D.C. 20002, )
)
**ROBERT COSBY** )
in his capacity as Director of the )
Medical Assistance Administration )
for the District of Columbia )
825 North Capital Street, N.E. )
5th Floor )
Washington, D.C. 20002, )
)
**KATE JESBERG** )
in her capacity as Interim Director )
of the Department of Human Services )
for the District of Columbia )
64 New York Avenue, N.E., 6th Floor )
Washington, D.C. 20002, )
)

**SHARON COOPER-DELOATCH**
in her capacity as Acting Administrator
of the Income Maintenance Administration
for the District of Columbia
645 H Street, N.E.
Washington, D.C. 20002,

**THE DISTRICT OF COLUMBIA**
c/o Attorney General for the
District of Columbia
John A. Wilson Building
1350 Pennsylvania Avenue, N.W.
Washington, D.C. 20004,

    -and-

**MAYOR OF THE DISTRICT OF COLUMBIA**
John Wilson Building
1350 Pennsylvania Avenue, N.W.
#419
Washington, D.C. 20004

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## CLASS ACTION COMPLAINT FOR RESTITUTION, DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    This is an action for injunctive and declaratory relief to establish that a policy of the Defendants, the District of Columbia and the Directors of the District's Departments of Health and of Human Services (and their subordinates), and the implementation of that policy, violate the federal Medicaid statute, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.* and D.C. law. Plaintiffs also seek restitution for monies wrongfully paid to Defendants. Defendants have refused fully to honor and implement the requirements of Federal and D.C. law that medical expenses (including nursing home charges) incurred before an individual becomes eligible for Medicaid benefits be deducted from the

2

individual's income in determining how much the individual must pay for his or her care as a beneficiary of the Medicaid long-term care program. As a result, the District of Columbia, acting through its co-Defendants, has failed to pay for badly needed nursing home care for hundreds or thousands of medically needy District of Columbia Medicaid recipients. The named Plaintiffs were residents in District of Columbia nursing home facilities. They bring this action on behalf of hundreds or thousands of D.C. residents who have been harmed by Defendants' actions.

## JURISDICTION AND VENUE

2.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and this Court has supplemental jurisdiction over Counts II and III under 28 U.S.C. § 1367. Venue is appropriate in this District because a substantial part of the events or omissions giving rise to the claim occurred here. All defendants are subject to personal jurisdiction in this District because they carry out their business here.

## PARTIES

3.    Plaintiff Richard Janigian, Jr., aged 77, was admitted to the Washington Home and Hospice, a nursing facility in Washington, D.C., on or about August 16, 2005, and resided there until December 2006. He brings this action by his attorney-in-fact, his brother, Paul Janigian, who was appointed by a General Durable Power of Attorney dated February 4, 2002.

4.    Plaintiff Linda Anderson, aged 54, was admitted to Grant Park Care Center ("Grant Park"), a nursing facility in Washington, D.C., on or about February 20, 2006, and resided there until February 2007. She brings this action by her conservator, Kathy

3

Mancusi, who was appointed by the Probate Division of the Superior Court for the District of Columbia.

5.     Defendant Gregory A. Payne is the Director of the District's Department of Health.    As such, he and co-Defendant Robert Cosby (director of D.C.'s Medical Assistance Administration) are responsible for implementation of the Medicaid program, which provides nursing home and other medical care to District residents who are medically needy.  These Defendants are responsible for the administration of the D.C. Medicaid program and its compliance with Federal law.

6.     Defendant Brian Wilbon is the Interim Director of the District's Department of Human Services.  As such, he and co-Defendant Sharon Cooper-DeLoatch (the Acting Administrator of the District's Income Maintenance Administration) are responsible for the application of federal and D.C. rules concerning financial eligibility of District residents for the Medicaid program, including Medicaid beneficiaries' own financial contribution to the cost of their nursing home care, which is the subject of this lawsuit.

7.     Defendant, The Mayor of the District of Columbia, is an elected representative of the District.  He is sued in his official capacity.

8.     Defendant, the District of Columbia, is a government unit responsible for creating and implementing a Medicaid program that complies with federal regulations.

## CLASS ACTION ALLEGATIONS

9.     This action is brought as a class action pursuant to Rules 23(a), 23(b)(1), and 23(b)(2), Fed. R. Civ. P., on behalf of a class consisting of all persons who are now, have been during the three years prior to filing of this complaint, or may in the future be recipients of Medicaid long-term care benefits in the District of Columbia based on their

4

being aged, blind or disabled, and who had or have incurred medical expenses, including nursing home charges, prior to the first day upon which they become eligible for Medicaid long-term care benefits.

10.    The class is so numerous that joinder of all members as individuals is impracticable.  On information and belief, there are hundreds or thousands of District of Columbia Medicaid recipients who are or have been nursing home residents and would receive relief as class members, either directly or through their estates.

11.    There are questions of law or fact common to the class.  One example is whether the District may limit what it deducts from income, in determining a resident's "cost of care" obligation, to exclude medical expenses incurred prior to the resident's Medical eligibility.

12.    The claims of the representative parties are typical of the claims of the class, and the representative parties will fairly and adequately protect the interests of the class.

13.    The representative party Plaintiffs are members of the class, and there is no conflict of interest among members of the proposed class; all class members would benefit from the relief sought herein.

14.    Plaintiffs are represented by counsel experienced in class action litigation, litigation under 42 U.S.C. §1983, litigation involving Medicaid eligibility in the State and Federal courts, and the specific question of the pre-eligibility medical expense deduction for determining cost-of-care for Medicaid nursing home beneficiaries.

5

15.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(2), because Defendants have acted or refused to act on grounds generally applicable to the class, making final injunctive relief or corresponding declaratory relief appropriate for the class as a whole.  In addition, certification is appropriate under Rule 23(b)(1) because the class seeks declaratory and injunctive relief, and the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications for individual class members and would establish incompatible standards of conduct for the parties opposing the class.

## STATEMENT OF FACTS

16.    Medicaid is a joint Federal-State program by which the Federal government subsidizes State programs providing medical benefits for residents of participating States, which for this purpose includes the District of Columbia.  Each participating State may determine how financial eligibility for the program will be administered within that State. Those eligibility requirements must be incorporated in a separate document called the State Plan.  The State Plan for each State is then submitted to a federal agency, the Centers for Medicare and Medicaid Services ("CMS"), for review for compliance with Federal law.  Once a State establishes a Medicaid program, a condition of continuing Federal subsidy is that the State operate its Medicaid program in compliance with Federal law and regulations.

17.    The District has chosen to operate a Medicaid program.  As required by federal law, the District has prepared a State Plan submitted for approval by CMS.  Under D.C. Code § 1-307.02 (previously D.C. Code § 1-359), the Mayor is also required to submit

the District's State Plan "and any modifications of the plan" to the Council of the District of Columbia for approval. If the D.C. Council fails to act within 30 days, then the State Plan or the proposed amendment is deemed approved. Accordingly, every provision of the District's State Plan is an affirmative provision of D.C. law, such that the District's Medicaid beneficiaries may rely upon those laws and seek their judicial enforcement.

18.    Under its State Plan, the District has elected to provide benefits to aged, blind and disabled individuals who are "medically needy," that is, who meet all of the requirements for Medicaid benefits except for income, but whose income is not sufficient to cover their medical costs. The District's Medicaid program provides long-term care (*i.e.*, nursing home) benefits when an individual's income is insufficient to pay for the cost of his or her own care and when all of the other eligibility requirements are met. Those other requirements include having no more than $2,600 in non-exempt assets and requiring a nursing home level of care.

19.    District residents seeking long-term care benefits apply to the D.C. Department of Human Services, whose staff is supposed to apply the rules set forth in federal law, using the guidance provided in the D.C. Income Maintenance Administration Manual (the "*Eligibility Manual*"), a document issued by the Income Maintenance Administration and revised from time to time. The Department of Human Services first determines whether an applicant meets the Medicaid financial eligibility requirements, and then obtains from a private agency (under contract with the Medicaid program) a determination of whether the individual requires a nursing home level of care. If the individual both (1) requires nursing home care, and (2) is financially eligible, the

7

Department of Human Services then determines how much of the recipient's personal income he or she is required to pay for the cost of care. This is known as the recipient's "cost of care," and is similar in effect and intent to a co-payment. The nursing home is expected to collect that amount from the resident, and to bill the Medicaid program for the difference between that amount and the amount it agreed to accept for providing services to Medicaid beneficiaries.

20.    To determine how much of a person's income must be paid toward the cost of care, the District's Medicaid program is required by federal law to deduct from the beneficiary's income the following:  premiums for Medicare and other health insurance; a personal needs allowance (set by the District at \$70 per month); and incurred medical and remedial expenses "not covered" by the Medicaid program.  42 U.S.C. § 1396a(r)(1)(a)(ii). Federal law has long provided that medical and remedial services received by a Medicaid patient before the patient became financially eligible for the program are "not covered," and therefore must be deducted from current income.  State Medicaid programs may limit that liability (and thus the amount of the deduction from recipient income), but only by "reasonable limits" set out in their State Plans.

21.    The District's State Plan does not include a provision identifying any "reasonable limits" which the District places on the deduction of expenses "not covered" by Medicaid.  Thus, under D.C. law, all uncovered expenses, and therefore all pre-eligibility expenses, must be deducted to calculate each beneficiary's cost of care.

8

22. Ignoring the requirements of both federal and D.C. law, however, the District's Medicaid program has long failed, as a matter of policy and practice, to allow a deduction for *any* medical expenses incurred before the recipient became eligible for Medicaid. Thus, the exhaustion of remedies for any individual case would be futile in light of this longstanding policy and practice.

23. By way of illustration, plaintiff Richard Janigian was admitted to the Washington Home and Hospice on August 16, 2005. However, the first full month for which he was found eligible for benefits was December 2005, by notice dated January 27, 2006. By then, Mr. Janigian had already been a nursing home resident for more than four months and had incurred unpaid bills as a result. As reflected in a January 27, 2006 notice, the D.C. Medicaid office determined that he had gross income of $3,217.50 per month from Social Security and a pension. In determining how much Mr. Janigian was required to pay for the cost of his care, the District deducted his personal needs allowance of $70, his Federal employee health benefits premium of $109.87, and a Medicare Part B premium of $77.50, leaving him with a December 2005 "cost of care" obligation of $2,960.13. This calculation made no allowance for Mr. Janigian's pre-eligibility medical expenses.

24. On or about July 24, 2006, a representative of Mr. Janigian wrote to the D.C. Medicaid long-term care unit to advise it that before becoming eligible for Medicaid, Mr. Janigian had incurred unpaid nursing home bills, and asked that his cost of care be re-calculated to allow him to pay these bills, as provided by the Eligibility Manual, Part VI, § 7.4 and by federal law. The attached October 31, 2005, nursing home bill showed

9

unpaid charges of $15,445.11, including anticipated standard room and board charges for November 2005.

25.     To comply with federal law, the District was obligated to set off Mr. Janigian's $15,445.11 pre-eligibility medical expense against his monthly cost of care obligation, and to do so each month until those expenses were exhausted.  In December 2005, for example, $2,960.13 of the unpaid expense should have been credited against his cost of care, leaving an obligation of zero.  In the following months, the remaining $12,484.98 of expense ($15,445.11 minus $2,960.13) should have been subtracted each month until that pre-eligibility expense was exhausted.

26.     As of the date of filing, however, the District has taken no action on Mr. Janigian's request for an appropriate deduction in the amount required by law.

27.     Similarly, class representative Linda Anderson had been a resident of Clinton Nursing Home, Clinton, Maryland, from October 5, 2004 to July 3, 2005, where most but not all of the cost of her care was paid for by the Maryland Medicaid program.  When she first qualified for Medicaid benefits in Maryland effective February 1, 2005, she had incurred unpaid medical expenses (primarily nursing home charges) of $14,949.97.  On May 25, 2006, Kathy Mancusi, Mrs. Anderson's conservator (through a representative), asked that the Maryland Medicaid program deduct that expense from her income in determining her cost of care there, applying the pre-eligibility medical expense deduction required by Federal law at issue here, and partly complied with by the State of Maryland. On July 17, 2006, the Maryland Medicaid program representative confirmed that Maryland

10

would deduct the incurred medical expenses against Mrs. Anderson's income, *pro tanto*. However, that left Mrs. Anderson with an unpaid nursing home bill as of the time she first qualified for D.C. Medicaid benefits of $6,415.31.

28.    Mrs. Anderson was discharged from Clinton Nursing Home on July 3, 2005, and was transferred to MedLink Nursing Home; she was subsequently hospitalized at the Washington Hospital Center in November, 2005, and remained there until she was admitted to Grant Park on or about February 20, 2006. Medicare covered part of her post-hospitalization nursing home bill through March 31, 2006. Grant Park applied for benefits in March 2006, and on June 8, 2006, the District advised Ms. Mancusi, as Mrs. Anderson's representative, that her cost of care for the month of March 2006 was $1,349.26. As with Mr. Janigian, the cost of care was determined by taking Mrs. Anderson's gross income and deducting her personal needs allowance and health insurance premiums, with no allowance for her pre-eligibility medical expenses. Instead, Mrs. Anderson's cost of care for March 2006 should have been reduced to zero, and the remaining $5,066.05 of expense ($6,415.31 minus $1,349.26) should have been subtracted in each successive month until that pre-eligibility expense was exhausted.

29.    On July 10, 2006, a representative of Mrs. Anderson wrote to the D.C. Medicaid long-term care unit to advise it that she had incurred but unpaid nursing home bills of $6,415.31 and to ask that her cost of care amount be re-calculated to allow her to pay those bills, as provided by the Eligibility Manual, Part VI, § 7.4, and by federal law. As

11

of the date of filing, however, the District has taken no action on Mrs. Anderson's request for an appropriate deduction in the amount required by law.

30.    On information and belief, other class members, similarly situated, have suffered the same or similar wrongful and illegal denials of benefits.

31.    Each member of the class is, or was at one time, a beneficiary of the District's Medicaid program and was entitled to, and was in fact receiving, long-term care benefits. Each member of the class, on the first day of the month he or she applied for benefits, had incurred medical expenses, including nursing home charges, that he or she was unable to pay out of his or her income at that time. Each member of the class, either at the time the application was submitted, or subsequently, was entitled to have the Department of Human Services deduct from current income the amount of pre-eligibility medical expenses so that amount could be applied to the outstanding debt. In each case, Defendants have refused to deduct some or all of that debt from current income.

## Count I

## (42 U.S.C. § 1983)

32.    Plaintiffs repeat the allegations in paragraphs 1-29 as if fully set forth herein.

33.    By virtue of the foregoing, Defendants have violated and are violating 42 U.S.C. § 1396a(r)(1)(A)(ii), by failing to deduct for necessary medical care recognized under District of Columbia law, not subject to payment by a third party, but not covered by the District's State Plan because the expenses were incurred prior to eligibility, and for

12

which the District did not have limits set out in its State Plan, for which relief is available under 42 U.S.C. § 1983.

## Count II

### (D.C. Medicaid State Plan)

34.    Plaintiffs repeat the allegations in paragraphs 1 – 29 as if fully set forth herein.

35.    By virtue of the foregoing, Defendants have violated and are violating the requirements of D.C. law as set forth in the District's State Plan, by failing to deduct for necessary medical care recognized under District of Columbia law, not subject to payment by a third party, and not covered by the District's State Plan because the expenses were incurred prior to eligibility, for which relief is available under D.C. law.

## Count III

### (Unjust Enrichment)

36.    Plaintiffs repeat the allegations in paragraphs 1 – 29 as if fully set forth herein.

37.    As a result of their wrongful conduct, Defendants were unjustly enriched at the expense of Plaintiffs, because Defendants have paid less towards Plaintiffs' nursing home care than required by law.

38.    Under the circumstances, Defendants should not in good faith be permitted to retain these monies, and should make restitution to Plaintiffs.

13

WHEREFORE, Plaintiffs pray for judgment:

1.      Declaring that Defendants' practice of denying deductions for pre-eligibility medical expenses is illegal, null and void;

2.      Declaring that any determinations that Plaintiffs (and all class members) are liable for current cost of care obligations without deduction for medical expenses incurred prior to eligibility are illegal, null and void;

3.      Ordering and enjoining Defendants to rescind all determinations of eligibility that failed to deduct pre-eligibility medical expenses for Plaintiffs and ordering Defendants to issue determinations of eligibility reflecting such deductions, and further ordering and enjoining Defendants to recalculate Medicaid cost of care obligations for class members denied deduction of pre-eligibility medical expenses, retroactive to the dates they would otherwise have been eligible for same but for the policies challenged herein;

4.      Awarding restitution to Plaintiffs of all sums wrongfully paid to Defendants; and

14

5.    Awarding Plaintiffs such other and further relief as seems proper and just,

including costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.


Dated:  March 16, 2007                    _____
                                          Cyril V. Smith
                                          D.C. Bar No. 413941
                                          ZUCKERMAN SPAEDER LLP
                                          100 East Pratt Street, Suite 2440
                                          Baltimore, Maryland 21202
                                          (410) 332-0444
                                          (Fax) (410) 659-0436
                                          csmith@zuckerman.com


                                          _____
                                          Carlos T. Angulo
                                          D.C. Bar No. 446639
                                          ZUCKERMAN SPAEDER LLP
                                          1800 M Street, N.W., Suite 1000
                                          Washington, D.C. 20036-5802
                                          (202) 778-1800
                                          (Fax) (202) 822-8106
                                          cangulo@zuckerman.com


                                          _____
                                          Ron M. Landsman
                                          D.C. Bar No. 209452
                                          RON M. LANDSMAN, P.A.
                                          200-A Monroe Street, Suite 110
                                          Rockville, Maryland 20850-4412
                                          (240) 403-4300, ext. 101
                                          (Fax) (240) 403-4301
                                          RML@ronmlandsman.com

15

_René Reixach / ITR_

René H. Reixach
WOODS OVIATT GILMAN LLP
700 Crossroad Building
2 State St.
Rochester, New York 14614
(585) 987-2858
Fax:  (585) 987-2958
Rreixach@WoodsOviatt.Com

*Attorneys for Plaintiffs*

16

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Richard Janigian, Jr. and Linda Anderson | Gregory A. Payne, Robert Cosby, Kate Jesberg, Sharon Cooper-Deloatch, The District of Columbia |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)  11001<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Cyril V. Smith<br>Zuckerman Spaeder LLP<br>100 East Pratt Street, Suite 2440<br>Baltimore, Maryland 21202<br>(410) 332-0444 | |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ◉ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

- ○ A. *Antitrust*
  - ☐ 410 Antitrust

- ○ B. *Personal Injury/ Malpractice*
  - ☐ 310 Airplane
  - ☐ 315 Airplane Product Liability
  - ☐ 320 Assault, Libel & Slander
  - ☐ 330 Federal Employers Liability
  - ☐ 340 Marine
  - ☐ 345 Marine Product Liability
  - ☐ 350 Motor Vehicle
  - ☐ 355 Motor Vehicle Product Liability
  - ☐ 360 Other Personal Injury
  - ☐ 362 Medical Malpractice
  - ☐ 365 Product Liability
  - ☐ 368 Asbestos Product Liability

- ○ C. *Administrative Agency Review*
  - ☐ 151 Medicare Act
  - **Social Security:**
  - ☐ 861 HIA ((1395ff)
  - ☐ 862 Black Lung (923)
  - ☐ 863 DIWC/DIWW (405(g)
  - ☐ 864 SSID Title XVI
  - ☐ 865 RSI (405(g)
  - **Other Statutes**
  - ☐ 891 Agricultural Acts
  - ☐ 892 Economic Stabilization Act
  - ☐ 893 Environmental Matters
  - ☐ 894 Energy Allocation Act
  - ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

- ○ D. *Temporary Restraining Order/Preliminary Injunction*
  - Any nature of suit from any category may be selected for this category of case assignment.
  - *(If Antitrust, then A governs)*

- ○ E. *General Civil (Other)*   OR   ○ F. *Pro Se General Civil*

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General**<br>☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895 Freedom of Information Act**<br>☐ **890 Other Statutory Actions** (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans (excluding veterans)** |

| ○ **K. Labor/ERISA (non-employment)** | ⊗ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act**<br>☐ **720 Labor/Mgmt. Relations**<br>☐ **730 Labor/Mgmt. Reporting & Disclosure Act**<br>☐ **740 Labor Railway Act**<br>☐ **790 Other Labor Litigation**<br>☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)**<br>☐ **443 Housing/Accommodations**<br>☐ **444 Welfare**<br>☒ **440 Other Civil Rights**<br>☐ **445 American w/Disabilities- Employment**<br>☐ **446 Americans w/Disabilities- Other** | ☐ **110 Insurance**<br>☐ **120 Marine**<br>☐ **130 Miller Act**<br>☐ **140 Negotiable Instrument**<br>☐ **150 Recovery of Overpayment & Enforcement of Judgment**<br>☐ **153 Recovery of Overpayment of Veteran's Benefits**<br>☐ **160 Stockholder's Suits**<br>☐ **190 Other Contracts**<br>☐ **195 Contract Product Liability**<br>☐ **196 Franchise** | ☐ **441 Civil Rights-Voting (if Voting Rights Act)** |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

42 USC Section 1983, pendent state claims.  Class action alleging District of Columbia's violation of federal Medicaid law and D.C. law.

**VII. REQUESTED IN COMPLAINT**  ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  **DEMAND $** unspecified  Check YES only if demanded in complaint  **JURY DEMAND:**  YES ☐  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☐  If yes, please complete related case form.

DATE 3/16/07  SIGNATURE OF ATTORNEY OF RECORD  _Cyril V Smile_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed _only_ if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the _primary_ cause of action found in your complaint. You may select only _one_ category. You _must_ also select _one_ corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.