## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RICHARD JANIGIAN, JR.**<br>by his attorney-in-fact,<br>**PAUL JANIGIAN**<br>8007 Carroll Avenue<br>Takoma Park, Maryland 20912<br><br>  -and-<br><br>**LINDA ANDERSON**<br>by her conservator,<br>**KATHY MANCUSI**<br>4423 Lehigh Road, #433<br>College Park, Maryland 20740<br><br>        on behalf of themselves and<br>        all others similarly situated,<br><br>        Plaintiffs<br><br>   v.<br><br>**GREGG A. PANE**<br>in his capacity as Director of the<br>Department of Health for the<br>District of Columbia<br>825 North Capital Street, N.E.<br>Washington, D.C. 20002,<br><br>**ROBERT COSBY**<br>in his capacity as Director of the<br>Medical Assistance Administration<br>for the District of Columbia<br>825 North Capital Street, N.E.<br>5th Floor<br>Washington, D.C. 20002,<br><br>**BRIAN WILBON**<br>in his capacity as Interim Director<br>of the Department of Human Services<br>for the District of Columbia<br>64 New York Avenue, N.E.<br>6th Floor | Civil Action No. 1:07-cv-00508<br>Judge Paul L. Friedman<br>Next Event:  06/08/07<br>(Defendants' Answer) |

Washington, D.C. 20002,                          )
                                                 )
**SHARON COOPER-DELOATCH**                       )
in her capacity as Acting Administrator          )
of the Income Maintenance Administration         )
for the District of Columbia                     )
645 H Street, N.E.                               )
Washington, D.C. 20002,                          )
                                                 )
    -and-                                        )
                                                 )
**THE DISTRICT OF COLUMBIA**                     )
c/o Attorney General for the                     )
District of Columbia                             )
John A. Wilson Building                          )
1350 Pennsylvania Avenue, N.W.                   )
Washington, D.C. 20004,                          )
                                                 )
                Defendants.                      )
_____ )

## FIRST AMENDED CLASS ACTION COMPLAINT FOR
## RESTITUTION, DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    This is an action for injunctive and declaratory relief to establish that a policy

of the Defendants, the District of Columbia and the Directors of the District's Departments

of Health and of Human Services (and their subordinates), and the implementation of that

policy, violate the federal Medicaid statute, Title XIX of the Social Security Act, 42 U.S.C.

§§ 1396, *et seq.* and D.C. law.  Plaintiffs also seek restitution for monies wrongfully paid to

Defendants.  Defendants have refused fully to honor and implement the requirements of

Federal and D.C. law that medical expenses (including nursing home charges) incurred

before an individual becomes eligible for Medicaid benefits be deducted from the

individual's income in determining how much the individual must pay for his or her care as

2

a beneficiary of the Medicaid long-term care program. As a result, the District of Columbia,

acting through its co-Defendants, has failed to pay for badly needed nursing home care for

hundreds or thousands of medically needy District of Columbia Medicaid recipients. The

named Plaintiffs were residents in District of Columbia nursing home facilities. They bring

this action on behalf of hundreds or thousands of D.C. residents who have been harmed by

Defendants' actions.

### JURISDICTION AND VENUE

2.    This Court has subject-matter jurisdiction over this action pursuant to 28

U.S.C. §§ 1331 and 1343, and this Court has supplemental jurisdiction over Counts II and

III under 28 U.S.C. § 1367. Venue is appropriate in this District because a substantial part

of the events or omissions giving rise to the claim occurred here. All defendants are

subject to personal jurisdiction in this District because they carry out their business here.

### PARTIES

3.    Plaintiff Richard Janigian, Jr., aged 77, was admitted to the Washington

Home and Hospice, a nursing facility in Washington, D.C., on or about August 16, 2005,

and resided there until December 2006. He brings this action by his attorney-in-fact, his

brother, Paul Janigian, who was appointed by a General Durable Power of Attorney dated

February 4, 2002.

4.    Plaintiff Linda Anderson, aged 54, was admitted to Grant Park Care Center

("Grant Park"), a nursing facility in Washington, D.C., on or about February 20, 2006, and

resided there until February 2007. She brings this action by her conservator, Kathy

3

Mancusi, who was appointed by the Probate Division of the Superior Court for the District of Columbia.

5.     Defendant Gregg A. Pane is the Director of the District's Department of Health.   As such, he and co-Defendant Robert Cosby (director of D.C.'s Medical Assistance Administration) are responsible for implementation of the Medicaid program, which provides nursing home and other medical care to District residents who are medically needy.  These Defendants are responsible for the administration of the D.C. Medicaid program and its compliance with Federal law.

6.     Defendant Brian Wilbon is the Interim Director of the District's Department of Human Services.  As such, he and co-Defendant Sharon Cooper-DeLoatch (the Acting Administrator of the District's Income Maintenance Administration) are responsible for the application of federal and D.C. rules concerning financial eligibility of District residents for the Medicaid program, including Medicaid beneficiaries' own financial contribution to the cost of their nursing home care, which is the subject of this lawsuit.

7.     Defendant, the District of Columbia, is a government unit responsible for creating and implementing a Medicaid program that complies with federal regulations.

## CLASS ACTION ALLEGATIONS

8.     This action is brought as a class action pursuant to Rules 23(a), 23(b)(1), and 23(b)(2), Fed. R. Civ. P., on behalf of a class consisting of all persons who are now, have been during the three years prior to filing of this complaint, or may in the future be recipients of Medicaid long-term care benefits in the District of Columbia based on their being aged, blind or disabled, and who had or have incurred medical expenses, including

4

nursing home charges, prior to the first day upon which they become eligible for Medicaid long-term care benefits.

9.     The class is so numerous that joinder of all members as individuals is impracticable.  On information and belief, there are hundreds or thousands of District of Columbia Medicaid recipients who are or have been nursing home residents and would receive relief as class members, either directly or through their estates.

10.     There are questions of law or fact common to the class.  One example is whether the District may limit what it deducts from income, in determining a resident's "cost of care" obligation, to exclude medical expenses incurred prior to the resident's Medical eligibility.

11.     The claims of the representative parties are typical of the claims of the class, and the representative parties will fairly and adequately protect the interests of the class.

12.     The representative party Plaintiffs are members of the class, and there is no conflict of interest among members of the proposed class; all class members would benefit from the relief sought herein.

13.     Plaintiffs are represented by counsel experienced in class action litigation, litigation under 42 U.S.C. §1983, litigation involving Medicaid eligibility in the State and Federal courts, and the specific question of the pre-eligibility medical expense deduction for determining cost-of-care for Medicaid nursing home beneficiaries.

14.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2), because Defendants have acted or refused to act on grounds generally applicable to the class, making final injunctive relief or corresponding declaratory relief appropriate for the class as

5

a whole. In addition, certification is appropriate under Rule 23(b)(1) because the class seeks declaratory and injunctive relief, and the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications for individual class members and would establish incompatible standards of conduct for the parties opposing the class.

## STATEMENT OF FACTS

15.     Medicaid is a joint Federal-State program by which the Federal government subsidizes State programs providing medical benefits for residents of participating States, which for this purpose includes the District of Columbia. Each participating State may determine how financial eligibility for the program will be administered within that State. Those eligibility requirements must be incorporated in a separate document called the State Plan. The State Plan for each State is then submitted to a federal agency, the Centers for Medicare and Medicaid Services ("CMS"), for review for compliance with Federal law. Once a State establishes a Medicaid program, a condition of continuing Federal subsidy is that the State operate its Medicaid program in compliance with Federal law and regulations.

16.     The District has chosen to operate a Medicaid program. As required by federal law, the District has prepared a State Plan submitted for approval by CMS. Under D.C. Code § 1-307.02 (previously D.C. Code § 1-359), the Mayor is also required to submit the District's State Plan "and any modifications of the plan" to the Council of the District of Columbia for approval. If the D.C. Council fails to act within 30 days, then the State Plan or the proposed amendment is deemed approved. Accordingly, every provision of the

District's State Plan is an affirmative provision of D.C. law, such that the District's Medicaid beneficiaries may rely upon those laws and seek their judicial enforcement.

17.    Under its State Plan, the District has elected to provide benefits to aged, blind and disabled individuals who are "medically needy," that is, who meet all of the requirements for Medicaid benefits except for income, but whose income is not sufficient to cover their medical costs.  The District's Medicaid program provides long-term care (*i.e.*, nursing home) benefits when an individual's income is insufficient to pay for the cost of his or her own care and when all of the other eligibility requirements are met.  Those other requirements include having no more than $2,600 in non-exempt assets and requiring a nursing home level of care.

18.    District residents seeking long-term care benefits apply to the D.C. Department of Human Services, whose staff is supposed to apply the rules set forth in federal law, using the guidance provided in the D.C. Income Maintenance Administration Manual (the *"Eligibility Manual"*), a document issued by the Income Maintenance Administration and revised from time to time.  The Department of Human Services first determines whether an applicant meets the Medicaid financial eligibility requirements, and then obtains from a private agency (under contract with the Medicaid program) a determination of whether the individual requires a nursing home level of care.  If the individual both (1) requires nursing home care, and (2) is financially eligible, the Department of Human Services then determines how much of the recipient's personal income he or she is required to pay for the cost of care.  This is known as the recipient's "cost of care," and is similar in effect and intent to a co-payment.  The nursing home is

7

expected to collect that amount from the resident, and to bill the Medicaid program for the difference between that amount and the amount it agreed to accept for providing services to Medicaid beneficiaries.

19.     To determine how much of a person's income must be paid toward the cost of care, the District's Medicaid program is required by federal law to deduct from the beneficiary's income the following:  premiums for Medicare and other health insurance; a personal needs allowance (set by the District at $70 per month); and incurred medical and remedial expenses "not covered" by the Medicaid program.  42 U.S.C. § 1396a(r)(1)(a)(ii). Federal law has long provided that medical and remedial services received by a Medicaid patient before the patient became financially eligible for the program are "not covered," and therefore must be deducted from current income.  State Medicaid programs may limit that liability (and thus the amount of the deduction from recipient income), but only by "reasonable limits" set out in their State Plans.

20.     The District's State Plan does not include a provision identifying any "reasonable limits" which the District places on the deduction of expenses "not covered" by Medicaid.  Thus, under D.C. law, all uncovered expenses, and therefore all pre-eligibility expenses, must be deducted to calculate each beneficiary's cost of care.

21.     Ignoring the requirements of both federal and D.C. law, however, the District's Medicaid program has long failed, as a matter of policy and practice, to allow a deduction for any medical expense incurred before the recipient became eligible for Medicaid.  Thus, the exhaustion of remedies for any individual case would be futile in light of this longstanding policy and practice.

8

22.    By way of illustration, plaintiff Richard Janigian was admitted to the Washington Home and Hospice on August 16, 2005. However, the first full month for which he was found eligible for benefits was December 2005, by notice dated January 27, 2006. By then, Mr. Janigian had already been a nursing home resident for more than four months and had incurred unpaid bills as a result. As reflected in a January 27, 2006 notice, the D.C. Medicaid office determined that he had gross income of $3,217.50 per month from Social Security and a pension. In determining how much Mr. Janigian was required to pay for the cost of his care, the District deducted his personal needs allowance of $70, his Federal employee health benefits premium of $109.87, and a Medicare Part B premium of $77.50, leaving him with a December 2005 "cost of care" obligation of $2,960.13. This calculation made no allowance for Mr. Janigian's pre-eligibility medical expenses.

23.    On or about July 24, 2006, a representative of Mr. Janigian wrote to the D.C. Medicaid long-term care unit to advise it that before becoming eligible for Medicaid, Mr. Janigian had incurred unpaid nursing home bills, and asked that his cost of care be re-calculated to allow him to pay these bills, as provided by the Eligibility Manual, Part VI, § 7.4 and by federal law. The attached October 31, 2005, nursing home bill showed unpaid charges of $15,445.11, including anticipated standard room and board charges for November 2005.

24.    To comply with federal law, the District was obligated to set off Mr. Janigian's $15,445.11 pre-eligibility medical expense against his monthly cost of care obligation, and to do so each month until those expenses were exhausted. In December 2005, for

9

example, $2,960.13 of the unpaid expense should have been credited against his cost of care, leaving an obligation of zero. In the following months, the remaining $12,484.98 of expense ($15,445.11 minus $2,960.13) should have been subtracted each month until that pre-eligibility expense was exhausted.

25.    As of the date of filing the complaint in March 2007, however, the District had taken no action on Mr. Janigian's request for an appropriate deduction in the amount required by law.

26.    Similarly, class representative Linda Anderson had been a resident of Clinton Nursing Home, Clinton, Maryland, from October 5, 2004 to July 3, 2005, where most but not all of the cost of her care was paid for by the Maryland Medicaid program. When she first qualified for Medicaid benefits in Maryland effective February 1, 2005, she had incurred unpaid medical expenses (primarily nursing home charges) of $14,949.97. On May 25, 2006, Kathy Mancusi, Mrs. Anderson's conservator (through a representative), asked that the Maryland Medicaid program deduct that expense from her income in determining her cost of care there, applying the pre-eligibility medical expense deduction required by Federal law at issue here, and partly complied with by the State of Maryland. On July 17, 2006, the Maryland Medicaid program representative confirmed that Maryland would  deduct the incurred medical expenses against Mrs. Anderson's income, *pro tanto*. However, that left Mrs. Anderson with an unpaid nursing home bill as of the time she first qualified for D.C. Medicaid benefits of $6,415.31.

27.    Mrs. Anderson was discharged from Clinton Nursing Home on July 3, 2005, and was transferred to MedLink Nursing Home; she was subsequently hospitalized at the

Washington Hospital Center in November, 2005, and remained there until she was admitted to Grant Park on or about February 20, 2006. Medicare covered part of her post-hospitalization nursing home bill through March 31, 2006. Grant Park applied for benefits in March 2006, and on June 8, 2006, the District advised Ms. Mancusi, as Mrs. Anderson's representative, that her cost of care for the month of March 2006 was $1,349.26. As with Mr. Janigian, the cost of care was determined by taking Mrs. Anderson's gross income and deducting her personal needs allowance and health insurance premiums, with no allowance for her pre-eligibility medical expenses. Instead, Mrs. Anderson's cost of care for March 2006 should have been reduced to zero, and the remaining $5,066.05 of expense ($6,415.31 minus $1,349.26) should have been subtracted in each successive month until that pre-eligibility expense was exhausted.

28.    On July 10, 2006, a representative of Mrs. Anderson wrote to the D.C. Medicaid long-term care unit to advise it that she had incurred but unpaid nursing home bills of $6,415.31 and to ask that her cost of care amount be re-calculated to allow her to pay those bills, as provided by the Eligibility Manual, Part VI, § 7.4, and by federal law. As of the date of filing of the complaint in March 2007, however, the District had taken no action on Mrs. Anderson's request for an appropriate deduction in the amount required by law.

29.    On information and belief, other class members, similarly situated, have suffered the same or similar wrongful and illegal denials of benefits.

30.    Each member of the class is, or was at one time, a beneficiary of the District's Medicaid program and was entitled to, and was in fact receiving, long-term care benefits.

11

Each member of the class, on the first day of the month he or she applied for benefits, had incurred medical expenses, including nursing home charges, that he or she was unable to pay out of his or her income at that time. Each member of the class, either at the time the application was submitted, or subsequently, was entitled to have the Department of Human Services deduct from current income the amount of pre-eligibility medical expenses so that amount could be applied to the outstanding debt. In each case, Defendants have refused to deduct some or all of that debt from current income.

## Count I

## (42 U.S.C. § 1983)

31.   Plaintiffs repeat the allegations in paragraphs 1-30 as if fully set forth herein.

32.   By virtue of the foregoing, Defendants have violated and are violating 42 U.S.C. § 1396a(r)(1)(A)(ii), by failing to deduct for necessary medical care recognized under District of Columbia law, not subject to payment by a third party, but not covered by the District's State Plan because the expenses were incurred prior to eligibility, and for which the District did not have limits set out in its State Plan, for which relief is available under 42 U.S.C. § 1983.

## Count II

## (D.C. Medicaid State Plan)

33.   Plaintiffs repeat the allegations in paragraphs 1–30 as if fully set forth herein.

34.   By virtue of the foregoing, Defendants have violated and are violating the requirements of D.C. law as set forth in the District's State Plan, by failing to deduct for

12

necessary medical care recognized under District of Columbia law, not subject to payment

by a third party, and not covered by the District's State Plan because the expenses were

incurred prior to eligibility, for which relief is available under D.C. law.

### Count III

### (Unjust Enrichment)

35.    Plaintiffs repeat the allegations in paragraphs 1–30 as if fully set forth herein.

36.    As a result of their wrongful conduct, Defendants were unjustly enriched at

the expense of Plaintiffs, because Defendants have paid less towards Plaintiffs' nursing

home care than required by law.

37.    Under the circumstances, Defendants should not in good faith be permitted to

retain these monies, and should make restitution to Plaintiffs.


WHEREFORE, Plaintiffs pray for judgment:

1.    Declaring that Defendants' practice of denying deductions for pre-eligibility

medical expenses is illegal, null and void;

2.    Declaring that any determinations that Plaintiffs (and all class members) are

liable for current cost of care obligations without deduction for medical expenses incurred

prior to eligibility are illegal, null and void;

3.    Ordering and enjoining Defendants to rescind all determinations of eligibility

that failed to deduct pre-eligibility medical expenses for Plaintiffs and ordering Defendants

to issue determinations of eligibility reflecting such deductions, and further ordering and

enjoining Defendants to recalculate Medicaid cost of care obligations for class members

denied deduction of pre-eligibility medical expenses, retroactive to the dates they would otherwise have been eligible for same but for the policies challenged herein;

4.    Awarding restitution to Plaintiffs of all sums wrongfully paid to Defendants; and

5.    Awarding Plaintiffs such other and further relief as seems proper and just, including costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

Dated:  June 4, 2007

Cyril V. Smith
D.C. Bar No. 413941
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
(410) 332-0444
(Fax) (410) 659-0436
csmith@zuckerman.com

Carlos T. Angulo
D.C. Bar No. 446639
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036-5802
(202) 778-1800
(Fax) (202) 822-8106
cangulo@zuckerman.com

Ron M. Landsman
D.C. Bar No. 209452
RON M. LANDSMAN, P.A.
200-A Monroe Street, Suite 110
Rockville, Maryland 20850-4412
(240) 403-4300, ext. 101

(Fax) (240) 403-4301
RML@ronmlandsman.com

_____/s/_____

René H. Reixach
WOODS OVIATT GILMAN LLP
700 Crossroad Building
2 State St.
Rochester, New York 14614
(585) 987-2858
Fax:  (585) 987-2958
Rreixach@WoodsOviatt.Com

*Attorneys for Plaintiffs*

15