## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICHARD JANIGIAN, JR., et. al.          )
                                        )
          Plaintiffs,                   )          Case No.: 07 CV 508
                                        )          Judge Paul L. Friedman
     v.                                 )          Next Event: Defendants' Answer
                                        )               Due June 22, 2007
THE DISTRICT OF COLUMBIA, et. al., )
                                        )
          Defendants.                   )
                                        )
_____)

### DEFENDANTS' MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Defendants, the District of Columbia, Gregg Pane, Robert Cosby, Sharon Cooper-Deloatch and Brian Wilbon[1] (hereinafter "the District"), through their attorney the Office of the Attorney General for the District of Columbia, respectfully move for dismissal of the complaint or, in the alternative, move for summary judgment, and in support thereof, states as follows:

1)     Plaintiffs' claims for injunctive and declaratory relief are moot.

2)     Plaintiffs fail to allege a violation of a policy, custom or practice that creates liability against the District of Columbia under 42 U.S.C. §1983.

3)     Plaintiffs failed to exhaust administrative remedies under their state claim.

4)     This court should decline to exercise supplemental jurisdiction over Plaintiffs' common law claim for unjust enrichment because Plaintiffs' federal claim fails.

---

[1] As of this filing, Defendant is unaware of service on named individual Mr. Wilbon. However, to the extent service has been made, Defendant incorporates him in this motion as a District Defendant.

The District submits the accompanying memorandum of points and authorities and a declaration in support of the motion. Alternative proposed orders are attached hereto.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


_____/s/ Ellen A. Efros_____
ELLEN A. EFROS [250746]
Chief, Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431


___ ___/s/_Jayme Kantor_____
Jayme B. Kantor [488502]
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
P(202) 724-6627
F(202) 727-3625

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RICHARD JANIGIAN, JR., et. al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.: 07 CV 508** |
| | ) | **Judge Paul L. Friedman** |
| **v.** | ) | **Next Event: Defendants' Answer** |
| | ) | **Due June 22, 2007** |
| **THE DISTRICT OF COLUMBIA, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Defendants, the District of Columbia, Gregg Pane, Robert Cosby, Sharon Cooper-Deloatch and Brian Wilbon (hereinafter "the District"), through their attorney the Office of the Attorney General for the District of Columbia, respectfully move for dismissal of the complaint or, in the alternative, move for summary judgment, and in support thereof, states as follows:

## I.    STATEMENT OF FACTS

Plaintiffs were both qualified for the District of Columbia's Medicaid program to assist in their cost of care in nursing home facilities. Richard Janigian became eligible for Medicaid coverage of his long term care needs in or about December, 2005, with his coverage retroactive to November, 2005. Declaration of Michael Cunningham ("Cunningham Decl.), ¶ 2(a). Linda Anderson became eligible for such in or about January, 2006, with covered care commencing in or about March, 2006. Cunningham Decl., ¶ 2(b). Both Plaintiffs' were determined eligible because their incomes qualified

them for the additional support that Medicaid provides to the medically needy, such as these Plaintiffs whose healthcare needs required that of long term care nursing facilities. Id., p.2. Medicaid, in this respect, essentially picks up the remainder of the long term care bill that the patient cannot afford to pay due to lack of income. After being declared eligible for Medicaid, it was brought to the attention of the District's Income Maintenance Administration ("IMA"), that these Plaintiffs had incurred medical expenses prior to becoming eligible for Medicaid in the District ("pre-eligibility incurred medical expenses"). This information was provided to the District on or about July, 2006, for both Plaintiffs by way of letter from their respective attorneys. Plaintiff's Complaint, ¶¶ 23, 28. Because this information became available after each Plaintiff had already been declared eligible for Medicaid, and was not needed in the calculations that determined these plaintiffs eligible in the first place, it therefore became a *post-eligibility* issue. Cunningham Decl,¶ 2.

The District provides for certain allowable deductions during Medicaid eligibility periods whereby the recipients can deduct the amount from their income to lessen their contribution to their cost of care.[2] Some of these allowable deductions are personal needs, health insurance, home maintenance, and, as at issue here, medical expenses. The District allows Medicaid recipients to deduct medical expenses incurred before they became eligible for Medicaid, which is the case here. These Plaintiffs' pre-eligibility incurred medical expenses had not been deducted from their income until their payability forms (forms calculated each eligibility period to determine how much a Medicaid recipient must contribute to his or her cost of care) were recalculated in March, 2007.

---

[2] See Attached Declaration of Michael Cunningham, Supervisory Policy and Program Analyst for the District's Income Maintenance Administration, for an explanation of the Medicaid provisions applicable to this case.

Cunningham Decl.,¶ 4, 5.  Plaintiffs' attorneys, in or about October, 2006, requested hearings on the matter of having their pre-eligibility medical expenses deducted from their incomes.  They were given hearing dates for the Spring of 2007.  However, Plaintiffs have both requested continuances in such hearings, and to date, a fair hearing has not taken place in the case of either Plaintiff.[3]  Since such hearings have been pending, the IMA corrected these plaintiffs' payability forms to account for the pre-eligibility medical expenses deduction.  Plaintiffs' pre-eligibility incurred medical expenses were deducted from their income and applied retroactively back to the date of their enrollment in the Medicaid program.

The District has addressed the very issue raised by the complaint – consideration of pre-eligibility medical expenses in determining contribution to cost of care – by submitting to the Department of Health, Medical Assistance Administration, the calculated amount to be paid to each of them. Cunningham Decl.,¶ 7.  After reviewing all of these Plaintiffs' monthly finance materials, including the pre-eligibility medical expenses, the District consulted with the nursing homes who provided the long term care to these plaintiffs to confirm the amounts each paid toward his or her cost of care.  Id.  According to this information, the payments Plaintiff Janigian made toward his cost of care at the nursing home during his Medicaid eligibility period when his pre-eligibility medical expenses should have been deducted totaled $15,344.11. Id.  The payments Plaintiff Anderson made toward her cost of care during this time totaled $6,053.89.  Id.[4]

---

[3] One of the continuances in the case of Linda Anderson was at the request of the IMA, See Cunningham Decl., ¶ 5.

[4] The IMA consulted with the nursing homes regarding how much each Plaintiff actually paid to the nursing home during their stay toward their cost of care. Cunningham Decl., ¶ 7.  Plaintiffs' complaint

Federal guidelines for the State Medicaid programs provide that a Medicaid claim may be reopened during a 12-month period for certain reasons.[5]  If this type of issue were to be considered a qualifying "claim," the District reopened the plaintiffs' cases about eight months (July 2006's first notice to March 2007's recalculated and corrected payability forms) after learning of the pre-eligibility incurred medical expenses.  Thus, the District corrected the potential claim/problem of these plaintiffs within the 12-month period.

## II.     Standards for Review for Motion to Dismiss and Summary Judgment

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, a court must accept the allegations in

---

alleges slightly greater totals for each Plaintiff.  However, the information obtained from the nursing homes reflects the amounts that each Plaintiff paid, regardless of the payability readjustments after the pre-eligibility medical expense deductions.  Plaintiffs should be entitled to no more than that which they actually paid out-of-pocket to the nursing homes.

[5] The U.S. Department of Health and Human Services Center for Medicare and Medicaid Services issued a State Medicaid Manual for states to refer to in the administration of their Medicaid programs.  The manual is derived from the statutory guidelines found in 42 C.F.R. §431, et. seq. and is available at: http://www.cms.hhs.gov/Manuals/PBM/itemdetail.asp?filterType=none&filterByDID=-99&sortByDID=1&sortOrder=ascending&itemID=CMS021927&intNumPerPage=10

The following portion is relevant to this discussion:

 2904.    REOPENING AND RECOVERY

2904.1    Reopening Final Determinations Of Eligibility.--*Reopening a final determination permits the correction of errors in that determination.  It is particularly suited to changing a determination which was reasonable when rendered but is now unreasonable because new evidence concerning the determination has been submitted which may alter that determination.*  However, unrestricted reopening would seriously impair due process, administrative efficiency and that certainty in determinations which applicants and recipients have the right to expect.  Consequently, reopening should be permitted only when there is good cause to question the accuracy of a determination. The following discussion sets out procedures which you may wish to follow in designing rules to govern reopening of fair hearing determinations……

C.        Definition of Good Cause for Reopening.--

1.        New and Material Evidence.--Any evidence which was not considered when the previous determination was made and which shows facts that may result in a conclusion different from the previous decision, even though the previous determination was entirely reasonable when it was made.

It is also possible that the evidence may justify or require that further development be undertaken before making a revised determination.

2.        Clerical Error.--Any mechanical, computer or human mistakes in mathematical computations.  *For example, errors in computing resources, income, or spenddown requirements for Medicaid eligibility…*

D.        Time Limit for Reopening.--You may reopen a previously final Medicaid determination *within 1 year of that determination* when the conditions in paragraph C are met, except when the determination involves fraud.  In such cases there is no time limit.

(emphasis added to relevant portions.

the complaint as true. *See, e.g.*, Croixland Properties Ltd. Partnership v. Corcoran, 174 F.3d 213, 215 (D.C. Cir. 1999).   The Supreme Court recently reviewed the long line of cases interpreting Rule 12(b)(6) and revised the standard for complaints.  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) requires Plaintiff to "provide the 'grounds' of his 'entitlement to relief'" with facts that are neither "labels and conclusions" nor "formulaic recitation of the elements of the cause of action."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (partially overruling Conley v. Gibson, 355 U.S. 41, 45 (1957) regarding its 12(b)(6) analysis and heightening the standard for plaintiffs' complaints).  Plaintiff must assert facts that "raise a right to relief above the speculative level."  Twombly, 127 S. Ct. at 1965.

In a Rule 12(b)(6) analysis, while the complaint is to be construed liberally, courts "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."  Kowal v. MCI Communications Corp., Inc., 16 F.3d 1271, 1276 (D.C. Cir. 1994) [*citing* Papasan v. Allain, 478 U.S. 265, 286 (1986)]. Moreover, while the court "must assume the truth of all statements proffered by the party opposing summary judgment," it need not consider wholly conclusory statements for which no supporting evidence is offered. Greene v. Dalton, 164 F.3d 671, 674–75 (D.C. Cir. 1999).

Thus, a motion to dismiss pursuant to Rule 12(b)(6) should be granted when it appears that, under any reasonable reading of the complaint, plaintiff's right to relief does not rise above a speculative level.  Twombly, 127 S. Ct. at 1965.  Here, viewing the allegations of the complaint in the light most favorable to Plaintiffs, the facts do not provide grounds for the entitlement to relief Plaintiffs seek.

Alternatively, Defendants assert that summary judgment should be entered in their favor in accordance with Fed.R.Civ.P. 56(c). Summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* Only disputes as to material facts, or facts that might significantly affect the outcome of a suit under governing law, preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–248 (1986). In other words, it is insufficient, to avoid summary judgment that some factual issues remain in the case; an issue must be both *genuine* and *material* to preclude the entry of summary judgment. Id.

If a court considers materials outside the pleadings in a ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must convert the motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(b); *see also* Haase v. Sessions, 835 F.2d 902, 905–906 (D.C. Cir. 1987). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "complete failure of proof concerning an essential element of the non-moving party's case necessarily renders other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Defendants are entitled to summary judgment if they can demonstrate Plaintiffs' inability to prove any of the required elements of their case. Id. at 321-322. Mere allegations or denials are insufficient to defeat a proper summary judgment motion. Rather, Plaintiffs bear the affirmative burden to present, by affidavits or other means,

*specific facts* showing that there is a genuine issue for trial. Id. at 248-49. The adverse party must do more than "show there is some metaphysical doubt as to material facts." Matsushita Elec. Industries v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Plaintiffs' complaint does not present specific facts showing a genuine issue for trial. Since Plaintiffs' complaint, the District has rectified the pre-eligibility medical expenses deduction problem, has initiated the reimbursement process for these Plaintiffs and has restructured policies, forms and procedures to ensure the same does not happen again. Thus, the Court should dismiss Plaintiffs' complaint, or in the alternative, grant summary judgment in favor of the Defendants.

## III.    ARGUMENT

### A.    Plaintiffs' Claims for Injunctive and Declaratory Relief Are Moot

The standard for determining whether defendant's voluntary conduct has mooted a case "is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 188 (2000) quoting United States v. Concentrated Phosphate Export Assn., Inc., 393 U.S. 199, 203, (1968). The party asserting mootness must persuade the court that the challenged conduct cannot reasonably be expected to start up again. Laidlaw, 528 U.S. at 188. In Laidlaw, the Court (although a divided panel with concurring and dissenting opinions questioning the majority's mootness opinion as to this defendant, Laidlaw, 528 U.S. at 196-215) declined to find the Defendant's conduct moot because it was not clear that the conduct alleged could not reasonable be expected to recur because the prospect of future violations was a disputed factual matter. Id. Here, there is no such disputed factual

matter – Defendants have taken remedial measures not only for these Plaintiffs, but for all prospective cases involving pre-eligibility by revising the payability forms to include a designated line for this deduction and by revising inter-agency policies and procedures. See Declaration of Michael Cunningham. Thus, there is nothing left for speculation about the future like there was in Laidlaw, so the claim Plaintiffs raise for declaratory and injunctive relief is moot.

A case is moot when the legal issues presented "are no longer "'live' or when the parties lack a legally cognizable interest in the outcome.'" Murphy v. Hunt, 455 U.S. 478, 481 (1982) (citing United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980), quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)).  In Hunt, the Court found that there was no reasonable expectation that Hunt would be in the same position again for the same type of harm to occur.  To overcome mootness, "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." Hunt, 455 U.S. at 357.

Plaintiffs' complaint fails for this same reason.  They simply cannot demonstrate a likelihood of recurrence. By recalculating Plaintiffs' contribution to cost of care to take into account the pre-eligibility medical expenses, the District agencies charged with managing the State Medicaid Plan, its implementation, eligibility determination and payability determinations, acted properly and responsibly and, as a result, have mooted Plaintiffs' complaints.  There is no likelihood of a recurrence of the violations alleged. Specifically, the payability forms have been amended to include an explicit entry for the type of expense to be deducted of which these Plaintiffs complain and corresponding policy has been updated.  Furthermore, these Plaintiffs have had their pre-eligibility

medical expenses deduction matters reopened, recalculated and tabbed for reimbursement. Thus, there is no reasonable expectation that the violation Plaintiffs allege will recur to them or any other long term care Medicaid patients with pre-eligibility deductible medical expenses. Hunt, 455 U.S. at 357.

In class actions,[6] if the defendants alter their conduct so that the claims of the class, as well as the representative party, become moot, the action must be dismissed. Smith v. University of Washington Law School, 233 F.3d 1188 (9th Cir. 2000), cert. denied, 532 U.S. 1051 (Claims for declaratory and injunctive relief with respect to a state law school's use of race as a criterion in its admissions policy were moot once a state initiative measure was passed which directed that in public education the state was prohibited from discriminating or offering preferential treatment to "any individual or group on the basis of race, sex, color, ethnicity, or national origin."); Armstrong v. Ward, 529 F.2d 1132 (2d Cir. 1976) (A class action challenging the transfer of prisoners from one facility to another was mooted by the retransfer of all prisoners, the closing of the new facility, and the representations by state officials that the new facility likely would not be reopened, and if reopened would be put to different purposes or populated in a different manner).

The Plaintiffs here, as well as any other potential claimants, no longer have a stake in the outcome of the case because the District has altered its conduct as relates to the basis of the claims. "It is axiomatic that our judicial system is based upon the adversary process. A fundamental part of the process is that parties in a judicial proceeding must have a concrete stake in the outcome." In re Inquiry into Allegations of

---

[6] The putative class has not yet been certified. Indeed, a motion for class certification has not yet been filed. Defendants specifically reserve their rights to oppose any such motion.

<u>Misconduct against Juveniles etc</u>., 430 A.2d 1087, 1092 (D.C. 1981).

In the case at bar, the District has promulgated new rules and amended the payability form to include an entry for necessary uncovered medical care (which includes pre-eligibility expenses) that obviates the claims of the putative class, <u>Smith</u>, supra; the District recalculated and has initiated reimbursement for the out-of-pocket expenditures made by these plaintiffs for their own cost of long term care that would have been covered by Medicaid had the medical expenses been deducted from their income, thereby relieving them of actual injury or damages. Therefore, no "live" issues remain for these plaintiffs either individually or in any prospective representative capacity. Plaintiffs' complaints have been rectified.

**B. Plaintiff Fails to Properly Allege a Violation of a Policy, Custom or Practice that Creates Liability against the District of Columbia under 42 U.S.C. §1983.**

To prevail on a §1983 claim against the District of Columbia, a plaintiff must show that the deprivation of his constitutional rights was caused by a policy, custom or practice of the District of Columbia, or that a single "municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." <u>Board of the County Comm'rs of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 412 (1997). Because Plaintiffs' complaint fails to draw a logical nexus between their isolated cases and a policy, custom or practice, any reference to such is, at best, speculation, which is insufficient for a complaint to survive a motion to dismiss. <u>Twombly,</u> 127 S. Ct. at 1965. In <u>Twombly</u>, Plaintiffs' complaint did not allege facts to support that there was an agreement among local telephone carriers to amount to a violation of The Sherman Act, 15 U.S.C.S. § 1, and without such facts to

support an agreement, the Court dismissed the complaint. <u>Id</u>. at 1961, 1965. Similarly, Plaintiffs' do not allege facts of a policy, custom or practice by the District, and getting to § 1983 claim without such a showing would require the Court to make nothing less than a quantum leap. As the Court in <u>Twombly</u> found the Plaintiffs' complaint insufficient under the Sherman Act, the Court in this case should find the complaint insufficient under § 1983.

The Supreme Court in <u>Monell v. Dep't of Soc. Servs</u>., 436 U.S. 658, 694 (1978), established the rule that, "local governing bodies . . . can be sued directly under Section 1983 for monetary, declaratory, or injunctive relief (only) where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by the body's officers." <u>Id</u>. at 690. In determining whether a government entity may be held liable under 42 U.S.C. §1983, that liability may not be proven under the *respondeat superior* doctrine, but rather must be founded upon evidence that the government unit itself supported a violation of constitutional rights. <u>Jett v. Dallas Independent School District</u>, 109 S. Ct. 2702, 2773 (1989); <u>Oklahoma City v. Tuttle</u>, 471 U.S. 807 (1985); and <u>Monell</u> 436 U.S. at 691-95. *Accord* <u>Miller v. Barry</u>, 698 F. 2d 1259, 1261 (D.C. Cir. 1983) (Official policy must be the moving force to establish liability); and <u>Tarpley v. Greene</u>, 684 F. 2d 1 (D.C. Cir. 1982). In other words, to succeed on a §1983 claim against a municipality "a plaintiff must show a course deliberately pursued by the city, as opposed to an action taken unilaterally by a municipal employee, *and* an affirmative link between the [city's] policy and the particular constitutional violation alleged (citations omitted)." <u>Carter v. District of Columbia</u>, 795 F.2d 116, 122 (D.C. Cir. 1986).

Federal law governs state administration of Medicaid funding, but Plaintiffs have not identified any official policy or practice of the District Defendants that the District has routinely failed to enforce.  In place of a legally cognizable official policy or practice, Plaintiff draws this Court's attention to a policy which actually governs a different facet of the Medicaid program.  Plaintiffs cite to the Income Maintenance Administration's Policy Manual, Part IV, § 7.4 as being instructive on post-eligibility medical expense deductions.  However, § 7.4 discusses pre-eligibility methods of "spend-down" for persons trying to qualify for Medicaid, but need to have a lower income and can, therefore, deduct, or "spend-down," their income by way of incurred medical expenses. Here, Plaintiffs are seeking deductions after they have already been determined eligible for Medicaid.  Thus, the § 7.4 instructions, although relevant to pre-eligibility medical expenses for "spend down" purposes, are off track for Plaintiffs' post-eligibility allowable deduction purposes.  There is no challenge presented by Plaintiffs to their initial Medicaid eligibility determination, or any miscarriage of policy or practice in making such determination, and therefore, the Policy Manual provision that Plaintiffs cite to is misleading.  Furthermore, even if this were a "spend down" issue, Plaintiffs fail to allege any facts to show that Defendants do not adhere to that policy as a matter of practice.

Municipal liability must be established by proof of a "persistent, pervasive practice, attributable to a course deliberately pursued by official policy makers, one that caused the deprivation of constitutional rights plaintiffs experienced." Carter, 795 F.2d at 125.  It is Plaintiffs' burden here to show a persistent, pervasive practice of city officials which, if not officially adopted, was so common and settled as to be considered a custom

or policy, Id. at 125.   The District's State Medicaid Plan allows for the deduction of pre-eligibility medical expenses that Plaintiffs claim should have been deducted. Plaintiffs' isolated incidents are just that – isolated incidents – absent further showing by Plaintiffs that there was a custom or policy to deny this deduction.   Thus, unable to make the requisite allegation, Plaintiff cannot prove a "persistent, pervasive practice of city officials" in violation of §1983.

**C.    Plaintiffs Failed to Exhaust Administrative Remedies Under Their State Claim**

Under Count II of Plaintiffs' complaint, Plaintiffs have separated their § 1983 action from a claim directly pursuant to the D.C. Medicaid State Plan, which has administrative procedures for grievances.   While on one hand Plaintiffs state that "exhaustion of remedies for any individual case would be futile in light of this longstanding policy and practice,"[7] Plaintiffs fail to mention that they have both requested fair hearings.   It is inconsistent for Plaintiffs to argue futility when both have requested fair hearings – indeed, they initiated the administrative process.

A person is not entitled to judicial relief "until the prescribed statutory remedy is exhausted." Spanish International Broadcasting Co. v. Federal Communications Commission, 385 F.2d 615, 624 (D.C. Cir. 1967)(citing Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, (1938).   This requires not only the initiation of the administrative remedy, which Plaintiffs here have done, but a follow through to the final outcome of such before seeking judicial intervention.   Id. at 625.   Plaintiffs cannot usurp the administrative process by turning to the Courts for relief while concurrently arguing that an administrative remedy would be futile.   Indeed, any administrative delay

---

[7] Plaintiffs' First Amended Class Action Complaint for Restitution, Declaratory and Injunctive Relief, ¶ 21.

does not pose a hardship on either Plaintiff because their grievance was corrected in March, 2007, when their payability forms were recalculated.

Exhaustion of administrative remedies prevents "'premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.'" Bowen v. New York, 476 U.S. 467, 484 (1986), quoting Weinberger v. Salfi, 422 U.S. 749, 765 (1975). That is what ultimately occurred here – Plaintiffs informed the IMA of their grievance, a hearing was scheduled and, in the meantime, the agency corrected its error by recalculating these Plaintiffs' payability amounts to include the deduction for pre-eligibility medical expenses. The hearing was not reached because Plaintiffs requested continuances, but more importantly, the agency corrected the problem and essentially answered Plaintiffs' grievance with no opposition. Plaintiffs, however, filed this suit while the time for their administrative hearing was pending, essentially preventing the agency from having its "opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." Bowen, 476 U.S. at 484.

If Plaintiffs did not agree with a Medicaid determination, they had to opportunity to request a fair hearing, which they did, attend a hearing, which they did *not*, and receive a determination, which is now a moot point because the agency gave Plaintiffs what they wanted from a fair hearing. Regardless, Plaintiffs' argument that administrative processes would be futile is simply unfounded and Count II must be dismissed for failure to exhaust administrative remedies.

**D.      Unjust Enrichment**

Because Plaintiffs have failed to state a federal claim upon which relief can be granted, this Court should not exercise supplemental jurisdiction over a common law claim of unjust enrichment.  28 USCS § 1367(c)(3) (the district court may decline jurisdiction when it has dismissed all claims over which it has original jurisdiction).  The Federal court's supplemental jurisdiction should be applied cautiously – it should not extend to claims that do not satisfy elements of Article III standing, amount-in-controversy, diversity or federal question.  <u>DaimlerChrysler Corp. v. Cuno</u>, 126 S. Ct. 1854, 1867 (2006) (plaintiff must have standing "for each claim he seeks to press"); <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966) (federal claim must have substance sufficient to confer subject matter jurisdiction on the court); <u>Owen Equipment & Erection Co. v. Kroger</u>, 437 U.S. 365 (1978) (court refused to extend supplemental jurisdiction against nondiverse parties when jurisdiction was based on diversity); <u>Finley v. United States</u>, 490 U.S. 545 (1989)(court refused to extend supplemental jurisdiction over claims that do not satisfy statutory amount-in-controversy requirements).

The Federal court lacks jurisdiction if the federal claims are insubstantial. <u>Decatur Liquors, Inc. v. District of Columbia</u>, ___ F.3d ___, 2007 WL 581821, *1 (D.C. Cir. 2007) ("A federal court has jurisdiction over substantial federal claims, together with local law claims that are part of a common nucleus of operative fact. But a federal court lacks jurisdiction altogether if the federal claims are insubstantial.").  If all Plaintiffs are left with is a common law claim, this court should dismiss the complaint for want of subject matter jurisdiction in the federal court.  F.R.Civ.P. 12(b)(1).

WHEREFORE, the Defendants respectfully request this Honorable Court dismiss the complaint, with prejudice, or, in the alternative, grant Defendant's motion for summary judgment.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


_____/s/ Ellen A. Efros_____
ELLEN A. EFROS [250746]
Chief, Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001


____/s/ Jayme Kantor_____
Jayme B. Kantor [488502]
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
P(202) 724-6627
F(202) 727-3625

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RICHARD JANIGIAN, JR., et. al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.: 07 CV 508** |
| | ) | **Judge Paul L. Friedman** |
| **v.** | ) | **Next Event: Defendants' Answer** |
| | ) | **Due June 8, 2007** |
| **THE DISTRICT OF COLUMBIA, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## DECLARATION OF MICHAEL CUNNINGHAM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

I, Michael Cunningham, under penalty of perjury, hereby declare as follows:

1.      I am the Supervisory Policy and Program Analyst in the Income Maintenance Administration ("IMA") within the District of Columbia Department of Human Services. I have read and reviewed the complaint filed by Richard Janigian and Linda Anderson. My function in the IMA is to supervise the development of new and amended policies needed to implement laws and regulations related to public assistance programs. I provide consultation, when needed, to the custodian of records for the IMA. I have also reviewed the records with respect to these claimants and the program.

*Preliminary Explanation of the Medicaid Program Under Which Richard Janigian and Linda Anderson received benefits:*

The Medicaid program is a federally-funded program authorized under Title XIX of the Social Security Act to provide medical assistance to low-income individuals under

the age 21, families with dependent children, individuals and couples who are age 65 or older, and blind or disabled individuals.

Janigian and Anderson were both determined eligible for the District's Medicaid program, thus, the eligibility determination process is irrelevant to the claims these claimants make regarding post-eligibility deductions. Neither Janigian nor Anderson needed any "spend down" to qualify for Medicaid. "Spend down" occurs when an applicant needs additional deductions to be taken from their income in order to initially qualify for Medicaid's income requirements. The IMA Policy Manual explains "spend down" deductions in Part VI, Chapter 7. Medical expenses, like the ones Janigian and Anderson incurred prior to applying for Medicaid, *can* be used for "spend down" purposes, but they were not used here – Janigian and Anderson both categorically qualified without any "spend down." Once someone is determined eligible for Medicaid, there is no more reference to "spend down."

This case concerns only a post-eligibility issue. Once a person has been declared eligible for Medicaid, those who live in medical or remedial care such as nursing homes (as these claimants did) contribute to their cost of care based on their available income. The IMA determines how much such persons contribute to their cost of care and this is their "monthly payability amount."

The deduction from income of pre-eligibility (incurred before the person was determined eligible for Medicaid) medical expenses is a deduction for states in creating their Medicaid programs, subject to "reasonable limits." The District has adopted no limitations on this deduction under its State Medicaid Plan Pursuant to the District's

2

policy, the IMA deducts from the person's income the incurred medical expenses for

medical care that are not subject to payment by a third party.

The pre-eligibility incurred medical expense amount is spread over the 12-month

eligibility period or deducted from the monthly income until such amount is exhausted.

> **EXAMPLE:** <u>For a twelve-month eligibility period:</u>
> Joe has $2,500 in pre-eligibility incurred medical expenses and has
> a monthly income (after other allowable deductions, like health
> insurance, home maintenance and personal needs) of $1,000.
> 1)      Months one and two would have a deduction of $1,000 for
>      the medical expenses from the Joe's income, making his
>      payability amount toward his cost of care equal zero.
> 2)      In month three, the remaining medical expense, or $500,
>      would be deducted from his $1,000 monthly income,
>      leaving Joe with a payability amount toward his cost of
>      care of $500.
> 3)      For months four through twelve, his $1,000 available
>      income would go entirely to his cost of care since there is
>      nothing left of his pre-eligibility incurred medical expenses.

2.      Medicaid – Long Term Care Eligibility and Initial Payability Calculations

for Richard Janigian and Linda Anderson:

     a.      Richard Janigian's need for nursing home care was determined by

the Delmarva Foundation, the third-party company under contract with the

District for that purpose, on or about December 30, 2005. Janigian was

determined eligible by the IMA for Medicaid with nursing home care on or about

January 27, 2006. At this time, placement for Janigian in a long term care facility

was authorized from back to November 1, 2005, and through to December 31,

2006. On January 27, 2006, Janigian's payability was calculated for the

eligibility period from November 2005 to January 2006, with a monthly patient

payability amount of $2,960.13, and from February 2006 to December 2006, with

a monthly payability amount of $2,944.18. At the time Janigian was declared
eligible for long term care Medicaid, he qualified without any income spend-
down, such as contemplated by the IMA Policy Manual § 7.4 which the complaint
references. Section 7.4 is a pre-eligibility provision providing for the allowance
of a medical expense deduction in order to "spend down" an applicant's income
in order to qualify for Medicaid – such was not mentioned or needed in Janigian's
case.

        b.      Linda Anderson's need for nursing home care was determined
by the Delmarva Foundation, the District's third-party company charged with this
review, on or about January 30, 2006. Anderson was approved for Medicaid by
the IMA on or about June 8, 2006, and Medicaid benefits became effective for
long term care dating back to March 2006. On or about June 8, 2006, Anderson's
payability was calculated for the eligibility period of March 2006 to February
2007, with a monthly payability of $1,349.26. At the time Anderson was declared
eligible for long term care Medicaid, she qualified without any income spend-
down, such as contemplated by the IMA Policy Manual § 7.4 which the complaint
references. Section 7.4 is a pre-eligibility provision providing for the allowance
of a medical expense deduction in order to "spend down" an applicant's income
in order to qualify for Medicaid – such was not mentioned or needed in
Anderson's case.

    3.      Request for Deduction of Pre-Eligibility Medical Expenses for Richard
Janigian and Linda Anderson:

        a.      The District was first made aware of pre-eligibility incurred

4

medical expenses in the amount of $15, 445.11 by Richard Janigian by way of a

letter from his attorney on July 24, 2006. This letter included bills for medical

expenses that became due prior to November 2005 when Janigian was covered for

long term care under Medicaid that he wished to have deducted from his income.

On October 31, 2006, Janigian requested a hearing on this matter and a hearing

date was set for March 28, 2007. On March 15, 2007, the Office of

Administrative Hearings received a fax from Janigian's attorney requesting a

continuance of the hearing to April 18, 2007. To date, declarant is unaware of

Janigian or his attorney attending a fair hearing on this matter.

      b.      The District was first made aware of pre-eligibility incurred

medical expenses in the amount of $14,949.97 by Linda Anderson by way of a

letter from her attorney on July 10, 2006. However, it was clarified by a letter

from her attorney in October, 2006, that Maryland Medicaid covered a portion of

this balance, resulting in a remaining amount of $6,415.31 that she wished to have

deducted from her income. On January 17, 2007, Anderson requested a hearing

on this matter and such was scheduled for May 30, 2007. Because IMA/DHS did

not receive notice of the hearing request until May 16, 2007, it requested a

continuance to prepare the case and offer the appellant the required opportunity to

participate in an administrative conference prior to the hearing. The Office of

Administrative Hearings has issued an order rescheduling the hearing for June 27,

2007.

4.     Since March 23, 2007, Janigian and Anderson's medical expenses incurred prior to their eligibility for the District's Medicaid program, $15,445.11 and $6,415.31 respectively, have been deducted from their income for the given payability periods and spread out over those months until each debt was satisfied by the available income of each of them. Retroactive calculations including this deduction have resulted in the monthly payability amount of zero as follows:

   a.     Richard Janigian's forms for the months of January, 2006, through May, 2006, include the incurred medical expenses deductions and reflect a monthly payability amount of zero.

   b.     Linda Anderson's forms for the months of April through July, 2006, include the incurred medical expenses deductions and reflect a monthly payability amount of zero.

5.     Retroactive calculations also resulted in a payability period where Janigian and Anderson still had to pay a portion of their cost of care even though there was a deduction for the incurred medical expenses, but only because the remainder of the amount owed for those medical expenses was less than their available income for that period.

   a.     For June 2006, Richard Janigian had a payability amount of $2,336.92.

   b.     For August 2006, Linda Anderson had a payability amount of $565.39.

6.    After their pre-eligibility incurred medical expenses were applied through retroactive deductions, their monthly payability amount went back to the amount with no medical expense deduction.

    a.    From July to December 2006, Janigian's payability amount toward his cost of care was $3,045.18. He was discharged from the nursing facility on or about December 17, 2006. [ Note: Mr. Janigian has had SSI-related Medicaid since January 2007, but no nursing home care]

    b.    From September to December 2006, Anderson's payability amount toward her cost of care was $1,396.14. (Her payability amount increased in January 2007 due to a change in her health insurance).

7.    Declarant believes that the District has recalculated the payability information of Richard Janigian and Linda Anderson to reflect the correct amount, pursuant to the District's Medicaid program, that each was required to contribute to his and her long term care since their respective dates of enrollment in the long term care Medicaid program. The IMA has also consulted with the nursing homes where Plaintiffs received long term care to obtain the monetary totals that each Plaintiff actually paid toward his or her cost of care. Declarant believes that requests for reimbursements of payments in the amounts listed below have been submitted to the Department of Health, Medical Assistance Administration:

    a.    Richard Janigian in the amount of: $15, 344.11

    b.    Linda Anderson in the amount of: $6,053.89

8.      The District has taken measures to prevent this type of allowable deduction from being missed for other long term care Medicaid patients.  On April 13, 2007, the IMA payability form was adjusted to include a line for medical expenses such as the ones described in Plaintiffs' complaint and instructions on the new form from the IMA administrator.  IMA has also revised its procedures to review the application towards patient payability of all reported past medical bills.

9.      The District's Medicaid program allows the type of deduction that Janigian and Anderson requested when proof of the expense is presented to Medicaid by the patient.  I am unaware why the uncovered expense was not deducted before Janigian and Anderson sent letters about it in July of 2006.

10.     I am unaware of any other individuals who have qualified for Medicaid's long term care program and who have pre-eligibility incurred medical expenses that have not been deducted from their income.  However, since eligibility periods are re-calculated every twelve months, the new forms and procedures in place will ensure that if such has been missed in the past, it will not be missed in the future.

11.     IMA has meet with nursing home representatives to review the revised patient payability forms as part of new training procedures and has pointed out that prior uncovered medical expenses can be deducted from patient payability.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: June 21 , 2007

_____
Michael Cunningham

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD JANIGIAN, JR., et. al.      )
                                    )
            Plaintiffs,             )        Case No.: 07 CV 508
                                    )        Judge Paul L. Friedman
      v.                            )        Next Event: Defendants' Answer
                                    )               Due June 22, 2007
THE DISTRICT OF COLUMBIA, et. al., )
                                    )
            Defendants.             )
                                    )
_____)

**DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN
SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION
FOR SUMMARY JUDGMENT**

Defendants, the District of Columbia, Gregg Pane, Robert Cosby, Sharon Cooper-Deloatch and Brian Wilbon[1] (hereinafter "the District"), through their attorney the Office of the Attorney General for the District of Columbia, respectfully move for dismissal of the complaint or, in the alternative, move for summary judgment, and in support thereof, states the following material facts not in dispute:

1.      Plaintiffs were eligible for the District's Medicaid program for long term care.

   a.   Richard Janigian was covered by Medicaid for long term care from November, 2005, through December 2006. Declaration of Michael Cunningham ("Cunningham Decl."), ¶ 2(a).

   b.   Linda Anderson has been covered by Medicaid for long term care from March, 2006, through the present. Cunningham Decl., ¶ 2(b).

_____

[1] As of this filing, Defendant is unaware of service on named individual Mr. Wilbon. However, to the extent service has been made, Defendant incorporates him in this motion as a District Defendant.

2.        Both Plaintiffs qualified for Medicaid long term care without any
          spend down of income. <u>Cunningham Decl</u>, ¶ 2(a) and (b).

3.        Plaintiffs had pre-eligibility medical expenses that were not
          deducted from their monthly income in calculating the contribution
          they had to make toward their cost of care at their respective long
          term care facilities.  <u>Cunningham Decl</u>., ¶ 3; <u>Plaintiffs' Complaint</u>,
          ¶¶ 22, 27.

4.        These pre-eligibility medical expenses were not made known to
          the District's Income Maintenance Administration ("IMA") until
          July, 2006.  <u>Cunningham Decl.</u>, ¶ 3.

5.        The IMA reviewed, recalculated and adjusted Plaintiffs' payability
          forms to reflect the pre-eligibility medical expense deduction on
          March 23, 2007, with retroactive applicability.  <u>Cunningham Decl.</u>,
          ¶ 4.

6.        The IMA changed the payability forms for Medicaid recipients in
          need of long term care coverage to include an entry for uncovered
          medical expenses, such as Plaintiffs' pre-eligibility medical
          expenses, as an income deduction.  <u>Cunningham Decl</u>., ¶ 8.

7.        Both Plaintiffs have requested fair hearings regarding their claim
          for the deduction from their income of pre-eligibility medical
          expenses.  <u>Cunningham Decl.</u>, ¶ 3.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


_____/s/ Ellen A. Efros_____
ELLEN A. EFROS [250746]
Chief, Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431


___ /s/ Jayme Kantor_____
Jayme B. Kantor [488502]
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
P(202) 724-6627
F(202) 727-3625

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RICHARD JANIGIAN, JR., et. al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.: 07 CV 508** |
| | ) | **Judge Paul L. Friedman** |
| **v.** | ) | **Next Event: Defendants' Answer** |
| | ) | **Due June 22, 2007** |
| **THE DISTRICT OF COLUMBIA, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

**<u>ORDER</u>**

Upon consideration of Defendants' Motion to Dismiss, Plaintiffs' opposition

thereto, and the entire record herein, it is by the Court this _____ day of

_____, 2007,

ORDERED: that the Defendants' Motion is GRANTED, and it is further

ORDERED: that the Plaintiffs' Complaint is hereby DISMISSED, with prejudice.


_____
Judge Paul L. Friedman

Copies to:

Jayme Kantor, Esq.
Assistant Attorney General
441 4th Street, N.W.
6th Floor, South
Washington, D.C. 20001

Cyril Smith, Esq.
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RICHARD JANIGIAN, JR., et. al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.: 07 CV 508** |
| | ) | **Judge Paul L. Friedman** |
| **v.** | ) | **Next Event: Defendants' Answer** |
| | ) | **Due June 22, 2007** |
| **THE DISTRICT OF COLUMBIA, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

## <u>ORDER</u>

Upon consideration of Defendants' Motion for Summary Judgment, Plaintiffs'

opposition thereto, and the entire record herein, it is by the Court this _____ day of

_____, 2007,

ORDERED: that the Defendants' Motion is GRANTED.


_____
Judge Paul L. Friedman

Copies to:

Jayme Kantor, Esq.
Assistant Attorney General
441 4th Street, N.W.
6th Floor, South
Washington, D.C. 20001

Cyril Smith, Esq.
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202