## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**RICHARD JANIGIAN, JR.,** *et al.,*    )
                                        )
                                        )
            Plaintiffs                  )    Civil Action No. 1:07-cv-00508
                                        )    Judge Paul L. Friedman
    v.                                  )
                                        )
**GREGG A. PANE**, *et al.,*            )
                                        )
            Defendants.                 )
_____)


### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
### DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Plaintiffs, by their undersigned counsel, submit their Opposition to Defendants'

Motion to Dismiss or, in the Alternative, for Summary Judgment.

### INTRODUCTION

In this class action proceeding, Defendants concede that the procedures they

have used to calculate Medicaid beneficiaries' contribution to their cost of nursing home

care are flawed and, as a result, the named Plaintiffs (and implicitly, all others similarly

situated) were unlawfully denied the required Medicaid benefit at issue in this case, i.e.,

a deduction from their contribution to their cost of care for pre-eligibility incurred medical

expenses.  In an attempt to "pick off" the named Plaintiffs and moot this action,

Defendants have proceeded to recalculate the benefit for those two named Plaintiffs

(albeit wrongly) and offer the withheld benefit to them – and only them – as a refund.

Defendants also assert that they have taken corrective action and will not deny this

benefit in the future.

However, Defendants' actions fall decidedly short of resolving the claims in this

class action lawsuit.    The putative class consists of all persons who (1) are current

beneficiaries, (2) were past beneficiaries during the three years before commencement

of this action (the class period), or (3) will be beneficiaries in the future.    Defendants'

voluntary curative steps address exactly two members of the first group and none of the

second.  As for the third group, the effectiveness of Defendants' response going forward

can scarcely be assured because Defendants do not know why the unlawful denials

occurred in the first place or who might have been affected and, in any event, they err in

their attempted remedy.   Such a woeful response to the lawsuit is hardly grounds for

dismissal.

Indeed, Defendants' admission that they have for years been denying this

required Medicaid benefit calls out for a judgment on the merits in this class action to

determine the full extent of Defendants' lawlessness.  Only then can an appropriate

remedy be fashioned which encompasses all beneficiaries who overpaid their cost of

care in the past and who may be denied this benefit in the future.  At the very least,

Plaintiffs are entitled to discovery on the nature, scope, and effectiveness of

Defendants' alleged corrective actions.

## STATEMENT OF THE CASE

The Complaint was filed on March 16, 2007, on behalf of named Plaintiffs

Richard Janigian and Linda Anderson.  A First Amended Complaint ("FAC") was filed on

June 4, 2007.  Defendants filed their Motion to Dismiss or, in the alternative, Motion for

Summary Judgment and supporting Memorandum  ("Mem.") on June 21, 2007.

## STATEMENT OF MATERIAL FACTS[1]

To understand this case, it is necessary to understand one small corner of the Medicaid system as a whole, and that in turn requires a general appreciation of the shape of Medicaid eligibility and payment for long term care benefits.

## I.    THE MEDICAID PROGRAM

### A.    Background

Medicaid is a voluntary program between the Federal government and the States (including the District of Columbia for these purposes).  The Federal government offers to pay half (or more) of medical benefits programs for the poor that are administered by the States provided that the programs meet standards and requirements set by Congress and administered by the Center for Medicare and Medicaid Services ("CMS," formerly known as the Health Care Financing Administration).  Those standards and requirements are compulsory for States that wish to continue to receive Federal financial support.  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 110 S.Ct. 2510 (1990); 42 C.F.R. § 434.70.

The mechanism for assuring State compliance with Federal standards and practices is the Medical Assistance State Plan.  42 U.S.C. §§ 1396 and 1396a.  The State Plan is the "operating manual" for a State's Medicaid program, describing the nature and scope of its program and giving assurances that it will be administered in conformity with the specific requirements of Federal law.  *See* 42 C.F.R. § 430.10 ("[t]he

---

[1]  For purposes of Defendants' motion to dismiss, the factual allegations in the First Amended Complaint and the inferences that can be derived from those factual allegations are regarded as true.  *See Holy Land Foundation for Relief and Development v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003).  In addition, because Defendants in the alternative seek summary judgment pursuant to Fed.R.Civ.P. 56, Plaintiffs rely on facts set forth in the Declarations of Ron M. Landsman ("Landsman Decl."), Exhibit A hereto, and Cyril V. Smith ("Smith Decl."), Exhibit B hereto, as well as the Declaration of Michael Cunningham ("Cunningham Decl.") previously submitted by Defendants in support of their Motion.

State Plan contains all the information necessary for CMS to determine whether the plan

can be approved to serve as a basis for Federal financial participation in the State

program").   Compliance with Federal requirements does not relieve a State of its

obligation to enforce its own laws regarding how its Medicaid program must be

implemented but simply insures that Federal participation in the funding of the program

will continue.

      **B.**    <u>**Medicaid Coverage**</u>

    Medicaid covers two groups of individuals: the "categorically needy" and the

"medically needy."   The "categorically needy" are those meeting the eligibility rules for

various public cash assistance programs, such as SSI benefits for the aged, blind or

disabled, 42 C.F.R. §§ 435.110, 435.120, or other income requirements, 42 C.F.R. §

435.201.

    This case concerns the "medically needy."  A person is medically needy if he or

she fits within the same categories as the categorically needy, *e.g.*, those who are aged

(as is Plaintiff Janigian) or disabled (as is Plaintiff Anderson), have limited resources, and

have income (a) greater than permitted for receiving public assistance, but (b) insufficient

to pay for his or her health care.  Simply stated, the medically needy require medical

care they cannot afford.  FAC ¶ 17; 42 C.F.R. §§  435.811, 435.814, 435.831, 435.840.

Coverage of the medically needy by the States is voluntary, but once a State includes

them within its Medicaid program, it must comply with Federal requirements.

    Pursuant to the District's State Plan, the District pays for long-term care (*i.e.*,

nursing homes) for the medically needy who meet the following financial and non-

financial requirements:  (a) the individual's income is insufficient to pay for the cost that

care; (b) he or she has no more than $2,600 in non-exempt assets; and (c) the

4

individual requires a nursing home level of care.  FAC ¶ 17;  D.C. Income Maintenance Administration Policy Manual (hereafter "IMA Policy Manual") Part VII, § 2.1, Part VII, § 2.5, Part VI, § 3.1, Exhibit VI-1 (MC - Medically needy), and Part VII, § 2.3.[2]

A Medicaid beneficiary in a nursing home is required to contribute all of his or her "available income" to the nursing facility to help pay for the cost of care (the "patient pay amount"), with Medicaid making up the difference between that contribution and the price the nursing home has agreed with Medicaid to accept for providing services to Medicaid beneficiaries.  FAC ¶ 18; 42 C.F.R.  § 435.832; IMA Policy Manual, Part VII, § 2.14 *et seq.*

**C.     Medicaid Application Process**

For medically needy individuals such as Plaintiffs who were institutionalized in nursing homes, applying for Medicaid benefits involves a two-step process:  (1) determining eligibility (including "spenddown provisions") and (2) once eligible, determining the individual's contribution towards his or her medical care (the "post-eligibility process").  This case concerns the second step, *i.e.*, the "post-eligibility" calculation of the patient pay amount.  Cunningham Decl. ¶ 1.

District residents apply for Medicaid long-term care benefits to the D.C. Department of Human Services, whose staff are required to apply the rules set forth in Federal law, using the guidance provided in the IMA Policy Manual.  FAC ¶ 18.  If Medicaid eligibility is established, it is usually deemed effective as of the first day of the month in which the person applied for benefits.  Thus, for example, if a person applied

---

[2]  The IMA Policy Manual is a document issued by D.C.'s Income Maintenance Administration and revised from time to time.  The current version is available online at http://dhs.dc.gov/dhs/cwp/view,a,1345,q,604418,dhsNav_GID,1728,.asp

on August 15, 2006, whether she is eligible should be based on assets as of August 1, 2006, and a favorable eligibility determination made months later should result in benefits being paid as of the August 1 date.   42 C.F.R. § 435.831; IMA Policy Manual, Chapter VI, § 7.6.1.

However, the District will not pay long term care benefits until there is a finding that the applicant is medically eligible, (*i.e.*, that the person is sick enough to require nursing home services), which can be weeks or months later.  That determination is made by a third-party vendor, the Delmarva Foundation, retained by the District for this purpose.  Cunningham Decl. ¶¶  2(a) and (b).

### D.    Determining the Patient Pay Amount of the Medically Needy (the "Post-Eligibility Process")

Once a nursing home resident is determined eligible for Medicaid benefits as medically needy, the next step is determining the patient pay amount, or the amount of his or her contribution to the cost of nursing home care.  Cunningham Decl. ¶ 1.  This requirement derives from the authority of the Secretary of Health and Human Services ("HHS") to promulgate standards for determining "the extent of medical assistance under the plan," *i.e.*, how much will be paid by the individual and how much by Medicaid, as well as HHS's explicit authority to set rules for taking into account costs incurred for medical care.  42 U.S.C. § 1396a(a)(17); 42 C.F.R. § 435.832.

In calculating a beneficiary's contribution to care, his total monthly income is reduced by certain allowable deductions:  a "personal needs allowance," health insurance premiums, a spouse or family allowance (if applicable), and – the deduction at issue in this case – incurred medical expenses.  *See* 42 U.S.C. § 1396a(r) and (q); 42

C.F.R. §§ 435.832(c)(1) – (3), 435.831(d). Specifically, 42 C.F.R. § 435.831(d) requires that the District

> must deduct from income medical expenses incurred by the individual or family or financially responsible relatives that are not subject to payment by a third party.

The remaining dollar amount is what the beneficiary must contribute to his or her cost of care. The nursing home collects that amount from the resident and bills the District's Medicaid program for the difference between that amount and the amount the nursing home agreed to accept under its contract with the Medicaid program. FAC ¶ 18. In short, the greater the deduction for pre-eligibility medical expenses, the smaller the beneficiary's contribution to the cost of his care and, accordingly, the greater the amount of the Medicaid benefit.

The District is supposed to follow these rules, and its Policy Manual says it does. IMA Policy Manual, Part VI, § 7.4, incorporated by Part VII, § 2.6.5 (deduction shall be made for "medical expenses incurred ... before the budget period and remaining unpaid during the budget period"). *See* Cunningham Decl. ¶ 1 at p. 2-3 ("Pursuant to the District's policy, the IMA deducts from the person's income the incurred medical expenses for medical care that are not subject to payment by a third party"). Neither D.C. law nor the District's State Plan has placed any limit on this right to deduct incurred pre-eligibility medical expenses. FAC ¶ 20; Cunningham Decl. ¶ 1. Thus, under D.C. law, all uncovered medical expenses including all pre-eligibility medical expenses must be included in determining a Medicaid recipient's total Medicaid benefit. *Id.*

## II.    THE NAMED PLAINTIFFS' CASES

Linda Anderson, a resident of D.C., was hospitalized at the Washington Hospital Center in November 2005 and remained there until admitted to the Grant Park Care Center on or about February 20, 2006 where she stayed until February 2007.   FAC ¶¶ 4, 27.  On or about January 30, 2006, the Delmarva Foundation determined that she required nursing home care, and on June 8, 2006 the District approved her for Medicaid benefits retroactive to March 2006.   Cunningham Decl. ¶ 2(b).  At the time of this eligibility, she had unpaid medical expenses incurred prior to that eligibility determination of $14,949.97.  FAC ¶ 26, Cunningham Decl. ¶ 4.

Richard Janigian, also a D.C. resident, was admitted to the Washington Home and Hospice nursing facility on August 16, 2005.  FAC ¶ 22.   The Delmarva Foundation determined that he needed nursing home care on or about December 30, 2005 and on or about January 27, 2006, the District determined that he was eligible for long-term care benefits retroactive to November 1, 2005.  At the time of his eligibility for these long-term care benefits, Mr. Janigian had unpaid medical expenses incurred prior to eligibility of $15,445.11.  FAC ¶ 23, Cunningham Decl. ¶¶ 2(a), 4.

Both plaintiffs advised D.C. Medicaid of their unpaid medical bills, including nursing home bills, at the time of their initial applications for benefits, but in neither case was any action taken to deduct those bills as part of the calculation of the Plaintiffs' contribution to care.   Landsman Decl. ¶ 4.  Defendants admit that the reasons the required benefit was improperly withheld from Mr. Janigian and Mrs. Anderson were program-wide and not limited to their two individual cases, specifically:  (1) the form used by Defendants to calculate a beneficiary's cost of care omitted a line for listing the

amount of pre-eligibility medical expenses; (2) the instructions for the form used to calculate the patient pay amount failed to include any reference to this benefit; and (3) the procedures used by the District to review the cost of care calculations were flawed. Cunningham Decl. ¶ 8.   Defendants also imply that inadequate training was also responsible for this unlawful denial of the pre-eligibility benefit.  *Id.* at ¶ 11.

Representatives for both Mr. Janigian and Mrs. Anderson made specific requests for the pre-eligibility medical expense deduction in July 2006, providing Medicaid with current nursing home bills showing the amounts due as of July 1, 2006 ($15,445.11 for Mr. Janigian and $14,949.97 for Mrs. Anderson).   D.C. Medicaid ignored both requests. Landsman Decl. ¶ 5.  Meanwhile, Mrs. Anderson made a similar request to the Medicaid program in Maryland, where she had previously been institutionalized, and Maryland allowed some of the deduction she was seeking, so that she made a new, lower request for a deduction to D.C. Medicaid in October 2006 for $6,415.31.   Defendants also ignored that revised request.   Landsman Decl. ¶ 6.

When D.C. Medicaid failed to respond to the requests for allowance of their pre-eligibility medical expenses, Mr. Janigian (in October 2006) and Mrs. Anderson (in January 2007) sought hearings with the Office of Administrative Hearings.   Neither matter had come up for hearing as of March 16, 2007 when the original Complaint in this matter was filed.  Landsman Decl. ¶ 7; Cunningham Decl. ¶ 3.

However, a week after the Complaint was filed, on March 23, 2007, the District recalculated the Plaintiffs' contributions to the cost of their care, for the first time taking into account their pre-eligibility incurred medical expenses.   Specifically, the District's Medicaid program issued Mr. Janigian a new "patient payability notice," reducing his

contribution amount for the first five months of 2006 from $14,130.01 to zero. Cunningham Decl. ¶ 4.  Although Defendants now admit that this recalculation was the result of applying his pre-eligibility medical expenses of $15,445.11, *id.*, at the time, the computer notice sent Mr. Janigian did not indicate the basis for the change and no one at D.C. Medicaid explained it to Mr. Janigian or his representatives.  Landsman Decl. ¶ 8.  DC Medicaid has since processed a reimbursement to Mr. Janigian of $15,344.11, and six days after filing its Motion to Dismiss, the District expressly offered counsel for Mr. Janigian a refund of $15,344.11.  Landsman Decl. ¶ 10.[3]

Similarly, the District recalculated Mrs. Anderson's Medicaid benefits <u>after</u> this lawsuit began, and determined that for four months in 2006, her contribution should have been zero.  Cunningham Decl. ¶ 4.  As with Mr. Janigian's notice, the computer notice for Mrs. Anderson did not explain the basis of the change.   Landsman Decl. ¶ 9. Defendants now admit that the recalculation was the result of applying her pre-eligibility medical expenses of $6,514.31.  Cunningham Decl. ¶ 4.

As for the requested hearings, the hearing on Mrs. Anderson's request for the pre-eligibility medical expense deduction was continued until June 27, the same day the District informed her counsel of its intention to refund the disputed amount.  Landsman Decl. ¶ 11 and Exhibit 7 thereto.   Because Mrs. Anderson did not appear for that June 27 hearing, it was dismissed.  Landsman Decl. ¶ 11.   As for Mr. Janigian's hearing,

---

[3]  Indeed, so determined are Defendants to refund this money to the named Plaintiffs that the Office of the Attorney General followed up its June 27, 20007 letter to Plaintiffs' counsel (Exhibit 7 to the Landsman Declaration) with a July 13, 2007 letter stating that it had directed the District to contact the named Plaintiffs directly about this refund ("[since Plaintiff's counsel will] not be accepting the reimbursement checks on your clients' behalf . . . they [will] be sent directly to Mr. Janigian and Ms. Anderson, respectively.  Such has been done.") (Exhibit 8 to the Landsman Declaration).   Plaintiffs' counsel has objected to this improper direct communication with named Plaintiffs during litigation and expects that they will reject the offer.

the Office of Administrative Hearings, apparently unaware that the District has offered to refund the disputed amount, scheduled that hearing for July 17.   *Id.*

In further response to this lawsuit, Defendants also assert that – prospectively – they have changed the procedures and forms used to determine beneficiaries' contribution to their cost of care.   Cunningham Decl. ¶ 10.  But despite Defendants' admissions that systemic, program-wide failures were to blame for the unlawful denial of this benefit to the named Plaintiffs, Defendants do not know (and apparently have made no effort to ascertain) the identify of any other Medicaid beneficiaries who were unlawfully denied this required benefit.  *Id.*


## ARGUMENT

**I.    PLAINTIFFS' CLAIMS ARE NOT MOOT BECAUSE DEFENDANTS HAVE NEITHER "COMPLETELY ERADICATED" THE EFFECTS OF THEIR PAST WRONGFUL DENIAL OF BENEFITS NOR MADE IT "ABSOLUTELY CLEAR" THAT THE WRONGFUL BEHAVIOR COULD NOT BE EXPECTED TO RECUR.**

Defendants assert that Plaintiffs' claims are moot.  They say their "recalculation" of the named Plaintiffs' contribution to cost of care and the alleged changes to Defendants' policies, procedures, and forms are sufficient.  However, as shown below, these voluntary attempts to (1) "pick off" the named Plaintiffs, and (2) cease <u>future</u> wrongful conduct fail to meet the stringent burden for mootness.

### A.    The Mootness Defense

Defendants' burden on mootness is especially heavy, for it is well-established that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of the power to determine the legality of the practice.  *See Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693,

708 (2000).    The Supreme Court has characterized the test for mootness by reason of

voluntary cessation of a challenged practice as a "stringent standard," *id.* at 170, 120

S.Ct. at 698, and a "heavy burden," *United States v. Concentrated Phosphate Export*

*Assn.*, 393 U.S. 199, 203, 89 S.Ct. 361, 364 (1968).

      Defendants' burden has both prospective and retrospective components:  They

must demonstrate that (1) it is "absolutely clear" that the allegedly wrongful behavior

could not reasonably be expected to recur, *Concentrated Phosphate, supra*; and (2)

they have "completely or irrevocably eradicated" the effects of the alleged violation, *Los*

*Angeles County v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383 (1979).  *See Nat'l*

*Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997); *Matson*

*Navigation Co. v. United States*, 825 F.2d 502, 503-04 (D.C. Cir. 1987).  *See also* Alba

Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002), § 2:15 at 138

("voluntary action will not render the controversy moot unless the defendant meets a

*heavy burden* to show that its change of heart is *permanent* and that the defendant will

not return to its old ways") (emphasis added).

      Courts have limited the mootness defense because, absent a judicial

determination of the legality of the challenged conduct, a defendant who claims to have

ceased illegal conduct is nevertheless "free to return to his old ways."  *Friends of the*

*Earth,* 528 U.S. at 189, 120 S.Ct. at 708, quoting *United States v. W.T. Grant Co.*, 345

U.S. 629, 632, 73 S.Ct. 894, 897 (1953).   The public interest in having the legality of

allegedly illegal practices resolved also "militates against a mootness conclusion."  *Id.*

Thus, only where a defendant satisfies both the prospective and the retroactive

components of the mootness defense may an action be dismissed.  *See Nat'l Black*

12

*Police Ass'n*, 108 F.3d at 349.

**B.   Defendants' Allegedly Corrective Steps Have Failed
to Completely Eradicate Past Wrongful Conduct or
<u>Make it Absolutely Clear that the Conduct Will Not Recur</u>.**

Defendants have failed to meet either half of their heavy burden, because their

allegedly corrective steps have neither completely eradicated the past effects of their

wrongful denial of benefits, nor made it "absolutely clear" that the wrongful denial of

benefits could not be expected to recur.

**1.   There Has Been No Eradication of Past Conduct, Only
"Picking Off" of Named Plaintiffs.**

Defendants do not actually claim that they have eradicated the effects of their

past conduct, although they try to leave that impression.  At best, Defendants have

corrected the wrongful denials of the benefit for pre-eligibility medical expenses for just

two individuals, the named Plaintiffs.[4]   <u>They are the only Medicaid beneficiaries for</u>

<u>whom Defendants have recalculated this benefit and offered a refund</u>.   This is hardly

"complete eradication" of the wrongful conduct – it is merely an effort to "pick off" the

named Plaintiffs.  Defendants have done nothing for the unknown numbers of other

Medicaid beneficiaries (and members of the putative class) who were similarly denied

this benefit.

Not only have Defendants failed to recalculate benefits for other Medicaid

recipients during the three years prior to the filing of this lawsuit[5] to cure additional

wrongful denials of this benefit, <u>they have not even examined their records to determine</u>

---

[4]  *But see* p. 14, *infra* (purported correction failed to comply with federal law).

[5]  Three years is the applicable statute of limitations under D.C. law and thus constitutes the "class
period" for claims. D.C. Code Ann. § 12-301.

how many other wrongful denials took place.   *See* Cunningham Decl. ¶ 10 ("I am
unaware of any other individuals who have qualified for Medicaid's long term care
program and who have pre-eligibility incurred medical expenses that have not been
deducted from their income").   This willful ignorance on Defendants' part is precisely
why this action should proceed, *i.e.*, to identify and remedy the untold numbers of other
violations of state and Federal law beyond those involving the two named Plaintiffs.
*See* FAC ¶ 29 ("[o]n information and belief, other class members, similarly situated,
have suffered the same or similar wrongful and illegal denials of benefits.").[6]

Moreover, Defendants have erred in how they derived the amount of the benefit
offered the two named Plaintiffs after this lawsuit began by limiting the deduction to
amounts actually paid by these Plaintiffs to nursing homes.   *See* Cunningham Decl.
¶ 7 ("The IMA has also consulted with the nursing homes where Plaintiffs received long
term care to obtain the monetary totals that each Plaintiff actually paid toward his or her
cost of care").   However, under Federal law, the deduction should be for the total
amount of "medical expenses incurred . . . that are not subject to payment by a third
party," 42 C.F.R. § 435.831(d), that is, the amount of their <u>debt</u>.  In some cases, the
amount of a beneficiary's payment to a nursing home may equal the beneficiary's debt
to that facility, but in many cases, the payment will be less than what is owed.   Thus,
even Defendants' attempt to "pick off" the named Plaintiffs in this case failed to comply
with Federal law.

---

[6]  It should not be hard to determine the people entitled to this benefit, *i.e.*, everyone who reported unpaid
medical expenses on their application for Medicaid benefits.  *See* Exhibit 1 to Landsman Declaration at
p.5 ("Retro Medicaid/Medical Bills" portion of Mr. Janigian's application form which asked "[d]id anyone
have any medical bills in the last three months?").

Defendants' "new forms and procedures" (id. ¶ 8) also do nothing to "completely eradicate" past wrongful conduct.   For one thing, Defendants have refused to identify (let alone remedy) past wrongful denials of benefits to the members of the putative class.   Defendants' statement that "[t]he Plaintiffs here, as well as any other potential claimants, no longer have a stake in the outcome because the District has altered its conduct as relates to the basis of the claims" (Mem. p. 11) is therefore inaccurate.   That statement, at best, only applies to "any other <u>future</u> potential claimants."   Existing and past Medicaid beneficiaries who were denied this benefit remain unaffected.

All Mr. Cunningham can hope is that these existing and past beneficiaries will eventually receive this benefit because "eligibility periods are recalculated every twelve months [and] the new forms and procedures in place will ensure that . . . [this benefit] will not be missed in the future." Cunningham Decl. ¶ 10.    However, even if there were no errors in applying the new policy going forward, the deduction will still be missed for every individual entitled to it who dies before a recalculation occurs (as many elderly Medicaid beneficiaries invariably will), or who leaves the Medicaid program before recalculation occurs (as Mrs. Anderson did).   For example, if D.C. Medicaid treated Mrs. Anderson as they are suggesting they will treat others and refused to give her this required benefit until a recalculation took place, Mrs. Anderson would never have received the $6,415.31 benefit to which she was entitled because she ceased being "medically needy" under the Medicaid program when she left the nursing home in February 2007, prior to any recalculation.   Defendants' plan to remedy any additional past denials of the required benefit through the practice of yearly recalculations is therefore inherently flawed and certain to miss deserving recipients.

Under these circumstances, dismissal of this action – aimed at identifying the wronged class members and getting them relief – would be inappropriate.   All Defendants have done is cure the problem for two individuals who sued them and taken "baby steps" which are guaranteed <u>not</u> to remedy the problem for many if not most of the remaining class members.   Virtually the entire class of similarly deprived Medicaid beneficiaries – the very object of this class action – remains without relief.   Defendants' limited cure thus falls far short of meeting their "heavy burden" of showing the "complete eradication" of their wrongful conduct.

Defendants' failure to provide actual relief to already injured class members underscores why courts are particularly loathe to dismiss class claims where a defendant attempts to "pick off" the named plaintiffs' claims in an effort to render the entire class action moot.  *E.g.*, *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir.1978), *aff'd  Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166 (1980) ("[t]he notion that a defendant may short-circuit a class action by paying off the class representatives either with their acquiescence or, as here, against their will, deserves short shrift.   Indeed, were it so easy to end class actions, few would survive").   For instance, the D.C. Superior Court recently rejected a similar attempt by Defendants to moot another Medicaid class action by returning money wrongfully recovered from the estates of Medicaid beneficiaries.   *See* March 15, 2007 Order in *Brown v. Payne*, Superior Court Civil Action No. 2006 CA 005079 (Leibovitz, J.) ('[i]t is generally settled that defendants in a class action cannot foreclose the action by attempting to "pick off" individual named plaintiffs through settlement").

This reluctance to allow a defendant to moot a class action by "picking off"

16

named plaintiffs extends to cases, such as this, where the class has yet to be certified.

For example, in *Weiss v. Regal Collections*, 385 F.3d 337 (3rd Cir. 2004), the named

plaintiff filed a putative class action against a bank for violating the Fair Debt Collection

Practices Act ("FDCPA").  Before Weiss moved for certification, defendants offered him

(and him alone) the maximum damages available under the statute.  Weiss declined the

offer, but defendants asked the court to dismiss the complaint as moot because he had

been offered the maximum sum available.  *Id.* at 340.   The trial court granted the

motion but the Third Circuit reversed, holding that the purpose and benefits of class

actions would be undercut if such actions could be mooted through "picking off":

> [A]llowing the defendants here to "pick off" a representative
> plaintiff with an offer of judgment less than two months after
> the complaint is filed may undercut the viability of the class
> action procedure, and frustrate the objectives of this
> procedural mechanism for aggregating small claims, like
> those brought under the FDCPA.
>
> . . .
>
> Moreover, a rule allowing plaintiffs to be "picked off" at an
> early stage in a putative class action may waste judicial
> resources by "stimulating successive suits brought by others
> claiming aggrievement."

*Id.* at 344-45 (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. at 339, 100 S.Ct. at

1174.   Therefore, the court continued, "[i]t seems appropriate . . that the class action

process should be able to 'play out' according to the directives of Rule 23 and should

permit due deliberation by the parties and the court on the class certification issues."

*Weiss*, 385 F.3d at 347-48.

    This Court faces the identical situation.   As in *Weiss*, Defendants seek to moot

the class action and deny relief to a large number of similarly-situated elderly and

disabled Medicaid beneficiaries by "picking off" the claims of two named Plaintiffs.    But, as the Third Circuit directed in *Weiss*, this Court should allow this class action to proceed with discovery, pleading and due deliberation by the parties and the Court on class certification issues.

### 2.    Defendants Have Not Made It Absolutely Clear that the Wrongful Conduct Could Not Be Expected To Recur

In addition to failing to meet the retrospective component of the mootness defense, Defendants' alleged "new forms and procedures" for curing the problem going forward provides scant assurance that there will never be any wrongful denials of this benefit in the future:  For one thing, Defendants admit that they have no idea why the wrongful denials took place in the past.    *See* Cunningham Decl. ¶ 9 ("I am unaware why the uncovered expense was not deducted before Janigian and Anderson sent letters about it in July of 2006").   Coupled with Defendants' ignorance about the existence or numbers of similarly deprived beneficiaries (*see* Cunningham Decl. ¶ 10), their assertion that "[t]here is no likelihood of a recurrence of the violations alleged," Mem. p.10, rings particularly hollow.

In essence, Defendants argue that, even though they do not know why the problem occurred in the past, and do not know who might have been affected by such past wrongful conduct, the Court should nonetheless dismiss this action because Defendants baldly assert that the problem will not happen again.    Such wishful thinking falls far short of meeting the "heavy burden" of making it "<u>absolutely clear</u> that the allegedly wrongful behavior could not reasonably be expected to recur."    *Concentrated Phosphate,* 393 U.S. at 203, 89 S.Ct. at 364.  *See Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 491-92 (D.C. Cir. 1988) (defendant's "weak assurances" of

compliance with contracting rules did not meet "heavy burden" of showing that "there is

no reasonable expectation that the wrong will be repeated"); *Samuels v. District of*

*Columbia*, 669 F. Supp. 1133, 1135 (D.D.C. 1987) (promised new grievance procedures

failed to meet "heavy  burden" of showing mootness of claims for declaratory and

injunctive relief).

In addition, Plaintiffs have been unable to take <u>any</u> discovery on these alleged

changes to Defendants' forms and procedures due to the status of this action, *i.e.*,

before counsel have held their Rule 26 conference.    *See* Smith Decl. ¶ 6.  Plaintiffs

thus lack "facts essential to justify" their opposition to Defendants' motion for summary

judgment on the basis of these allegedly curative actions, Fed.R.Civ.P. 56(f), and the

Court should thus deny Defendants' motion until such discovery can be had.  *See* Smith

Decl. ¶¶ 5-7.

The cases relied upon by Defendants to support their "mootness" argument do

nothing of the sort.   *Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181 (1982) (Mem. pp.10-

11), was not a class action but a lawsuit brought by a defendant who claimed a state

court's denial of pretrial bail was unconstitutional.  The Court held that his conviction of

the underlying offense while the federal claim was pending rendered that federal claim

moot because there was no "reasonable expectation" or a "demonstrated probability"

that his conviction would be reversed on appeal and he would again face the issue of

pre-trial detention.  *Id.* at 482-84, 102 S.Ct. at 1183-1184.

Another Supreme Court case cited by Defendants, *U.S. Parole Commission v.*

*Geraghty*, 445 U.S. 388, 100 S.Ct. 1202 (1980) (Mem. p. 10), does bear on this action,

but is exactly counter to Defendants' position.   There, the Court affirmed the denial of a

dismissal on grounds of mootness where a federal prisoner who was challenging the

U.S. Parole Commission's release guidelines was released during appeal.   *Id.* at 404,

100 S.Ct. at 1212.   The Court observed that it had not applied the mootness doctrine to

other class actions where claims of individual plaintiffs had been extinguished, were

transitory, or had been settled through entry of judgment, *id.* at 397-401, 100 S.Ct. at

1209-1211, and explained that the purposes served by class actions meant that the

mootness doctrine must take on a "flexible character" in such cases:

> A "legally cognizable interest" in the traditional sense rarely
> ever exists with respect to the class certification claim.  The
> justifications that led to the development of the class action
> include the protection of the defendant from inconsistent
> obligations, the protection of the interests of absentees, the
> provision of a convenient and economical means for
> disposing of similar lawsuits, and the facilitation of the
> spreading of litigation costs among numerous litigants with
> similar claims. . . Although the named representative
> receives certain benefits from the class nature of the action,
> some of which are regarded as desirable and others as less
> so, these benefits generally are byproducts of the class-
> action device.  [Class certification] is more analogous to the
> private attorney general concept than to the type of interest
> traditionally thought to satisfy the "personal stake"
> requirement.
>
> . . . We conclude that these elements can exist with
> respect to the class certification issue notwithstanding the
> fact that the named plaintiff's claim on the merits has
> expired.

*Id.* at 402-03, 100 S.Ct. at 1212 (footnotes and citations omitted).

The considerations that led the Supreme Court to reject the government's

mootness argument in *Geraghty* apply with equal force here.   The monetary benefits

sought by the Mr. Janigian and Mrs. Anderson are "byproducts" of this class action

which has been brought as "a convenient and economical means" to adjudicate

identical claims of the class of all elderly and disabled D.C. Medicaid nursing home residents.   Satisfaction of their individual claims, just like Mr. Geraghty's release, does not resolve the interests of that much larger class.[7]

Defendants' attempts at mooting this action thus fail to meet the stringent requirements of the mootness doctrine.  Defendants themselves admit, as they must, that dismissal of a class action such as this on the ground of mootness is only warranted if they alter their conduct "so that the claims of the class, as well as the representative party, become moot."  Mem. p. 11 (emphasis added), citing *Smith v. Univ. of Washington Law School*, 233 F.3d 1188 (9th Cir. 2000), *cert. denied*, 532 U.S. 1051 (2001).   Here, the putative class is defined as

> all persons who are now, have been during the last three years prior to filing of this complaint, or may in the future be recipients of Medicaid long-term benefits . . . and who had or have incurred medical expenses, including nursing home charges, prior to [eligibility].

FAC ¶ 8.   Defendants' alleged curative steps, at best, address (a) two individuals in the first category (i.e., current beneficiaries) and (b) the third category (i.e., future recipients).   Their actions do nothing for remaining members of the first category of current beneficiaries and ignore entirely the second category, past recipients.

---

[7] Other cases cited by Defendants are equally inapposite or unavailing.  For example, in *Smith v. Univ. of Washington Law School*, 233 F.3d 1188 (9th Cir. 2000), *cert. denied*, 532 U.S. 1051 (2001) (Mem. pp. 11-12), the court held that the injunctive and declaratory relief claims of a class challenging a law school's affirmative action admissions program were mooted by a state law enacted by referendum after the lawsuit was filed which banned such practices.  233 F.3d at 1194-05.   Here, no such statutory change is involved but rather only Defendants' voluntary conduct which is limited to two Medicaid beneficiaries and, absent relief from this Court, subject to change or reversal at any time.  In *Armstrong v. Ward*, 529 F.2d 1132 (2nd Cir. 1976) (Mem. p. 11), a class action to enjoin the transfer of female prisoners to a less-desirable facility, the action was mooted when the State of New York transferred all members of the class out of the facility, closed the facility, agreed to make improvements before reopening it, and agreed not to transfer prisoners back to the facility should it reopen without their consent.   529 F.2d at 1135-36.  Such a comprehensive and all-inclusive commitment by New York to address the problems of the class in *Armstrong* is a far cry from Defendants' limited curative efforts which address the benefits of only two Medicaid beneficiaries and ignore all other members of the class of present Medicaid recipients.

In sum, Defendants have failed to meet the "high burden" of establishing that this action has been mooted. Their limited actions regarding two Medicaid beneficiaries fall far short of "completely or irrevocably eradicat[ing] the effects of the alleged violation." *Davis*, 440 U.S. at 631, 99 S.Ct. at 1383. Moreover, because their allegedly curative actions were taken voluntarily, with no idea of why the benefits were denied in the first place, and not enshrined in legislation or regulation, it is hardly "absolutely clear" that the allegedly wrongful behavior could not reasonably be expected to recur. *Concentrated Phosphate*, 393 U.S. at 203, 89 S.Ct. at 364. For these reasons, Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment, on the ground of mootness should be denied.

## II. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THE EXISTENCE OF A POLICY, CUSTOM, OR PRACTICE THAT CREATES LIABILITY UNDER § 1983.

Defendants argument that Plaintiffs' § 1983 claim in Count I should be dismissed because Plaintiffs have failed to "draw a logical nexus between [Plaintiffs'] isolated cases and a policy, custom, or practice," Mem. p. 12, is really two separate arguments. The first is a legal argument in support of Defendants' Motion to Dismiss that Plaintiffs "do not allege facts of a policy, custom or practice by the District." Mem. p. 13. The second is a factual argument in support of the alternative Motion for Summary Judgment that "Plaintiffs' isolated incidents are just that – isolated incidents – absent further showing by Plaintiffs that there was a custom or policy to deny this deduction." Mem. p. 15. As shown below, however, both arguments are without merit.

### A.    Plaintiff's Allegations of a Policy or Practice

To sustain a § 1983 action, Plaintiffs must allege that a custom or policy of the District of Columbia caused the alleged deprivation of rights. *Monell v. Dep't of Soc.*

22

*Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38 (1978); *Baker v. District of Columbia*,

326 F.3d 1302, 1306 (D.C. Cir. 2003).   In *Baker*, the Court suggested several ways a

plaintiff can satisfy this requirement:

> There are a number of ways in which a "policy" can be set by
> a municipality to cause it to be liable under § 1983: the
> explicit setting of a policy by the government that violates the
> Constitution . . .;  the action of a policy maker within the
> government . . . ;  the adoption through a knowing failure to
> act by a policy maker of actions by his subordinates that are
> so consistent that they have become "custom," . . .; or the
> failure of the government to respond to a need (for example,
> training of employees) in such a manner as to show
> "deliberate indifference" to the risk that not addressing the
> need will result in constitutional violations . . . Deliberate
> indifference is determined by analyzing whether the
> municipality knew or should have known of the risk of
> constitutional violations, an objective standard

326 F.3d at 1306-07 (citations omitted).

Here, Plaintiffs have made such an allegation in ¶ 21 of their First Amended

Complaint where they allege that "[i]gnoring the requirements of both federal and D.C.

law, however, the District's Medicaid program has long failed, as a matter of policy and

practice, to allow a deduction for any medical expense incurred before the recipient

became eligible for Medicaid"  (emphasis added).   This allegation that Defendants have

ignored the law and created a policy to deny the required Medicaid benefit

encompasses everything *Baker* suggests, *i.e.*, an allegation of a "policy" or "custom"

that is the result of (a) "actions of a policy maker within the government," (b) "a knowing

failure to act by a policy maker of actions by his subordinates that are so consistent that

they have become "custom," or (c) "deliberate indifference" to the risk of violations of

Plaintiffs' rights.       Thus, Plaintiffs have met their pleading burden, and Defendants'

Motion to Dismiss on this ground should be denied.[8]

    B.    **Defendants' Admissions of a Policy or Practice**

Defendants' main argument on Plaintiffs' § 1983 claim is really a factual one:

that the District's policy is actually the exact opposite of what Plaintiffs allege (*e.g.*, "The

District's State Medicaid Plan allows for the deduction of pre-eligibility medical expenses

that Plaintiffs claim should have been deducted," Mem. p. 15) and that there is an

"absen[ce of a] further showing by Plaintiffs that there was a custom or policy to deny

this deduction."  *Id.*

The most compelling answer to this argument is in Defendants' own brief at pp.

4-5, 10-12, and 16 where Defendants describe how they have changed that very same

custom or policy.  In other words, Defendants seek judgment in their favor on the

grounds of mootness because they have allegedly fixed the broken policy that gave rise

to the lawsuit, while simultaneously denying that there was a broken policy in the first

place.    Although alternative pleading may be permissible, alternative facts are not.

Defendants' admissions of a policy and practice that denied Medicaid recipients

a benefit based on pre-eligibility incurred medical expenses are in the Declaration of

Michael Cunningham, the head of the District's Income Maintenance Administration with

responsibility over "policies needed to implement laws and regulations related to public

assistance programs."  Cunningham Decl. ¶ 1.  Mr. Cunningham admits that the

required benefit was denied to the named Plaintiffs, *id.* ¶¶ 2-7, but blames flawed forms

and flawed procedures used by Defendants' subordinates to calculate the allowable

---

[8]  Should the Court determine that Plaintiffs have not adequately met the requirements of alleging a nexus between the alleged violation and a "custom or practice" of the District as set forth in *Monell* and *Baker*, Plaintiffs respectfully request that they be granted leave to amend their Complaint.

income deduction for these denials. *Id.* ¶ 8.   However, he then admits that he is

"unaware why the uncovered expense was not deducted" before the named Plaintiffs

brought it to the Defendants' attention in July 2006, *id.* at ¶ 9 and, further, that he is

"unaware of any other individuals" who have suffered the same fate. *Id.* at ¶ 10.

Finally, Mr. Cunningham claims that "new training procedures" are part of the District's

plan to make sure that this required benefit "will not be missed in the future." *Id.* at

¶¶ 10, 11.

On their face, therefore, Defendants' own statements concede that their policies

and procedures failed to provide the challenged Medicaid benefit as required by law;

admit that the named Plaintiffs were denied this benefit as a result of this practice; and

admit that they have no idea how many other Medicaid beneficiaries may have also

been denied this benefit as a result of this practice.   These admissions more than

satisfy the *Baker* court's test for showing "actions of a policy maker within the

government" or "a knowing failure to act by a policy maker of actions by his

subordinates that are so consistent that they have become 'custom.'"   326 F.3d at

1306-07.

Moreover, Defendants' admission that they have now changed their forms and

procedures and launched a training program to make sure that future benefits are not

missed in the future shows a previous "failure of the government to respond to a need

(for example, training of employees)" that *Baker* said was sufficient to establish

allegations of "deliberate indifference" to the rights sought to be enforced in this action.

*Id.*

Even if Defendants' admissions were insufficient to establish the District's policy

and custom to deny this deduction to Medicaid beneficiaries, the Court should permit Plaintiffs to take discovery to counter Defendants' proffered evidence on this issue. *See* Fed.R.Civ.P. 56(f) and Exhibit B, Declaration of Cyril V. Smith (listing discovery needed to counter Defendants' factual assertions). Plaintiffs have had <u>zero</u> opportunity to take discovery, and only by exploring the actual practices of the District's Medicaid program can the contours of Defendants' policy to deny the challenged deduction truly be established.

In sum, Plaintiffs have adequately pled the existence of a "custom or policy" that resulted in the deprivation of the required Medicaid benefit in the past to an unknown number of Medicaid beneficiaries. Even more compellingly, Defendants have admitted the existence of that very practice. That is more than *Monell* and *Baker* require.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES IN THIS CASE HAS BEEN REJECTED BY DEFENDANTS THEMSELVES, IS NOT REQUIRED, AND WOULD BE FUTILE.

Defendants argue that Plaintiffs' state law claim in Count II[9] should be dismissed because of Plaintiffs' purported failure to exhaust administrative remedies. This argument fails for several reasons. First, Defendants' own actions and assertions establish that <u>they</u> have not relied on the alleged administrative process to correct wrongful benefit determinations. Second, Defendants cite no authority requiring Plaintiffs to pursue any administrative remedies before challenging Defendants' policy in court. Third, given the nature of this action, exhaustion of administrative remedies is not required as a matter of law. Finally, the record establishes that exhaustion of

---

[9] Defendants do not appear to raise this exhaustion argument with respect to Count I which seeks relief pursuant to 42 U.S.C. § 1983, as it is well-established that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568 (1982).

administrative remedies would be futile.

**A.    Defendants Themselves Have Rejected the Viability and Necessity of Administrative Remedies by Affording the Named Plaintiffs Relief Outside of the Administrative Process.**

After arguing that the named Plaintiffs should be required to request a fair hearing, attend the hearing, and receive a determination before bringing a claim under District law (Mem. p. 16), Defendants readily concede that this hearing procedure was pointless:

> That is what ultimately occurred here – Plaintiffs informed the IMA of their grievance, a hearing was scheduled, <u>and, in the meantime, the agency corrected its error by recalculating these Plaintiffs' payability amounts to include the deduction for pre-eligibility medical expenses</u>.   The hearing was not reached because Plaintiffs requested continuances, <u>but</u> **<u>more importantly,</u>** <u>the agency corrected the problem and essentially answered Plaintiffs' grievance with no opposition</u>.

*Id.* (emphasis added).   Defendants' decision to address the grievances of the named Plaintiffs' (but only the named Plaintiffs') outside of the administrative process has resulted in offers to Plaintiffs' counsel, and then directly to the named Plaintiffs, to refund the amounts of wrongfully-denied benefits.   *See* Exhibits 7 and 8 to the Landsman Declaration.[10]   Defendants' exhaustion argument should therefore be rejected by this Court because <u>Defendants</u> have ignored and rejected the administrative process for resolving this dispute.

And it is quite clear that Defendants' offer to refund the wrongfully-withheld benefit was made outside the administrative process.   The offer came not from the District's Department of Human Services, the administrative agency which would have been the respondent in any administrative proceeding, but from and at the direction of

---

[10]  *See* n.3, *supra.*

the D.C.'s Office of the Attorney General, Defendants' counsel in this litigation.    *Id.*

This offer from Defendants' counsel underscores the reality that no administrative

procedure, hearing, or appeal compelled Defendants to refund the named Plaintiffs'

benefits, but rather this litigation.    Thus, Defendants themselves recognize the primacy

of this litigation as the appropriate dispute-resolution mechanism for Plaintiffs' claims

and have chosen to ignore the administrative process.    They should not be allowed to

hold Plaintiffs to a different standard.

**B.    Defendants Cite  No Statutory or Regulatory Requirement
for Exhaustion of Administrative Remedies.**

Defendants cite no statutory or regulatory requirement that Plaintiffs exhaust

administrative remedies before seeking relief from this Court.    An exhaustion

requirement only applies, however, where "expressly required by statute or when an

agency rule requires appeal before review and the administrative action is made

inoperative pending that review."    *Darby v. Cisneros*, 509 U.S. 137, 154, 113 S.Ct.

2539, 2548 (1993).    *See Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247-48

(D.C. Cir. 2004) (jurisdictional exhaustion requirement exists where Congress requires

resort to the administrative process as a predicate to judicial review).    Thus, there was

no failure to exhaust administrative remedies in this case because no such mandated

remedies exist.

A non-mandatory administrative review procedure may create a "non-

jurisdictional exhaustion" requirement in order to permit an agency to correct its own

errors, to give the court the benefit of the agency's expertise, or to compile an adequate

record for review.    *See Avocados Plus*, 370 F.3d at 1247.    But even that requirement is

discretionary and may be excused by a court where the purposes served by the

requirement cannot be achieved.  *Id.*; *see Bowen v. City of New York*, 476 U.S. 467, 484, 106 S.Ct. 2022, 2032 (1986) (the determination of whether to waive an exhaustion requirement is "intensely practical" and should be "guided by the policies underlying the exhaustion requirement").

Here, there is nothing to be gained by any deference to Defendants' administrative procedures.  Defendants admit that their stated policy regarding the Medicaid benefit for pre-eligibility medical expenses was not followed.  Cunningham Decl. ¶¶ 1-8.  They also admit that they have recalculated and refunded benefits only for the two named Plaintiffs and have taken no action whatsoever regarding this benefit for other current recipients or any past Medicaid beneficiaries.  Cunningham Decl. ¶ 10. Such a lackluster and ineffective response to the allegations of this class action hardly warrants deference to additional administrative procedures.   Rather, the court "may, in its discretion, excuse exhaustion if 'the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further.'"  *Avocados Plus*, 370 F.3d at 1247, quoting *McCarthy v. Madigan*, 503 U.S. 140, 146, 112 S.Ct. 1081, 1086 (1992).

> **C.**     **Exhaustion of Administrative Remedies is Not Required Because This Action Challenges Defendants' Policy in Addition to Individual Benefit Determinations.**

A "collateral issue" exemption to the exhaustion principle also exists where the litigation challenges a government benefits policy itself, as opposed to only the correctness of a benefits determination in an individual case or cases. *See*, *e.g.*, *Mathews v. Eldridge*, 424 U.S. 319, 330, 96 S.Ct. 893, 900 (1976) (constitutional challenge in Social Security case "was entirely collateral" to substantive claim of entitlement, and thus appropriate for judicial review without requiring exhaustion of

administrative remedies).

In *Johnson v. Sullivan*, 922 F.2d 346 (7th Cir. 1990), for example, a class of claimants challenged the validity of Social Security regulations regarding disability payments.   In rejecting the government's "exhaustion" argument, the court noted that the challenge to the regulations would mean:

> that some claimants will now receive the benefits they were once denied. For other claimants, the invalidation will make no difference. They will not be entitled to benefits under any standard. Thus, <u>the Plaintiffs' attack is essentially to the policy itself, not to its application to them, nor to the ultimate substantive determination of their benefits</u>. Their challenge to the policy rises and falls on its own, separate from the merits of their claims for benefits.

*Id.* at 353 (emphasis added).  Thus, plaintiffs' challenge to the policy in that case was deemed to be "sufficiently collateral [to their benefits claims] to warrant judicial waiver of the exhaustion requirement."  *Id.  See Duggan v. Bowen*, 691 F. Supp. 1487 (D.D.C. 1988) (exhaustion not required because claimants' challenge to Medicare regulation governing part-time or intermittent home-care was substantially collateral to the right of each class member to receive benefits).  *See also Pratt v. Heckler*, 629 F.Supp. 1496, 1503 (D.D.C. 1986) (claimants who had not exhausted individual remedies were properly included in the class because the action challenged not individual benefits determinations but the validity of certain regulations and policies which themselves determine eligibility when applied to specific cases).

Here, as in those cases, Plaintiffs do not seek only a determination of any particular claim for Medicaid benefits.  Rather, as set forth in the very first sentence of the First Amended Complaint, "[t]his is an action . . . to establish that <u>a policy</u> of the Defendants . . . and the implementation of <u>that policy</u>, violate the federal Medicaid

statute. . . and D.C. law." FAC ¶ 1 (emphasis added).   Plaintiffs allege that Defendants

have "[i]gnore[ed] the requirements of both federal and D.C. law [and] long failed, as a

matter of policy and practice, to allow a deduction for any medical expense incurred

before the recipient became eligible for Medicaid." FAC ¶ 21 (emphasis added).   Count

II itself alleges that "Defendants have violated and are violating the requirements of D.C.

law as set forth in the District's State Plan, by failing to deduct for necessary medical

care . . . for which relief is available under D.C. law." FAC ¶ 34.  This attack on

Defendants' policy and conduct is thus wholly collateral to a benefits determination for

any individual class member and therefore immune from any exhaustion requirement

that might possibly apply to such an individual determination.

    This distinction is also apparent from the relief being sought.   Plaintiffs seek

injunctive and declaratory relief regarding the legality of Defendants' policies and

conduct, as well as restitution for monies wrongfully paid by individual class members to

Defendants.  FAC ¶ 1.   No administrative remedy can provide the injunctive and

declaratory relief being sought.

> **D.    Exhaustion of Administrative Remedies Would be
> Futile Because Defendants Have Shown That They
> Only Respond to Litigation.**

    Exhaustion of administrative remedies would also be futile in light of the

Defendants' stated policy of only recalculating the benefits wrongfully withheld from

Medicaid beneficiaries who sue them.

    The "futility" exception to the exhaustion principle recognizes that it serves no

purpose to require a claimant to pursue administrative remedies where an agency has

"already made it abundantly obvious that it would not correct the error . . . [rendering it]

meaningless to compel the hapless plaintiff to pursue further administrative remedies simply for form's sake." *Daedalus Enterprises, Inc. v. Baldridge*, 563 F.Supp. 1345, 1350 (D.D.C.1983).   Futility can also excuse an exhaustion requirement where no facts are in dispute and the only issue is the legality of challenged provision, *see Ryan v. Bentsen*, 12 F.3d 245, 248 (D.C. Cir. 1993); or where judicial resolution of dispute will not interfere with the agency's efficient functioning, will not thwart any effort at self-correction, will not deny the court or parties the benefit of the agency's experience or expertise, and will not curtail development of a record useful for judicial review, *see Tataranowicz v. Sullivan*, 959 F.2d 268, 275 (D.C. Cir. 1992).   *See also Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 105-07 (D.C. Cir. 1986) (review of futility cases).

Here, all of those standards for application of the futility exception to the exhaustion doctrine apply.   First, Defendants have made it obvious that they will only recalculate previous denials of the required Medicaid benefit for pre-eligibility incurred medical expenses when they are sued.   Mr. Cunningham admits that no action was taken on the named Plaintiffs' claims when they were originally made, nor when the problem was brought to the attention of higher-ups when the named Plaintiffs filed their appeals.   Action was only taken after this proposed class action was filed.  Even then, Defendants only recalculated the benefit for the two named Plaintiffs and have refused to recalculate this benefit for the untold numbers of other putative class members who were denied this benefit or, indeed, even to determine how many additional denials occurred.   *See* Cunningham Decl. ¶ 10.  Thus, by their actions, Defendants have established the absolute futility of further administrative remedies in this matter:  they

only respond to lawsuits.

In addition, by virtue of Defendants' admissions in this case, there is now no dispute about the underlying facts of this litigation, *i.e.*, that Defendants' prior practice and custom was to deny the required Medicaid benefit. The only remaining issues for this litigation are the scope of the problem and the nature of the remedy. In these circumstances, it would be pointless to insist upon exhaustion of administrative remedies.

Finally, Defendants cannot claim that judicial resolution of dispute will interfere with the agency's efficient functioning, thwart any effort at self-correction, deny the court or parties the benefit of the agency's experience or expertise, or curtail development of a record useful for judicial review. *See Tataranowicz*, 959 F.2d at 275. Rather, in this case, Defendants have demonstrated that litigation – far from interfering with administrative remedies – is the only stimulus to their compliance with the law.

Exhaustion would also be futile because Plaintiffs are seeking both declaratory and injunctive relief regarding the legality of Defendants' policy of denying the benefit for pre-eligibility incurred medical expenses. It is unrealistic to expect that Defendants' policy can be altered in the context of any individual adjudication. *See Mathews*, 424 U.S. at 330, 96 S.Ct. at 900 (waiver of exhaustion requirement was warranted where it was unrealistic to expect the agency to consider substantial changes to current system at the behest of a single aid recipient); *Mental Health Ass'n v. Heckler*, 720 F.2d 965, 970-71 (8th Cir. 1983) (judicial review necessary where administrative exhaustion could not correct underlying procedural defects in benefits claims); *City of New York v. Heckler*, 578 F. Supp. 1109, 1118 (E.D.N.Y. 1984) (exhaustion requirement waived

because administrative appeals process could not adequately address the systemic procedural violations asserted in the complaint).   As the Second Circuit has observed, exhaustion of administrative remedies is futile when "the alleged deficiencies [are] in the existing administrative scheme." *J.S. v. Attica Central Schools*, 386 F.3d 107, 113 (2nd Cir. 2004).

For all of the foregoing reasons, therefore, this Court should deny Defendants' Motion to Dismiss Count II of the First Amended Complaint on the ground of failure to exhaust administrative remedies.

## IV.   THIS COURT SHOULD HEAR THE UNJUST ENRICHMENT CLAIM IN COUNT III PURSUANT TO THE GRANT OF SUPPLEMENTAL JURISDICTION UNDER 28 U.S.C. § 1367.

Defendants' final argument presumes the dismissal of Plaintiffs' claim in Count I for relief pursuant to 42 U.S.C. § 1983.   In such a case, Defendants argue, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' claim in Count III for unjust enrichment resulting from Defendants' unlawful retention of money which should have been paid to Plaintiffs and members of the putative class.

Initially, for the reasons discussed above, Defendants' arguments that Count I should be dismissed because of mootness or Plaintiffs' failure to allege a nexus between a governmental policy and the alleged deprivation of the Medicaid benefit at issue are without merit.   Thus, this Court can hear Plaintiffs' common law claim in Count III pursuant to the grant of supplemental jurisdiction in 28 U.S.C. § 1367(a).

However, even if this Court were to dismiss Plaintiffs' federal claim in Count I, it is well-settled that a district court may retain jurisdiction over pendent state law claims

after federal claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).[11]  *See Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423-24 (D.C. Cir. 2005).   In exercising that discretion, a court should consider the convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy.  *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n.7 (1988);  *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3rd Cir.1993). The doctrine of supplemental jurisdiction "thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values."  *Carnegie-Mellon*, 484 U.S. at 350, 108 S.Ct. at 619.

Here, those factors favor adjudication in this action of Count III, regardless of the decision on Count I.  It would be inconvenient and a waste of judicial resources to relitigate these same complicated issues of Medicaid law and regulations, as well as class certification issues, in another forum.   This is especially true now that Defendants have conceded in this action that their policy in implementing the Medicaid program improperly denied the benefit for pre-eligibility incurred medical expenses.  As discussed above, it is only because of this litigation that Defendants have admitted the failings of their policy in the past and undertaken allegedly curative actions. Conservation of judicial resources can thus best be achieved by continuation under § 1367(c) of this action and its beneficial effects.

---

[11]   For purposes of supplemental jurisdiction, a "state" includes the District of Columbia.  28 U.S.C. § 1367(e).

## CONCLUSION

For all of the foregoing reasons, therefore, this Court should deny Defendants'

Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.


Dated:       July 19, 2007.                    Respectfully submitted,



                                            _____/s/_____
                                            Cyril V. Smith
                                            D.C. Bar No. 413941
                                            William K. Meyer
                                            ZUCKERMAN SPAEDER LLP
                                            100 East Pratt Street, Suite 2440
                                            Baltimore, Maryland 21202
                                            (410) 332-0444
                                            (Fax) (410) 659-0436
                                            csmith@zuckerman.com

                                            Carlos T. Angulo
                                            D.C. Bar No. 446639
                                            ZUCKERMAN SPAEDER LLP
                                            1800 M Street, N.W., Suite 1000
                                            Washington, D.C. 20036-5802
                                            (202) 778-1800
                                            (Fax) (202) 822-8106
                                            cangulo@zuckerman.com


                                            Ron M. Landsman
                                            D.C. Bar No. 209452
                                            RON M. LANDSMAN, P.A.
                                            200-A Monroe Street, Suite 110
                                            Rockville, Maryland 20850-4412
                                            (240) 403-4300, ext. 101
                                            (Fax) (240) 403-4301
                                            RML@ronmlandsman.com

René H. Reixach
WOODS OVIATT GILMAN LLP
700 Crossroad Building
2 State St.
Rochester, New York 14614
(585) 987-2858
Fax:  (585) 987-2958
Rreixach@WoodsOviatt.Com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July, 2007, a true copy of the foregoing

Opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary

Judgment were filed electronically with the Court for ECF service upon:


Jayme Kantor
Assistant Attorney General
Civil litigation Division – Equity I Section
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
Jayme.Kantor@dc.gov


_____/s/_____
Cyril V. Smith

37

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RICHARD JANIGIAN, JR.**, *et al.*,      ) | |
|      ) | |
| Plaintiffs      ) | Civil Action No. 1:07-cv-00508 |
|      ) | |
| v.      ) | |
|      ) | |
| **GREGG A. PANE**, *et al.*,      ) | |
|      ) | |
| Defendants.      ) | |

### DECLARATION OF RON M. LANDSMAN

I, Ron M. Landsman, submit this declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1.  I am over 18 years of age and competent to testify in this action.

2.  I am an attorney representing the named Plaintiffs and the putative class members in this action and have been involved in this action since its inception. I make this declaration of my own personal knowledge.

3.  I represented Richard Janigian, the named Plaintiff in this action, beginning in August, 2005, when his brother and agent, Paul Janigian, sought my assistance in qualifying him for D.C. Medicaid long term care benefits. I represented Kathy Ann Mancusi, Esq., conservator for Linda D. Anderson, beginning in June, 2006, when she sought assistance with Ms. Anderson's unpaid nursing home bill from the previous year.

4.  At the time of his initial application for benefits, Plaintiff Janigian advised D.C. Medicaid that he had unpaid medical bills. The D.C. Medicaid program's application form specifically asks if there are medical bills from the three months before the month of application.  Mr. Janigian's indicated that there were ("Combined

1392191.1
1392687.2

Application for D.C. Medical Assistance" for Richard Janigian, Exhibit 1 to this Declaration at p. 5). If the facility social worker who completed Ms. Anderson's application for her did so properly, hers would have reported unpaid pre-eligibility medical expenses, as well.

5.    In neither case was any action taken by D.C. Medicaid to deduct those unpaid medical bills as part of the calculation of Mr. Janigian's or Ms. Anderson 's contribution to the cost of their care.   Subsequently in July 2006, they both made specific requests of D.C. Medicaid for the pre-eligibility medical expense deduction and provided D.C. Medicaid with current nursing home bills showing the amounts due as of July 1, 2006 ($15,445.11 for Mr. Janigian and $14,949.97 for Ms. Anderson). See Exhibit 2 (request on behalf of Mr. Janigian) and Exhibit 3 (request on behalf of Ms. Anderson).   D.C. Medicaid did not respond to either request.

6.    In the meantime, Ms. Anderson made a similar request to the Medicaid program in Maryland, where she had previously been institutionalized, and the Maryland Medicaid program allowed some of the deduction she was seeking. Thereafter, in October 2006, she made a new, lower request to D.C. Medicaid for a deduction of $6,415.31. Exhibit 4.That revised request was also ignored

7.    When D.C. Medicaid failed to respond to the requests for allowance of their pre-eligibility medical expenses, Mr. Janigian (in October 2006) and Ms. Anderson (in January 2007) sought hearings with the Office of Administrative Hearings.   Neither matter came up for hearing as of March 16, 2007 when the original Complaint in this matter was filed.

8.    A week after the Complaint was filed, on March 23, 2007, the District

2

recalculated Mr. Janigian's contribution to the cost of his care. The District's Medicaid program issued a new "patient payability" notice for Mr. Janigian, reducing his contribution amount for the first five months of 2006 from $14,130.01 to zero.  Exhibit 5. However, the computer notice about this change did not indicate the basis for the change nor the discrepancy from the amount requested, nor did anyone at D.C. Medicaid proffer an explanation of the reasons for this change to Mr. Janigian or me. *Id.*

9.    Similarly, two months later, on or about May 15, 2007, the District's Medicaid program issued Ms. Anderson a new "patient payability" notice, reducing her contribution amount for April through July, 2007, to zero, with a further reduction in August. The computer notices did cite the correct ***IMA Policy Manual*** section, but there was no explanation of what was or was not allowed and why and the notice for August had no detail whatsoever.  Exhibit 6.  Ms. Anderson left her nursing home in February 2007 and is no longer receiving Medicaid benefits for nursing home care.

10.    DC Medicaid has since processed reimbursements to Mr. Janigian of $15,344.11 and to Ms. Anderson of $6,053.89.   On June 27, 2007, Defendants' counsel, by letter to Plaintiffs' counsel, formally offered Mr. Janigian and Ms. Anderson refunds in those amounts.  Exhibit 7.    On July 13, 2007, Defendants' counsel informed Plaintiffs' counsel that, because that offer was not being accepted, they were sending refund check directly to Mr. Janigian and Ms. Anderson.  Exhibit 8.

11.    As for the requested hearings, the hearing on Ms. Anderson's request for the pre-eligibility medical expense deduction was continued hearing until June 27, the same day the District informed her counsel of its intention to refund the disputed

3

amount.  Because Ms. Anderson did not appear for that June 27 hearing, it was

dismissed.   As for Mr. Janigian's hearing, the Office of Administrative Hearings,

apparently unaware that the District has already offered to refund the disputed amount,

has scheduled that hearing for July 17.


I declare under the penalties of perjury that the foregoing is true and correct.


Executed on July 17, 2007 in Rockville, Maryland.


Ron M. Landsman

4



**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
DEPARTMENT OF HUMAN SERVICES
INCOME MAINTENANCE ADMINISTRATION

# COMBINED APPLICATION FOR D.C.
# MEDICAL ASSISTANCE
# FOOD STAMPS
# CASH ASSISTANCE*
### * FOR THE DISABLED AND FAMILIES WITH CHILDREN

If you live in D.C., you can use this form to apply for benefits. If you need help with this form, just ask your worker or another IMA employee. You can also call (202) 727-5355. Free interpreters are available.

Please bring this form to your area Service Center. To find out which Center is closest to you, call (202) 727-5355. You may also mail this form to 645 H St., NE, Washington, DC 20002.

## Si hablo ESPAÑOL (SPANISH)

Si usted vive en D.C., puede usar este formulario para solicitar beneficios. Si necesita ayuda con este formulario, pídale ayuda a su trabajador u otro empleado de IMA. También puede llamar al (202) 727-5355. Intérpretes gratis están disponibles.

Por favor, lleve este formulario al Centro de Servicio de su área. Para saber cuál Centro le queda más cerca, llame al (202) 727-5355. También puede enviar este formulario por correo a 645 H St., NE, Washington, DC 20002.

**Questions? ¿Preguntas? የያቶዎች?**
**有問題嗎？Có thắc mắc gì không?**

☎ **(202) 727-5355**

## 如是・我說中文 (MANDARIN)

"如果您住在D.C.，您可以用這份表格來申請福利。如果您還需要這份表格時需要幫助，您可以向工作人員或其他IMA員工詢問。您還可以致電 (202) 727-5355 我們有免費翻譯服務。"

"請將這份表格送到您所在地區的服務中心。欲知離您最近的服務中心，請致電 (202) 727-5355 您也可以將這份表格寄至 645 H St., NE, Washington, DC 20002。"

## አማርኛ ከተናገሩ አማርኛ (AMHARIC)

"በዲ.ሲ. ውስጥ የሚኖሩ ከሆነ የእርዳታ ጥቅሞችን ለማግኘት በዚህ ቅጽ ሊጠቀሙ ይችላሉ፡፡ ይህንን ቅጽ ሰመመላላት እርዳታ ከፈለጉ ጉዳይዎን የያዘትን ሠራተኛ ወይም ሌላ የኢይኤምኤ ሠራተኛን ይጠይቁ፡፡ እንዲሁም በ(202) 727-5355 ለመደወል ይችላሉ፡፡ ነፃ አስተርጓሚዎች ይገኛሉ፡፡"

"እባክዎ ይህንን ቅጽ ወደ አካባቢዎ የአገልግሎት ማዕከል ይዘው ይሂዱ፡፡ የትኛው ማዕከል በአቅራቢያ እንዳሚገኝ ለማወቅ ደግሞ በ(202) 727-5355 ይደውሉ፡፡ ይህንን ቅጽ በፖስታ ቤት በኩል በ645 H St., NE, Washington, DC 20002. ለመላክም ይችላሉ፡፡"

## Có thể nói TIẾNG VIỆT (VIETNAMESE)

"Nếu quý vị sống tại D.C., quý vị có thể dùng mẫu đơn này để xin quyền lợi. Nếu quý vị cần giúp đỡ điền đơn này, xin hỏi nhân viên xã hội của mình hoặc một nhân viên khác của IMA. Quý vị cũng có thể gọi số (202) 727-5355. Có thông dịch viên miễn phí.

"Xin đem mẫu này tới Trung Tâm Dịch Vụ khu vực của quý vị. Để tìm hiểu xem Trung Tâm nào gần quý vị nhất, gọi (202) 727-5355. Quý vị cũng có thể gửi mẫu đơn này tới 645 H St., NE, Washington, DC 20002."

---

| FOR AGENCY USE ONLY | ☐ Application ☐ Recertification |
|---|---|
| Case Name _____ | Case # _____ |
| Date Rec'd _____ | Prog. Approved _____ |
| Date Disp. _____ | Prog. Denied _____ |

Exhibit 1

GOVERNMENT OF THE DISTRICT OF COLUMBIA
DEPARTMENT OF HUMAN SERVICES



# INCOME MAINTENANCE ADMINISTRATION
# SERVICE CENTERS

**Anacostia Service Center**
2100 Martin Luther King Avenue, S.E.
Washington, DC 20020
Phone: (202) 645-4614
Fax: (202) 727-3527

**Fort Davis Service Center**
3851 Alabama Ave., SE
Washington, DC 20020
Phone: (202) 645-4500
Fax: (202) 645-6205

**Congress Heights Service Center**
4001 South Capitol Street, S.W.
Washington, DC 20032
Phone: (202) 645-4546
Fax: (202) 645-4524

**Eckington Service Center**
51 N Street, N.E., Second Floor
Washington, DC 20002
Phone: (202) 724-8720
Fax: (202) 724-8602

**H Street Service Center**
645 H Street, N.E.
Washington, DC 20002
Phone: (202) 698-4350
Fax: (202) 724-8964

**Taylor Street Service Center**
1207 Taylor Street, N.W.
Washington, DC 20011
Phone: (202) 576-8000
Fax: (202) 576-8740

**Northeast Street Service**
3917 Minnesota Avenue, N.E.
Washington, DC 20019
Phone: (202) 724-7900
Fax: (202) 724-8549

*Customers may call IMA at **(202) 727-5355**
to learn which Service Center serves their address.*

*Questions? ¿Preguntas? ጥያቄዎች?*
有問題嗎 ? Có thắc mắc gì không?

☎ **(202) 727- 5355**

## Your Information

| Last Name | First Name | Middle Name | Date of Birth | Telephone |
|---|---|---|---|---|
| Janigian | Richard | | 12/16/1929 | |

| Current Address | Apt. | Mailing Address (if different) |
|---|---|---|
| 3720 Upton St. N.W. | | 4211 Alton Place, N.W. |

| City, State | ZIP | City, State | ZIP |
|---|---|---|---|
| Washington, D.C. | 20016 | Washington, D.C. | 20016 |

**I am applying for:** ☑ **Medical Assistance**  ☐ **Food Stamps**  ☐ **IDA** (Interim Disability Assistance)

☐ **TANF/GC** (Temporary Assistance for Needy Families/General Assistance for Children)

**Note:** Your Food Stamp benefits start on the day that you apply. You can apply right away. Make sure to write down your name and address above and then sign at the bottom of this page.

## Expedited Food Stamps

You might be able to get Food Stamps in less than a week! To see if you qualify, please tell us:

1. Will your household income be more than $150 this month?  ☐ Yes  ☐ No
2. Do you have more than $100 in cash or in the bank?  ☐ Yes  ☐ No
3. Is your income this month more than your housing costs (rent and utilities)?  ☐ Yes  ☐ No

If you answered NO to the questions above, then you may be eligible. Please tell us:

(a) What will be your total income this month? $_____

(b) What did you pay for housing (rent and utilities) this month?  $_____

## Authorized Representative

Do you want someone else to act for or represent you?  ☑ Yes  ☐ No   If YES, please tell us:

Name of Your Authorized Representative: William Gatesman

Address of Rep.: 200-A Monroe St. #110, Rockville, Md 20850

Telephone of Rep.: 240-403-4300

What do you want them to do?  ☑ Complete interviews  ☑ Report changes  ☐ Use EBT card

## Signature

By signing below, I give my permission to DHS to get information about me. DHS can get this from my employer, landlord, bank, and utility company. I give all of these people my permission to give information about me to DHS. I believe that all of my information on this entire six-page form is correct. I know that if I give any false information, I may be breaking the law. I know that state and federal officials will check this information. I agree to help with their investigations.

I agree to follow the rules for DHS benefits. I have received a copy of these rules. I know that I will have to **recertify** for my benefits. I also understand that my child may get free health care through "HealthCheck."

**Authorized Representatives:** If the applicant cannot sign this form, you may sign it for them. By signing, you certify that this person wants to apply for benefits and agrees to the conditions above.

SIGNATURE: X _William M Gatesman_   atty for Applicant   DATE: _1/23/06_

1 of 6

# Who Lives with You?

(Please list everyone in the household, even if you are not applying for them.)

| Last Name | First Name | Middle Name | Applying for this Person? (Yes/No) | Sex (M/F) | Date of Birth | Age | Social Security Number* | Relation to you (child, aunt, friend, etc.) | Do you eat together? (Yes/No) | U.S. Citizen? (Yes) No** (Yes) No** |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. (You) Janigian | Richard | | Yes | m | 12/16/1929 | 76 | 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 | (Self) | (n/a) | Yes |
| 2. | | | | | | | | | | |
| 3. | | | | | | | | | | |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| 7.*** | | | | | | | | | | |

* You can leave this blank if this person does not want benefits for him/herself. However, you may still have to provide information about this person's income and assets.
** Many immigrants are eligible for benefits. To see if you may qualify, please fill out all of page 6. *** Attach another sheet if more than seven people live in your house.

# General Questions

1. Are you: ☒ Single ☐ Married ☐ Divorced ☐ Separated ☐ Widowed

2. Is anyone **pregnant**? ☐ Yes ☒ No   If YES, who?   When is the baby due?

3. How much do you pay for **child-care** or **elder-care** (day care, babysitter, etc.)? N/A $   How often do you pay this?
   (Not needed for Food Stamps)

4. Are you in a **long-term** care facility (nursing home, ICF-MR, CRF, etc.)? ☒ Yes ☐ No   If YES, where? Washington Home 3720 Upton St. N.W.
   (Not needed for Food Stamps)

5. Have you gotten benefits from another State in the last three (3) months? ☐ Yes ☒ No   If YES, where?

6. Does anyone age 16 or older go to **school** or a **job-training** program? ☐ Yes ☒ No   If YES, who?
   Name of the school or program?   How many hours per week?

7. In the last two (2) months, did anyone **stop working** or cut back on their hours? ☐ Yes ☒ No   If YES, who?
   Reason?   What was their last day at work?   Date of final paycheck:

2 of 6.

# Income

## Income from Work (before taxes or other deductions: gross, not net amount)

| Person who is working | Employer's Name/Telephone | Start Date | How much is each paycheck? (before taxes) | How often do you get paid? (weekly, biweekly, monthly, etc.) |
|---|---|---|---|---|
| N/a | | | $ | |
| | | | $ | |

## Other Income

Do you or anyone else get any other income?  Please check all that apply and list each payment below.

- ☐ SSI
- ☑ Social Security (not SSI)
- ☐ Veterans benefits
- ☐ Unemployment/Workers Comp.
- ☑ Pensions and retirement
- ☐ Foster care/adoption subsidy
- ☐ Child support
- ☐ Help with expenses
- ☐ Other _____

| Type of Payment | Who gets this? | How much is each payment? (before taxes and deductions) | How often do they get this? (weekly, biweekly, monthly, etc.) |
|---|---|---|---|
| Social Security | Richard Janigian | $ 236.50 | monthly |
| C. Government retirement | " " | $ 2,981.00 | monthly |
| | | $ | |

Does anyone pay your family for meals or to rent a room (for example, a **roommate or boarder**)?

☐ Yes   ☐ No   If YES, who pays? _____  How much do they pay each month?  $ _____

# Assets

| Cash | Does anyone have more than $1,000 in cash? | ☐ Yes | ☑ No |
|---|---|---|---|
| | If YES, how much?  $ _____ | | |
| Bank Accounts | Does anyone have more than $1,000 in the bank? | ☑ Yes | ☐ No |
| | If YES, please attach your most recent bank statement(s). | | |
| Life Insurance | Does anyone have life insurance that they can cash in? | ☐ Yes | ☑ No |
| | If YES, how much money would you get if you cashed it in today? $ _____ | | |
| Real Property | Does anyone own property other than the home you live in? | ☐ Yes* | ☑ No |
| | (For example: boats, rental property, real estate) | | |
| Other | Does anyone have any stock, bonds, etc.? | ☐ Yes* | ☑ No |
| Transfers | Did anyone sell, trade, or give away anything worth more than $1,000 during the last three (3) years? | ☑ Yes* | ☐ No |

see memorendum filed 1/5/06

YES, please attach a description to this form.

3 of 6

Case 1:07-cv-00506-PLF    Document 12-3    Filed 07/18/2007    Page 6 of 8

## For the Blind and Disabled
### (Medical Assistance and IDA Only)

Is anyone in your house **blind** or severely **disabled**?  ☑ Yes   ☐ No   If YES, who?  _Richard Janigia_

> To get Medical Assistance and Interim Disability Assistance (IDA), you may need to show that you are blind or disabled. Please get a Medical Form and have a doctor fill it out. If you do not have a doctor, call the Alliance on (202) 842-2810. They will help you find a doctor. The Alliance doctor will fill out the Medical Form for you. DHS will treat all of your information as confidential.

> **Note:** You do **not** need to fill out a Medical Form (856) if **you are age 65 or older** or if a **child under 19 lives with you**. Also, you may not need to fill out the form if you get Social Security. If you have questions, please ask your worker or call (202) 727-5355.

## Housing, Utilities, & Other Bills
### (Food Stamps Only)

Your Food Stamps amount may depend on your housing, utility, and medical bills. Please tell us the current amount of these bills. Do **not** include any past due amount. To qualify for more Food Stamps, you must provide proof of these bills. If you do not, we will assume that you do not want this deduction.

### Rent or Mortgage   N/a

|  | Rent | Mortgage | Monthly Property Taxes* | Homeowners Insurance* | Condo Fee* | Other (describe below) |
|---|---|---|---|---|---|---|
| How much? | $ | $ | $ | $ | $ | $ |
| Who pays? |  |  |  |  |  |  |

Do you pay for heating or air-conditioning separately from your rent?  ☐ Yes   ☐ No

### Utility Bills (if separate from rent/mortgage)

|  | Electric Bill* | Gas Bill* | Fuel Oil* | Phone Bill (including cell) | Water Bill* | Other (describe below) |
|---|---|---|---|---|---|---|
| How much? | $ | $ | $ | $ | $ | $ |
| Who pays? |  |  |  |  |  |  |

Leave this blank if it is part of your rent or mortgage.

### Other Bills

Is there anyone who is disabled or age 60 or older who pays medical bills?

☐ Yes   ☐ No   If YES, who pays? _____   How much do they pay each month? $ _____

Does anyone in your home **pay** child support?

☐ Yes   ☐ No   If YES, who pays? _____   How much do they pay each month? $ _____

# Health Insurance and Medical Bills
## (Medical Assistance Only)

You may still get Medical Assistance even if you have other health insurance. We can also pay your Medicare premiums for you. Please tell us about your health insurance.

| | | | |
|---|---|---|---|
| **Medicare** | Does anyone have Medicare (a red, white and blue card)? | ☑ Yes | ☐ No |
| | If YES, who has Medicare? *Richard Janigian* | | |
| **Health Insurance** | Does anyone have any other insurance? | ☑ Yes | ☐ No |
| | If YES, please give us a copy of the insurance card. | | |
| **Retro Medicaid/ Medical Bills** | Did anyone have any medical bills in the last three months? | ☑ Yes | ☐ No |
| | If you get Medical Assistance, you can get paid back for some bills that you have paid. We can also pay some unpaid bills. Call **(202) 698-2009.** | | |
| | Were your address, income, and assets the same as now during the last three months? | ☑ Yes | ☐ No |

# Parents Not Living in the Home
## (TANF and Medical Assistance Only)

We can help you get child support. Please tell us about any absent parents (any parents not living with their child). However, you could have a good reason for not telling us about an absent parent. **If you are afraid that an absent parent might hurt you or someone in your family, then you have a good reason.** If you have a good reason, then you do not have to give any information now.

Do you have a good reason for not telling us about an absent parent?    ☐ Yes    ☐ No

If NO, then you need to fill in the information below. Please give as much information as you can.

| Child's Name | Absent Parent's Name | Absent Parent's SSN | Monthly Support Received | Reason for Absence* |
|---|---|---|---|---|
| N/a | | | | |
| | | | | |
| | | | | |

Reasons for absence: never married, separated/divorced, in jail/prison, deceased, living somewhere else, etc.

Do you want to get this help with child support right away?    ☐ Yes    ☐ No

# Voluntary Questions

Your Ethnicity:    ☐ Hispanic/Latino    ☐ Not Hispanic/Latino

Your Race:    ☐ Black/African-American    ☐ Asian    ☐ American Indian or Alaskan Native
☐ White    ☐ Native Hawaiian or Other Pacific Islander

Note: You may check more than one race. Also, you do not have to provide this information. None of this information will affect your benefits. We only ask for this information to make sure that we do not discriminate.

5 of 6

# For Immigrants (Non-Citizens) Applying for Benefits

Many immigrants are eligible for benefits. For any non-citizen applying for benefits, please provide the immigration information below. We keep this information confidential. **If your status is "OTHER," then we will not ask you for any more information about your immigration status.**

If you are only applying for your child, you do **not** have to give details about your immigration status. Instead, you can give your child's immigration information. If you just want benefits for your child, you can mark "OTHER" for your own immigration status.

Please use these categories for "Current Status" in the table below:

- Lawful permanent resident (LPR)
- Refugee or Asylee
- Cuban or Haitian Entrant
- Person who has been granted withholding of deportation (removal)
- Parolee admitted for at least one year
- Alien who has been present before April 1, 1980, as a "Conditional Entrant"

- Person on active duty in U.S. Armed Forces (or veteran)
- Spouse, widow or dependent of American soldier or veteran
- A victim of domestic violence
- A victim of a severe form of trafficking in human persons
- Native American/Inuit born outside of the U.S.
- Hmong/Laotian
- Amerasians who came to the U.S. due to the Vietnam War
- OTHER: status does NOT match one of those listed here.

| Name. N/a | Alien ID # ("A" number) | Current Status | Date that You Moved to the U.S. | Was ever a Refugee/ Asylee? | Cuban/ Haitian? |
|---|---|---|---|---|---|
| 1. | | | | ☐ Yes | ☐ Yes |
| 2. | | | | ☐ Yes | ☐ Yes |
| 3. | | | | ☐ Yes | ☐ Yes |
| 4. | | | | ☐ Yes | ☐ Yes |
| 5. | | | | ☐ Yes | ☐ Yes |

**Important:** Did anyone above move to the United States before August 22, 1996?    ☐ Yes    ☐ No

If YES, who?

**Note:** Some immigrants who moved to the U.S. after August 22, 1996 do not have to wait five years before getting benefits.

**For Lawful Permanent Residents (LPRs) only:**

1. Do you have a sponsor?    ☐ Yes    ☐ No

2. Have you, your parents, your spouse, and/or your sponsor ever worked in the U.S.?    ☐ Yes    ☐ No

# RON M. LANDSMAN, P.A.

COUNSELOR AND ATTORNEY-AT-LAW
200-A MONROE STREET, SUITE 110
ROCKVILLE, MARYLAND 20850-4421
240-403-4300 · (FAX) 240-403-4301
rml@ronmlandsman.com

RON M. LANDSMAN*
FELLOW, NATIONAL ACADEMY OF ELDER LAW ATTORNEYS
KIMBERLY A. KASBERG
ASSOCIATE

OF COUNSEL
ERIN ADELE MAHONY†
WILLIAM M. GATESMAN*

\* ALSO ADMITTED TO THE DISTRICT OF COLUMBIA BAR
† ALSO ADMITTED TO THE LOUISIANA STATE BAR

July 24, 2006

P. Kennedy, Eligibility Worker
D.C. Department of Human Services
Medicaid Applications–Long Term Care
645 H Street, NE, Third Floor
Washington, DC 20002

Re:    **Richard Janigian, Jr.**
        **Medicaid, Long Term Care**
        **Case No. 00419221**

Dear Mr./Ms. Kennedy:

We represent Paul Janigian, brother and attorney-in-fact of Richard Janigian, Jr. Richard Janigian became eligible for Medicaid as of November 30, 2005.

We wish to make a claim for deduction of Mr. Janigian's pre-eligibility medical expenses. Enclosed please find a bill for necessary medical expenses incurred prior to Mr. Janigian's eligibility for Medicaid, which are not being covered by that program. We ask that you re-calculate the resident's available income after deducting all of his pre-eligibility medical expenses, including the nursing home bill that is attached, pursuant to D.C. I.C.A. Policy Manual Part VI, Section 7.4.

If you have any further questions, please call me.

Yours truly

*Thomas J. Hennrikus*

Thomas J. Hennrikus

TJH/
Enclosures:
    1.     Washington Home invoice, 8/31/05
    2.     Washington Home invoice, 10/7/05

cc:
    Mr. Paul Janigian
    4211 Alton Place, N.W.
    Washington, D.C. 20016-2017

Exhibit 2

# The Washington Home
# & Hospice of Washington

STATEMENT

Form PB-01

3720 UPTON STREET, NW, WASHINGTON, DC 20016-2299

| QUESTIONS? CALL: (202) 966-3720 | | |
|---|---|---|
| RESIDENT # | UNIT | STMT. DATE |
| 15852 | 249A | 10/07/2005 |
| RESIDENT(S) | | |
| Mr. Richard Janigian | | |
| TOTAL AMOUNT DUE | | $15,445.11 |
| DATE DUE | | 10/31/2005 |

PAUL JANIGIAN
8007 CARROLL AVENUE
TAKOMA PARK, MD 20912

DETACH AND RETURN THIS PORTION WITH YOUR REMITTANCE        $ _____        AMOUNT REMITTED

| DATE | DESCRIPTION | UNIT | CHARGES | Payments and for Adjustments | BALANCE |
|---|---|---|---|---|---|
| | Balance Forward | | | | 7,856.46 |
| 9/15/2005 | Beauty/Barber shop charge | 1 | 13.50 | | 7,869.96 |
| 9/29/2005 | Medical Supplies | 15 | 15.15 | | 7,885.11 |
| | RESOURCE + FR VAN 8OZ BRK | | | | |
| 1/01/2005 | Room & Board 11/01-11/30 | 30 | 7,560.00 | | 15,445.11 |

| RESIDENT # | CURRENT | OVER 30 | OVER 60 | OVER 90 | OVER 120 | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|---|
| 15852 | 7,588.65 | 7,856.46 | 0.00 | 0.00 | 0.00 | $15,445.11 |

Form PB-01

RESIDENT NAME **Mr. Richard Janigian**

payments received after the first of the month will be reflected on the next patient statement.

ance: 579343814A Medicare A/B ** R03180015 BCBS

# The Washington Home
# & Hospice of Washington

**s t a t e m e n t**

Form PB-01

3720 UPTON STREET, NW, WASHINGTON, DC 20016-2299

*TLETHE*

**PAUL JANIGIAN**          *CLESTIC*
**8007 CARROLL AVENUE**
**TAKOMA PARK, MD 20912**

| QUESTIONS? CALL: | | (202) 966-3720 | |
|---|---|---|---|
| RESIDENT #. | UNIT | | STMT. DATE |
| 15852 | 249A | | 08/31/2005 |
| | | RESIDENT(S) | |
| Mr. Richard Janigian | | | |
| 099167378 | | | |
| TOTAL AMOUNT DUE | | | $7,856.46 |
| DATE DUE | | | 09/30/2005 |

DETACH AND RETURN THIS PORTION WITH YOUR REMITTANCE          $ _____          AMOUNT REMITTED

| DATE | DESCRIPTION | UNIT | CHARGES | Payments and /or Adjustments | BALANCE |
|---|---|---|---|---|---|
| | Balance Forward | | | | 0.00 |
| 8/26/2005 | Payment on Account - Thank You!! | | | -11,592.00 | -11,592.00 |
| 8/17/2005 | ST- Oral Function Therapy | 1 | 19.53 | | -11,572.47 |
| 8/18/2005 | ST- Oral Function Therapy | 1 | 19.53 | | -11,552.94 |
| 8/31/2005 | Room & Board 08/16-08/31 | 16 | 4,032.00 | | -7,520.94 |
| 9/01/2005 | Room & Board 09/01-09/30 | 30 | 7,560.00 | | 39.06 |
| 10/01/2005 | Room & Board 10/01-10/31 | 31 | 7,812.00 | | 7,851.06 |
| 8/31/2005 | ST- Therapeutic Activities | | 5.40 | | 7,856.46 |

| RESIDENT # | CURRENT | OVER 30 | OVER 60 | OVER 90 | OVER 120 | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|---|
| 15852 | 7,856.46 | 0.00 | 0.00 | 0.00 | 0.00 | $7,856.46 |

Form PB-01
u/A

IDENT #   **Mr. Richard Janigian**

ayments received after the first of the month will be reflected on the next patient statement.

ance: 579343814A  Medicare A/B **  R03180015  BCBS

# RON M. LANDSMAN, P.A.

COUNSELOR AND ATTORNEY-AT-LAW

200-A MONROE STREET, SUITE 110

ROCKVILLE, MARYLAND 20850-4421

240-403-4300 • (FAX) 240-403-4301

rml@ronmlandsman.com

ON M. LANDSMAN*
FELLOW, NATIONAL ACADEMY OF ELDER LAW ATTORNEYS
MBERLY A. KASBERG
ASSOCIATE

OF COUNSEL
ERIN ADELE MAHONY†
WILLIAM M. GATESMAN*

————

* ALSO ADMITTED TO THE DISTRICT OF COLUMBIA BAR
† ALSO ADMITTED TO THE LOUISIANA STATE BAR

July 10, 2006

D. Harmon
Social Service Representative
Long Term Care Medicaid
645 H Street, N.E., Third Floor
Washington, DC 20002

Re:  **Linda D. Anderson**
     **DCID #: 70427005**

Dear Mr./Ms. Harmon:

    We represent Kathy A. Mancusi, court-appointed conservator of Linda D. Anderson, in the matter of her Medical Assistance benefits. Enclosed is a copy of Ms. Mancusi's representation letter.

    We wish to make a claim for deduction of Ms. Anderson's pre-eligibility medical expenses. Enclosed please find a bill for necessary medical expenses incurred prior to February, 2005 when Ms. Anderson was determined eligible for Maryland Medicaid, and which are not being covered by that program. We ask that you re-calculate the resident's available income after deducting all of her re-eligibility medical expenses, including the nursing home bill that is attached, pursuant to D.C. C.A. Policy Manual Part VI, Section 7.4.

    If you have any further questions, please call me.

                                        Yours truly

                                        Ron M. Landsman

RL/tjh

                *[Enclosures and copies listed on next page]*

Exhibit 3

D. Harmon
July 10, 2006
Page 2


Enclosures:
1.    K. Mancusi ltr to D. Harmon, DHS , 7/6/06
2.    Bills 11/04 through 1/05

cc:    Kathy Anne Mancusi, Esq.
       4423 Lehigh Road, #433
       College Park, MD 20740

NAME  LINDA            ANDERSON        #:001883          BILL#:    3    12-15-05

                                                    AMOUNT DUE: (14,949.97)

Clinton Nursing & Rehab                    PAYMENT IS DUE UPON RECEIPT
9211 Stuart Lane
Clinton, MD 20735

**STATEMENT**                              # PAST DUE

Kathy Mancusi                             BILLIG QUESTIONS PLEASE CALL
6811 Kenilworth Avenue                    (301.868.3600 EXT. 227)
Suite 100
Riverdale, MD 20737

                                                    $ _____

(SEE ENCLOSED FOR BREAK DOWN OF BILL.)



| NAME LINDA | ANDERSON | #:001883 | BILL# | 3 | 12-15-05 |
|---|---|---|---|---|---|
| DATE | DESCRIPTION | PERIOD COVERED | DAYS/UNIT | CHARGES | CREDITS |
| | | | | | |

*(handwritten note across table:)* Thank you! If you have any questions please feel free to call Cathy.

| BALANCE FORWARD | TOTAL CHARGES | TOTAL CREDITS | | AMOUNT DUE |
|---|---|---|---|---|
| 14,949.97 | .00 | .00 | | 14,949.97 |

| 30 DAYS | | 60 DAYS | | 90 DAYS | | OVER 90 DAYS | | SERVICE CHARGE | |
|---|---|---|---|---|---|---|---|---|---|
| .00 | | .00 | | .00 | | 14949.97 | | .00 | |

Clinton Nursing & Rehab          (301) 868 3600
NS-003 (9801).05

NAME: LINDA    ANDE   ON    #:001883    BILL#:    5    01-03-06

Clinton Nursing & Rehab
9211 Stuart Lane
Clinton, MD 20735



RECEIVED
JAN 0 9 2006

AMOUNT DUE: 14,949.97

PAYMENTS ARE DUE NO LATER THAN
1/15/2006

**STATEMENT**

# PAST DUE

Kathy Mancusi
6811 Kenilworth Avenue
Suite 100
Riverdale, MD 20737

BILLING QUESTIONS PLEASE CALL
301.868.3600 EXT. 227

$ _____



| DATE | DESCRIPTION | PERIOD COVERED | DAYS/ UNIT | CHARGES | CREDITS |
|------|-------------|----------------|------------|---------|---------|
| | | | | | |

NAME: LINDA    ANDERSON    #:001883    BILL#:    5    01-03-06

| BALANCE FORWARD | TOTAL CHARGES | TOTAL CREDITS | | AMOUNT DUE |
|-----------------|---------------|---------------|---|-----------|
| 4,949.97 | .00 | .00 | | 14,949.97 |

| .00 | 60 DAYS | .00 | 90 DAYS | .00 | OVER 90 DAYS | 14949.97 | SERVICE CHARGE | .00 |
|-----|---------|-----|---------|-----|--------------|----------|----------------|-----|

inton Nursing & Rehab          (301) 868 3600
03 (9601).05

NAME  LINDA          ANDE    N          #:001883          BILL#:    3    01-05-06

Clinton Nursing & Rehab
9211 Stuart Lane
Clinton, MD 20735

AMOUNT DUE:  14,949.97

**STATEMENT**

Kathy Mancusi
6811 Kenilworth Avenue
Suite 100
Riverdale, MD 20737

$ _____

| DATE | DESCRIPTION | | PERIOD COVERED | | DAYS/UNIT | CHARGES | CREDITS |
|---|---|---|---|---|---|---|---|
| 120304 | PATIENT LIABILITY | | 120104 | 123104 | 31 | 64000 | |
| 121504 | PATIENT LIABILITY | | 111504 | 112004 | 6 | 64000 | |
| 121704 | PATIENT LIABILITY | *ADJ BILL* | 111504 | 112004 | 6 | | 64000 |
| 121704 | PATIENT LIABILITY | | 103104 | 103104 | 1 | 17657 | |
| 010105 | PATIENT LIABILITY | | 110104 | 112004 | 20 | 64000 | |
| 012805 | PATIENT LIABILITY | | 010105 | 013105 | 31 | 64000 | |
| 012805 | PATIENT LIABILITY | *ADJ BILL* | 120104 | 123104 | 31 | | 64000 |
| 012805 | PATIENT LIABILITY | *ADJ BILL* | 103104 | 103104 | 1 | | 17657 |
| 012805 | PATIENT LIABILITY | *ADJ BILL* | 110104 | 112004 | 20 | | 64000 |
| 012805 | PATIENT LIABILITY | *ADJ BILL* | 010105 | 013105 | 31 | | 64000 |
| 012805 | ROOM & BOARD | | 103104 | 103104 | 1 | 17000 | |
| 012805 | ROOM & BOARD | | 110104 | 112004 | 20 | 340000 | |
| 012805 | ROOM & BOARD-Bedhold | | 112104 | 112304 | 3 | 51000 | |
| 012805 | ROOM & BOARD | | 112401 | 113004 | 7 | 119000 | |
| 012805 | ROOM & BOARD | | 120104 | 122204 | 22 | 374000 | |
| 012805 | ROOM & BOARD-Bedhold | | 122304 | 122504 | 3 | 51000 | |
| 012805 | ROOM & BOARD | | 122604 | 123104 | 6 | 102000 | |
| 020105 | ROOM & BOARD | | 010105 | 013105 | 31 | 604500 | |
| 020105 | ROOM & BOARD | *ADJ BILL* | 020105 | 022805 | 28 | 546000 | |
| 020105 | ROOM & BOARD | *ADJ BILL* | 020105 | 022805 | 28 | | 546000 |
| 020105 | PATIENT LIABILITY | | 020105 | 022805 | 28 | 64000 | |
| 022805 | PATIENT LIABILITY | *ADJ BILL* | 020105 | 022805 | 28 | | 64000 |
| 030105 | PATIENT LIABILITY | | 020105 | 022805 | 28 | 89700 | |
| 030105 | PATIENT LIABILITY | | 030105 | 033105 | 31 | 89700 | |
| 033005 | PATIENT LIABILITY | *ADJ BILL* | 020105 | 022805 | 28 | | 89700 |
| 033005 | PATIENT LIABILITY | *ADJ BILL* | 030105 | 033105 | 31 | | 89700 |
| 033005 | PATIENT LIABILITY | | 020105 | 022805 | 28 | 137066 | |
| 033005 | PATIENT LIABILITY | | 030105 | 033105 | 31 | 137066 | |
| 040105 | PATIENT LIABILITY | | 040105 | 043005 | 30 | 144886 | |
| 050105 | PATIENT LIABILITY | | 050105 | 053105 | 31 | 144886 | |
| 060105 | PATIENT LIABILITY | | 060105 | 063005 | 30 | 144886 | |
| 070105 | PATIENT LIABILITY | | 070105 | 073105 | 31 | 144676 | |
| 022704 | PAYMENT ON ACCOUNT | 985 | | | | | 85334 |
| 010405 | PAYMENT ON ACCOUNT | 3400 | | | | | 42600 |
| 010405 | PAYMENT ON ACCOUNT | 3404 | | | | | 64000 |

| BALANCE FORWARD | TOTAL CHARGES | | TOTAL CREDITS | | | AMOUNT DUE | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

NEXT PAGE

| | 60 DAYS | | 90 DAYS | | OVER 90 DAYS | | SERVICE CHARGE | |
|---|---|---|---|---|---|---|---|---|

3 (9601).06

NAME: LINDA          ANDE...        #:001883        BILL#:    3    01-05-06

AMOUNT DUE:  14,949.97

Clinton Nursing & Rehab
9211 Stuart Lane
Clinton, MD 20735

**STATEMENT**

Kathy Mancusi
6811 Kenilworth Avenue
Suite 100
Riverdale, MD 20737

$ _____

| NAME: LINDA          ANDERSON | | #:001883 | BILL#: 3 | 01-05-06 | |
|---|---|---|---|---|---|
| DATE | DESCRIPTION | PERIOD COVERED | DAYS/UNIT | CHARGES | CREDITS |
| 011805 | PAYMENT ON ACCOUNT   3410 | | | | 386000 |
| 030805 | PAYMENT ON ACCOUNT   3415 | | | | 64000 |
| 032205 | PAYMENT ON ACCOUNT   1049 | | | | 64000 |
| 041205 | PAYMENT ON ACCOUNT   RFMS# 1234 | | | | 134699 |
| 043005 | CANCELLED CHECK   3410 | | | 386000 | |
| 050305 | PAYMENT ON ACCOUNT   RFMS# 1237 | | | | |
| 050605 | PAYMENT ON ACCOUNT   RFMS# 1239 | | | | 80899 |
| 060605 | PAYMENT ON ACCOUNT   RFMS 1244 | | | | 53800 |
| 070505 | PAYMENT ON ACCOUNT   rfms 20701 | | | | 134699 |
| 071505 | PAYMENT ON ACCOUNT   RFMS3A0200 | | | | 134699 |
| 080305 | PAYMENT ON ACCOUNT   RFMS 20801 | | | | 15640 |
| 081905 | PAYMENT ON ACCOUNT   RFMS 20803 | | | | 80899 |
| | | | | | 61700 |

| BALANCE FORWARD | TOTAL CHARGES | TOTAL CREDITS | | | AMOUNT DUE |
|---|---|---|---|---|---|
| .00 | 39,610.23 | 24,660.26CR | | | 14,949.97 |

| .00 | 30 DAYS | .00 | 90 DAYS | .00 | OVER 90 DAYS | 14949.97 | SERVICE CHARGE | .00 |
|---|---|---|---|---|---|---|---|---|

Clinton Nursing & Rehab                    (301) 868 3600
B (9601).05

# RON M. LANDSMAN, P.A.

COUNSELOR AND ATTORNEY-AT-LAW

200-A MONROE STREET, SUITE 110

ROCKVILLE, MARYLAND 20850-4421

240-403-4300 • (FAX) 240-403-4301

rml@ronmlandsman.com

RON M. LANDSMAN*
FELLOW, NATIONAL ACADEMY OF ELDER LAW ATTORNEYS
KIMBERLY A. KASBERG
ASSOCIATE

OF COUNSEL
ERIN ADELE MAHONY†
WILLIAM M. GATESMAN*

* ALSO ADMITTED TO THE DISTRICT OF COLUMBIA BAR
† ALSO ADMITTED TO THE LOUISIANA STATE BAR

October 19, 2006

Ms. Yvette Thomas
D.C. Department of Human Services
Medicaid Applications–Long Term Care
645 H Street, NE, Third Floor
Washington, DC 20002

Re:    **Linda Anderson**
       **DCID #: 70427005**

Dear Ms. Thomas:

I am writing for the second time about a claim for deduction of Ms. Anderson's pre-eligibility medical expenses. I wrote to Ms. D. Harmon in July and have received no response. Since that time, Maryland Medical Assistance has approved our claim for deduction of these same expenses and paid a large share of the outstanding nursing home bill. However, there remains an outstanding balance of $6,415.31, which should be allowed as a deduction from Ms. Anderson's income from the time that she qualified for D.C. Medical Assistance.

In October, 2004, Linda Anderson was admitted to the Clinton Nursing and Rehabilitation Center in Clinton, Maryland. By the time she finally became eligible for Maryland Medical Assistance in February, 2005, she had incurred nursing home charges of $18,994. Some of the charges were eventually paid, leaving a balance of $14,949.97.

Ms. Anderson was discharged from the Clinton nursing home in July, 2005. After a hospital stay, she was admitted to the Grant Park Care Center in D.C. near the beginning of this year, and she became eligible for D.C. Medicaid in March, 2006.

We filed a claim with Prince Georges' County Department of Social Services (DSS) in May, 2006 for a deduction of the $14,949.97 in unpaid pre-eligibility nursing home charges. In July, 2006 DSS approved the claim and issued a notice recalculating Ms. Anderson's available income back to the date of initial eligibility. This resulted in a zero patient pay amount from February, 2005 until July, 2005. A copy of the notice is enclosed.

Exhibit 4

Ms. Yvette Thomas
October 19, 2006
Page 2

By approving this claim, Maryland Medicaid has covered all but $6,415.31 of the pre-eligibility charges, as reflected in the enclosed bill from Clinton Nursing Center. We are requesting that D.C. approve a deduction for the outstanding balance and apply it to Ms. Anderson's income in determining her cost of care obligation, pursuant to D.C. I.C.A. Policy Manual Part VII, Section 2.6.5., which requires that the agency "[d]educt required and optional medical or remedial expenses from the individual's income." Allowable Medical Expenses are described as

> those expenses that may be applied toward meeting the spenddown liability or deductible...[f]or prospective eligibility, medical expenses may be incurred during the prospective budget period or prior to the budget period. However, only unpaid expenses incurred prior to the budget period for which the individual is still responsible may count toward the spend-down liability. D.C. I.C.A. Policy Manual Part VI, Section 7.4

This deduction should start with the date of Ms. Anderson's initial eligibility for D.C. Medical Assistance.

Yours truly

Ron M. Landsman

RML/tjh

Enclosures:
1. Ltr. R.Landsman to D.Harmon, 7/10/06
2. Md. MA Notice of Change in Available Income, 7/17/06
3. Memorandum, DHMH to P.G. DSS 6/13/06
4. Clinton Nursing and Rehab. Ctr. Patient Statement, 10/17/06

cc:    Kathy Anne Mancusi, Esq.
4423 Lehigh Road, #433
College Park, MD 20740

CLINTON NURSING HOME

STATEMENT ON ACCOUNT
LINDA ANDERSON

10/17/2006

| Date of Service | Description | S/Day | Qty. | Total |
|---|---|---|---|---|
| 10/5 - 10/31/04 | Medicare Insurance Copay | 22.00 | 109.5 | $2,409.00 |
| 10/31/2004 | Private Room and Board | 170.00 | 1 | $170.00 |
| 11/1 - 11/30/04 | Private Room and Board | | | |
| 12/1 - 12/31/04 | Private Room and Board | 170.00 | 30 | $5,100.00 |
| 1/1 - 1/31/05 | Private Room and Board | 170.00 | 31 | $5,270.00 |
| | | 195.00 | 31 | $6,045.00 |
| Feb-05 | Patient Liability/Medical Assistance | | | $0.00 |
| Mar-05 | Patient Liability/Medical Assistance | | | $0.00 |
| Apr-05 | Patient Liability/Medical Assistance | | | $0.00 |
| May-05 | Patient Liability/Medical Assistance | | | $0.00 |
| Jun-05 | Patient Liability/Medical Assistance | | | $0.00 |
| Jul-05 | Patient Liability/Medical Assistance | | | $0.00 |

**Total Charges**                                                $18,994.00

| Date | Description | Total |
|---|---|---|
| 12/27/2004 | PAYMENT - Check # 985 | ($853.34) |
| 1/14/2005 | PAYMENT - Check # 3400 | ($426.00) |
| 1/14/2005 | PAYMENT - Check # 3404 | ($640.00) |
| 1/18/2005 | PAYMENT - Check # 3410 | ($3,660.00) |
| 3/8/2005 | PAYMENT - Check # 3415 | ($640.00) |
| 3/22/2005 | PAYMENT - Check # 1049 | ($540.00) |
| 4/12/2005 | PAYMENT - RFMS # 1234 | ($1,346.99) |
| 4/30/2005 | PAYMENT - Check # 3410 NSF Check | $3,660.00 |
| 5/3/2005 | PAYMENT - Kaiser # 7808843 | ($2,299.50) |
| 5/3/2005 | PAYMENT - RFMS # 1237 | ($808.99) |
| 5/6/2005 | PAYMENT - RFMS # 1239 | ($538.00) |
| 6/6/2005 | PAYMENT - RFMS # 1244 | ($1,346.99) |
| 7/5/2005 | PAYMENT - RFMS # 1252 | ($1,346.99) |
| 7/15/2005 | PAYMENT - RFMS # 1253 | ($156.40) |
| 8/3/2005 | PAYMENT - RFMS # 1254 | ($808.99) |
| 8/19/2005 | PAYMENT - RFMS # 1255 | ($617.00) |
| 11/17/2005 | PAYMENT - Kaiser # 7808843 | ($109.50) |

**Total Payments**                                            ($12,578.69)

**Balance Due**                                                $6,415.31

Clinton Nursing and Rehabilitation Center
9211 Stuart Lane
Clinton, MD. 20735
(301) 868-3600

10

RECEIVED
MAR 2 7 2007

H ST SRVC CNTR MED SPEC PROJ          03/23/07
645 H STREET, NE                      2029
WASHINGTON          DC   20002

PHONE NUMBER : 2026984258

PATIENT PAYABILITY

NAME OF PATIENT: RICHARD JANIGIAN

YOUR PATIENT PAY AMOUNT IS THE AMOUNT THAT YOU MUST PAY EACH MONTH
FROM YOUR INCOME DIRECTLY TO THE FACILITY THAT PROVIDES YOUR CARE.
BASED ON YOUR INCOME AND ALLOWABLE EXPENSES WE HAVE DETERMINED:

( ) THE AMOUNT YOU NOW PAY CONTINUES UNCHANGED.

( ) YOUR PRORATED AMOUNT FOR THE MONTH OF   IS .

(XXX) EFFECTIVE 01/01/06 YOUR PAY AMOUNT WILL BE $0.00.

(XXX) EFFECTIVE 06/01/06 YOUR PAY AMOUNT WILL INCREASE TO $3045.18.

( ) EFFECTIVE   YOUR PAY AMOUNT WILL DECREASE TO .

THE FOLLOWING SHOWS HOW YOUR PAY AMOUNT WAS DETERMINED AND THE REASON
FOR THE CHANGE, IF ANY.

PERSONAL NEEDS-----------$70.00
REP.PAYEE/CONSERVATOR---
MEDICAL EXPENSES--------$203.32
HOME MAINTENANCE--------
SPOUSAL MAINTENANCE-----
TOTAL ALLOWANCES--------$273.32

SOCIAL SECURITY BENEFITS--------------------$236.50
CIVIL SERVICE RETIREMENT--------------------
OTHER PENSIONS------------------------------$3082.00
TOTAL INCOME--------------------------------$3318.50

DO NOT trade or sell food stamps or authorizatio.
DO NOT alter authorization cards to get food stam
DO NOT use food stamps to buy ineligible items,
DO NOT use someone else's food stamps or auth

FRAUD                                          ME
ust report all changes in your income and resources by the 10th day of the month      You
e change happens. If a child is leaving your home for over 90 days you must            or h
that within 5 days after the child leaves. You may be subject to prosecution for      els
you knowingly give false, incorrect or incomplete information in order to             ce

ALLOWANCES----------------------------------$273.32
BALANCE (PAYABILITY AMOUNT)-----------------$3045.18

REASON: PAYABILITY CHANGE DUE TO MEDICAL EXPENSES FROM JANUARY 2006
THRU MAY 2006. ELIG: FROM 01/01/2006 TO 12/31/2006
MEDICAL ASSISTANCE MANUAL CITATION:   9410

MS BERRY
ELIGIBILITY WORKER
ATENCION:  PARA OBTENER UNA EXPLICACION DE ESTE AVISO EN ESPANOL FAVOR
LLAMAR A SU TRABAJADOR SOCIAL ENTRE LAS HORAS 8:15 A.M. Y 4:45 P.M.

Exhibit 5

H ST SRVC CNTR MED SPEC PROJ
645 H STREET, NE
WASHINGTON          DC   20002



2980          05/08/07

PHONE NUMBER : 2026984258

PATIENT PAYABILITY---------------------

NAME OF PATIENT: LINDA ANDERSON

YOUR PATIENT PAY AMOUNT IS THE AMOUNT THAT YOU MUST PAY EACH MONTH
FROM YOUR INCOME DIRECTLY TO THE FACILITY THAT PROVIDES YOUR CARE.
BASED ON YOUR INCOME AND ALLOWABLE EXPENSES WE HAVE DETERMINED:

( ) THE AMOUNT YOU NOW PAY CONTINUES UNCHANGED.

( ) YOUR PRORATED AMOUNT FOR THE MONTH OF  IS .

(XXX) EFFECTIVE 04/01/06 YOUR PAY AMOUNT WILL BE $0.00.

( ) EFFECTIVE  YOUR PAY AMOUNT WILL INCREASE TO .

( ) EFFECTIVE  YOUR PAY AMOUNT WILL DECREASE TO .

THE FOLLOWING SHOWS HOW YOUR PAY AMOUNT WAS DETERMINED AND THE REASON
FOR THE CHANGE, IF ANY.

PERSONAL NEEDS------------------------
REP.PAYEE/CONSERVATOR---------------$70.00
MEDICAL EXPENSES--------------------
HOME MAINTENANCE--------------------$1581.40
SPOUSAL AND FAMILY MAINTENANCE-----
TOTAL ALLOWANCES--------------------$1651.40

SOCIAL SECURITY BENEFITS------------
CIVIL SERVICE RETIREMENT------------$642.40
OTHER PENSIONS----------------------$1009.00
TOTAL INCOME------------------------$1651.40

ALLOWANCES--------------------------$1651.40
BALANCE (PAYABILITY AMOUNT)---------$0.00

REASON: PAYABILITY CHANGE DUE TO MEDICAL EXPENSES.   ELIG:  FROM
04/01/2006 TO 07/31/2006
IMA MANUAL CITATION:    PART VII, CHAPTER 2, SECTION 2.14

MS BERRY
ELIGIBILITY WORKER
ATENCION: PARA OBTENER UNA EXPLICACION DE ESTE AVISO EN ESPANOL FAVOR
LLAMAR A SU TRABAJADOR SOCIAL ENTRE LAS HORAS 8:15 A.M. Y 4:45 P.M.

Exhibit 6

H ST SRVC CNTR MED SPEC PROJ
645 H STREET, NE                                            05/08/07
WASHINGTON          DC  20002                          2979

PHONE NUMBER : 2026984258

PATIENT PAYABILITY

NAME OF PATIENT: LINDA ANDERSON

YOUR PATIENT PAY AMOUNT IS THE AMOUNT THAT YOU MUST PAY EACH MONTH
FROM YOUR INCOME DIRECTLY TO THE FACILITY THAT PROVIDES YOUR CARE.
BASED ON YOUR INCOME AND ALLOWABLE EXPENSES WE HAVE DETERMINED:

( ) THE AMOUNT YOU NOW PAY CONTINUES UNCHANGED.

( ) YOUR PRORATED AMOUNT FOR THE MONTH OF  IS .

(XXX) EFFECTIVE 08/01/06 YOUR PAY AMOUNT WILL BE $565.39.

(XXX) EFFECTIVE 09/01/06 YOUR PAY AMOUNT WILL INCREASE TO $1396.14.

( ) EFFECTIVE  YOUR PAY AMOUNT WILL DECREASE TO .

THE FOLLOWING SHOWS HOW YOUR PAY AMOUNT WAS DETERMINED AND THE REASON
FOR THE CHANGE, IF ANY.

PERSONAL NEEDS-------------------------$70.00
REP-PAYEE/CONSERVATOR-----------------
MEDICAL EXPENSES----------------------$185.26
HOME MAINTENANCE----------------------
SPOUSAL AND FAMILY MAINTENANCE--------
TOTAL ALLOWANCES----------------------$255.26

SOCIAL SECURITY BENEFITS--------------------$642.40
CIVIL SERVICE RETIREMENT--------------
OTHER PENSIONS-----------------------------$1009.00
TOTAL INCOME------------------------------~$1641.40

ALLOWANCES-----------------------------------$255.26
BALANCE (PAYABILITY AMOUNT)------------------$1396.14

REASON: PAYABILITY CHANGE DUE TO MEDICAL EXPENSES.   ELIG:  FROM
08/01/2006 TO 12/31/2006
IMA MANUAL CITATION:     PART VII, CHAPTER 2, SECTION 2.14

MS BERRY
ELIGIBILITY WORKER
ATENCION: PARA OBTENER UNA EXPLICACION DE ESTE AVISO EN ESPANOL FAVOR
LLAMAR A SU TRABAJADOR SOCIAL ENTRE LAS HORAS 8:15 A.M. Y 4:45 P.M.

## GOVERNMENT OF THE DISTRICT OF COLUMBIA
### Office of the Attorney General



**Civil Litigation Division**
**Equity I**


TO:        Cyril Smith, Esq.
           Carlos Angulo, Esq.
           Ron Landsman, Esq.
           Plaintiffs' Counsels
           [VIA EMAIL TO CARLOS ANGULO]

FROM:      Jayme Kantor, Esq.
           Assistant Attorney General
           Office of the Attorney General

CC:        Patricia Squires
           Deputy Chief of Program Operations
           Department of Health
           Medical Assistance Administration

DATE:      June 27, 2007

RE:        Reimbursement Checks for Richard Janigian and Linda Anderson


Dear Mr. Smith,


Please be informed that the District of Columbia Department of Health has cleared the amount of reimbursement for monies paid by Mr. Janigian and Ms. Anderson to their respective long term care facilities in the District of Columbia in the following amounts:


1)    Richard Janigian: $15,344.11
2)    Linda Anderson: $6,053.89


By signing this letter, you acknowledge that you will accept receipt of the checks made payable to Richard Janigian and Linda Anderson, respectively, and when you receive such checks, you will so inform Mr. Janigian and Ms. Anderson. Upon receipt of your signature on this letter, the checks will be forwarded to you. You may sign and fax this letter back to me or PDF the signed copy and email it back to me.


Exhibit 7

If you are unwilling to accept these checks or your clients' behalf, please so inform us and we will wend them directly to Mr. Janigian and Ms. Anderson.

_____

Cyril Smith, Esq.
Counsel for Plaintiffs Janigian and Anderson

Sincerely,

/s/
Jayme Kantor
Assistant Attorney General
Office of the Attorney General
PHONE (202) 724-6627
FAX (202) 727-3625

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**Office of the Attorney General**



**Civil Litigation Division**
**Equity I**

July 13, 2007

Cyril Smith, Esq.
Zuckerman Spaeder, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202

Dear Mr. Smith,

Your co-counsel, Mr. Carlos Angulo indicated to me on July 11, 2007, that you would not be accepting the reimbursement checks on your clients' behalf. Pursuant to my letter to you on June 27, 2007, I indicated that if you were not inclined to accept these checks, they would be sent directly to Mr. Janigian and Ms. Anderson, respectively. Such has been done. Enclosed, please find copies of what was sent to your clients by the District of Columbia Department of Health. I have also enclosed a copy of the letter which was emailed to you on June 27, 2007.

Sincerely,

_____
Jayme Kantor
Assistant Attorney General
(202) 724-6627
Jayme.Kantor@dc.gov

**441 4ᵗʰ Street, N.W., 6ᵗʰ Floor South        Washington, D.C. 20001        (202) 727-3400**

Exhibit 8

1392012.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RICHARD JANIGIAN, JR.**, *et al.*, | ) | Civil Action No. 1:07-cv-00508 |
| | ) | Judge Paul L. Friedman |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **GREGG A. PANE**, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RULE 56(f) DECLARATION OF CYRIL V. SMITH

I, Cyril V. Smith, submit this declaration pursuant to Fed.R.Civ.P. 56(f) under penalty of perjury pursuant to 28 U.S.C. § 1746.

1.     I am over 18 years of age and competent to testify in this action.

2.     I am an attorney representing the named Plaintiffs and the putative class members in this action and have been involved in this action since its inception.   I make this declaration of my own personal knowledge.

3.     I have reviewed Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment as well as its supporting Memorandum of Points and Authorities (the "Memorandum") and Declaration of Michael Cunningham (the "Cunningham Decl."). In his Declaration, Mr. Cunningham states that he is the Supervisory Policy and Program Analyst in the Income Maintenance Administration ("IMA") within the District of Columbia's Department of Human Services responsible for supervision of the development of new and amended policies needed to implement laws and regulations related to public assistance programs, including the DC Medicaid program.

1382747.1

Cunningham Decl. ¶ 1.

4.    In their moving papers, Defendants make numerous factual assertions in

support of their alternative motion for summary judgment, including:

a. The District's State Medicaid Plan allows for the deduction of pre-eligibility
medical expenses that Plaintiffs claim should have been deducted
(Cunningham Decl. ¶ 1; Memorandum 15);

b. Pursuant to the District's policy, the IMA deducts from the person's income
the incurred medical expenses for medical care that are not subject to
payment by a third party (Cunningham Decl. ¶ 1);

c. Plaintiffs' isolated incidents [of non-deductions] are just that – isolated
incidents (Memorandum 15);

d. Defendants are unaware of any other individuals who have qualified for
Medicaid's long term care program and who have pre-eligibility incurred
medical expenses that have not been deducted from their income
(Cunningham Decl. ¶ 10);

e. Defendants have recently changed the IMA payability form to include a
line for pre-eligibility medical expenses that are at issue in this lawsuit
(Cunningham Decl. ¶ 8);

f. Defendants have recently changed the IMA payability form to include
instructions regarding the pre-eligibility medical expenses that are at issue
in this lawsuit (Cunningham Decl. ¶ 8);

g. Defendants have recently revised their procedures to review applications
for income deductions for the pre-eligibility medical expenses that are at
issue in this lawsuit (Cunningham Decl. ¶ 8);

h. IMA has met with nursing home representatives to review the new
payability form as part of new training procedures (Cunningham Decl.
¶ 11); and

i. The new forms and procedures allegedly implemented by Defendants will
ensure that pre-eligibility medical expenses will not be missed in the future
when the District calculates beneficiaries' contributions to cost of care
(Cunningham Decl. ¶ 10).

5.    These assertions raise a host of disputed questions of material fact, and to

the extent Defendants proffer them in support of their alternative Motion for Summary

2

1382747.1

Judgment, Plaintiffs require discovery (starting with Mr. Cunningham's deposition) and

including:

      a.   The existence, scope, and implementation of Defendants' asserted new policy for allowing the deduction of pre-eligibility medical expenses in calculating Medicaid beneficiaries' contribution to cost of care;

      b.   Instances of Defendants denying to Medicaid beneficiaries other than Plaintiffs the deduction of pre-eligibility medical expenses when calculating the beneficiaries' contribution to cost of care (Plaintiffs believe they can demonstrate there are many);

      c.   The reasons Defendants denied this required deduction to named Plaintiffs and any other Medicaid beneficiaries similarly affected;

      d.   The identities of all employees or agents of the D.C. Medicaid office responsible for the denial of the required deduction from the named Plaintiffs and any other Medicaid beneficiaries similarly affected;

      e.   The amount of money unlawfully withheld by Defendants from Medicaid beneficiaries other than Plaintiffs because of Defendants' failure to deduct pre-eligibility medical expenses in calculating the beneficiaries' contribution to cost of care;

      f.   The nature, scope, and use of the alleged new line on the IMA payability form for requesting the deduction of pre-eligibility medical expenses

      g.   The nature, scope, and use of the alleged new instructions on the IMA payability form regarding deduction of pre-eligibility medical expenses;

      h.   The nature, scope and implementation of the alleged new procedures for Defendants to review applications for income deductions for pre-eligibility medical expenses; and

      i.   The nature, extent, and participants in the alleged new training by IMA of nursing home representatives regarding deductions for pre-eligibility medical expenses.

    6.     No discovery has taken place in this lawsuit to date, including any

discovery concerning the material facts set forth above.  Counsel have not held their

Rule 26 meeting yet; there is no discovery order; and no discovery has yet been served.

    7.     Without discovery on these and other issues of material facts, Plaintiffs

1382747.1

are unable at the present time to present by affidavit or other sworn testimony facts essential to support their Opposition to Defendants' alternative Motion for Summary Judgment.

I declare under the penalties of perjury that the foregoing is true and correct. Executed on July 1 5, 2007 in Baltimore, Maryland.

_____
Cyril V. Smith