## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RICHARD JANIGIAN, JR., et. al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.: 07 CV 508** |
| | ) | **Judge Paul L. Friedman** |
| **v.** | ) | |
| | ) | |
| **THE DISTRICT OF COLUMBIA, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

## <u>DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT</u>

The District of Columbia, its agencies and employees (hereinafter "the District"), through their attorney the Office of the Attorney General for the District of Columbia, respond to Plaintiffs' Opposition to Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("Plaintiffs' Opposition") as follows:

### INTRODUCTION

Defendants' Motion to Dismiss establishes that (1) Plaintiffs' complaint is moot because DOH has reimbursed money owed to Plaintiffs as a result of an administrative oversight and because there is no serious risk that the allegedly improper conduct will recur; (2) Plaintiffs failed to exhaust available administrative remedies, instead choosing to file suit while an administrative hearing initiated by Plaintiffs was pending; and (3) Plaintiffs have failed to adequately allege a policy of violating federal law as required to establish municipal liability under section 1983, and the undisputed facts establish that no such policy exists.

Plaintiffs' opposition does not and can not seriously dispute that the claims of the named Plaintiffs in this action are moot. Further, while Plaintiffs would have the Court believe otherwise, their own authority establishes that, absent circumstances not present here, the general rule is that dismissal of a putative class action is required when the named Plaintiffs' claims become moot prior to class certification. Plaintiffs' opposition thus depends upon mantra-like repetition of the fallacy that Defendants' payment to Plaintiffs of all the money that is owed to them derives from a plot to "pick off" the named Plaintiffs in order to protect a purported "practice" of miscalculations from the specter of a class action. Indeed, the words "pick off," "picking off," or synonymous variations (*e.g.*, "they only respond to lawsuits," "litigation . . . is the only stimulus to their compliance with the law," "it is obvious they will only recalculate previous denials . . . when they are sued," "it is *only* because of this litigation that . . .") appear at least fifteen times in Plaintiffs' opposition.

The simple truth, however, is that Plaintiffs initiated an administrative proceeding to correct a miscalculation and then refused to allow the agency to resolve the claim within the context of that process. Instead, twelve days before a hearing was scheduled on plaintiff Janigian's claim, and immediately following a hearing postponement that Janigian requested, Plaintiffs filed a putative class-action lawsuit. Plaintiffs circumvented the very purpose of the federally-mandated Medicaid administrative process (and the exhaustion doctrine more generally), which is to allow an agency to correct its errors short of litigation. Unsatisfied with foreclosing the federally-mandated administrative process, Plaintiffs' attempted to prevent the District from correcting its error by refunding more than $20,000.

Plaintiffs' claims are moot, and, combined with the concrete actions that the District has taken to prevent the repetition of the errors alleged in this case, demonstrate the non-existence of Plaintiffs' allegation of an unconstitutional "policy." The undisputed facts simply do not support Plaintiffs' theory of a custom or practice that violates federal law. Because Plaintiffs' "picking off" assertions are at odds with the undisputed facts and, independently, because Plaintiffs have done nothing to refute any of Defendants' other arguments, Plaintiffs' complaint must be dismissed.

## ARGUMENT

### A.  <u>Plaintiffs Claims are Moot</u>

Plaintiffs' claims cannot survive dismissal. To be clear, Plaintiffs are not challenging a denial of Medicaid benefits. Both Plaintiffs were declared eligible and received Medicaid coverage, and Plaintiffs are not challenging a termination of benefits, because neither Plaintiff's benefits were terminated by the District's Medicaid program. Thus, the underlying predicate constitutional violation that Plaintiffs allege is nothing more than a mistake in the application of a completely constitutional policy. The District corrected its mistake in calculating these two Plaintiffs' contribution to their costs of care, and, therefore, there is nothing more for Plaintiffs to get in this action. Their claims are moot. Plaintiffs have failed to articulate a § 1983 violation, either for themselves or for a broader class.[1]

---

[1] The District Defendants continue to reserve the right to oppose a motion to certify a class, which has not been done as of this filing.

1.    *Plaintiffs Do Not and Can Not Dispute That the Named Plaintiffs' Claims are Moot.*

Defendants have tendered Plaintiffs the money that they are owed.  Plaintiffs do not attempt to argue that there is any real risk that the named Plaintiffs will, in the future, be denied deductions for pre-eligibility medical expenses.  In fact, even if they were still in the position to have pre-eligibility incurred medical expenses deducted, their payability forms were recalculated retroactively up until the point where their pre-eligibility expenses would have been paid off, such that there would be no more of this deductible expense to actually deduct.  *See* example in *Cunningham Declaration*, p. 3.  Instead, Plaintiffs' efforts to resist dismissal of this action on mootness grounds rest entirely on the status of claims of unidentified individuals who are not before the Court; no motion for class certification has been filed, let alone granted.[2]

2.    *The Nature and Purpose of the Medicaid Statute, the Frivolousness of Plaintiffs' "Picking Off" Allegations, and the Plaintiffs' Decision to Abandon the Administrative Process Dictate Application of the General Rule That a Putative Class Action Should be Dismissed When the Named Plaintiffs' Claims Become Moot.*

While Plaintiffs would have the Court believe otherwise, their own authority supports the general rule that "a class action may be dismissed when the named plaintiff's claim is rendered moot before filing a motion for class certification."  *See Weiss v. Regal Collections*, 385 F.3d 337, 342 (3rd Cir. 2004), citing *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 343 (3rd Cir. 2003) ("When claims of the names plaintiffs become moot before class certification, dismissal of the action is *required*."), quoting *Lusardi v. Xerox Corp.*,

---

[2] Although Plaintiffs have had ample time since the filing of the complaint on March 16, 2007, no motion for certification under Rule 23 has been filed, no class has been certified, and, certainly, defendant has had no opportunity to demonstrate why Plaintiffs cannot meet the requirements of Fed.R.Civ.P. 23. Notwithstanding, Plaintiffs seek to plead their case as if a class has been certified.

975 F.2d 964, 974 (3rd Cir. 1992) (emphasis added).  The circumstances that led the Court to carve out an exception to the general rule in *Weiss* provide a telling contrast to the facts of this case.

First, *Weiss* addressed the implications of an offer of judgment to the named class representatives on the continuing ability to maintain the class action.  Because the law did not require defendants to make the offer of judgment in *Weiss*, the Court's decision to permit the rejection of the offer to avoid mooting the class did not result in a continuing violation of the law.  By contrast, this case involves the unconditioned administrative payment of funds that (both sides agree) are required by federal and state entitlement law.[3]  Accordingly, permitting the Plaintiffs to decline the funds for the sake of maintaining the putative class action's viability would require the Court to approve a continuing violation of federal law.

Even more fundamentally, in *Weiss*, the Court idenitified as a "significant consideration" the fact that Congress "explicitly provided for class damages in the" Fair Debt Collection Practices Act ("FDCPA") and that Congress "also intended the FDCPA to be self-enforcing by private attorney generals." *Id*. at 345.  The Court concluded that "representative actions" were "fundamental to the statutory structure of the FDCPA" and, thus, that allowing defendants to pick off named plaintiffs with isolated $1,000 offers of judgment would sabotage the very purpose of the FDCPA, encourage unnecessary successive litigation, and waste judicial resources.  *Id*.

Here, the concerns are precisely the opposite.  The Medicaid statute contemplates and indeed requires the implementation of an administrative process designed to allow

---

[3] By law, the agency **must** make corrective payments to an individual if the agency decides in the person's favor, even if such determination occurs before the hearing, as in this case.  42 C.F.R. § 431.246.

agencies to correct their errors, and to enable Medicaid beneficiaries to obtain badly needed funds, short of federal litigation. In this case, DOH was required to make the payment of reimbursement.[4]  Well aware that no class action could have been brought if the administrative process resolved Plaintiffs'concerns, Plaintiffs prevented that administrative process from accomplishing its goal by filing suit twelve days prior to the scheduled administrative hearing date.[5]  Thus, while the dismissal of this action would not encourage piecemeal successive litigation because of availability of the administrative process, permitting the continuation of the class action notwithstanding payment of the claims to the named Plaintiffs would countenance the shunning of the judicial process and waste judicial resources by preventing the correction of errors in the administrative process.  Allowing this lawsuit to proceed on the facts presented here simply would encourage the filing of complex litigation for any mistake that the agency might make.

Still more perverse, encouraging the resort to complex litigation as a first rather than a last resort confounds the very purpose of the Medicaid statute – *i.e.* the payment of benefits to eligible beneficiaries.  Unlike the FDCPA, which uses the aggregation of

---

[4] In fact, as stated in *Defendant's Motion*, the State Medicaid Manual allows for Medicaid claims to be re-opened and recovered up to one year from a final Medicaid determination, which includes "errors in computing resources, income or spenddown requirements…" See *Defendants' Motion* at 6, n. 5; State Medicaid Manual issued by the U.S. Department of Health and Human Services Center for Medicare and Medicaid Services.   After IMA and DOH investigated the matters of these two Plaintiffs, reviewed their cost of care since their enrollment in the District's Medicaid program, and recalculated the payability amount after including the deduction Plaintiffs requested in their July, 2006, letters, DOH issued checks for reimbursement payable to the Plaintiffs.

[5] Plaintiffs seek to divert attention from the fact that a hearing had been scheduled prior to the filing of this complaint with the vague and misleading phrasing that "Neither matter had come up for hearing as of March 16, 2007 when the original Complaint in this matter was filed." *Plaintiffs' Opposition* at 9.  The hearing for Ms. Anderson had not been scheduled as of the date of the filing of the lawsuit, but only because the request for the hearing was filed several months after Janigian's request.  DOH responded to Janigian's October 31, 2006, request on March 2, 2007, setting a March 28, 2007, hearing date.  Similarly, DOH responded to Anderson's January 17, 2007, request on May 11, 2007, with a scheduled hearing date of May 30, 2007.  The nearly identical response time underscores the routine administrative process underway when Plaintiffs filed this unnecessary and obstructive lawsuit.

small payments to individuals as a means to the end of encouraging compliance with fair debt collection laws, the end of the Medicaid statute is the repayments themselves. Treating Medicaid recipients as private attorney generals rather than individuals who need help paying for their health case has led to the absurd result of Plaintiffs' representatives actively attempting to prevent the unconditioned payment of more than $20,000 to their two clients – first by abandonment of the administrative process twelve days before the first hearing and then by actively obstructing the payment of funds to their clients after the commencement of litigation.[6]

Finally, while not strictly relevant, Plaintiffs weakly assert, without any support, that the payment of funds to Plaintiffs' clients was "improper." *Plaintiffs' Opposition* at 10, n. 3. Defendants are unaware of any prohibition on making payments that are authorized and required by federal and state law to eligible beneficiaries, and (though not required to do so), Defendants gave Plaintiffs' counsel the opportunity to accept payments on their clients' behalf.[7] Similarly, Defendants are unaware of any law or rule that permits counsel for Plaintiffs to take steps to prevent the payment of required benefits to medically needy clients. Unlike the FDCPA context where it is understood that the named representative's interest in the $1,000 payment is largely subordinate to the individuals' and class attorneys' role of ensuring compliance with the law, difficult

---

[6] It bears noting that Plaintiffs still have not moved for class certification 4 ½ months after the filing of the complaint.

[7] Prior to the actual issuance of the checks, Defendants filed the instant Motion to Dismiss on June 21, 2007, with clear statements that this reimbursement process was well underway and, in fact, the agency had already completed the calculations and was simply waiting for the checks to issue. *Defendants' Motion* at 10-11. Out of an abundance of caution, due to the timing of the checks becoming available after the inception of litigation, the Office of the Attorney General ("OAG") contacted Plaintiffs' counsel to give them the opportunity to accept the checks on their clients' behalf simply as a courtesy, which they declined. What Plaintiffs' counsel have now presented to the Court as an illicit communication with Plaintiffs is incredibly disingenuous. OAG informed DOH that Plaintiffs' counsel was not going to accept the checks on behalf of their clients and DOH sent the checks directly to the patients as part of their administrative processing of the reimbursement, with a courtesy copy of such correspondence to the patients' attorneys.

ethical issues arise when, prior to certification of a class, an attorney advances the pursuit

of class certification over the immediate financial interests of his or her clients.[8]

Avoidance of these difficult issues is yet another reason why this Court should follow the

general rule and dismiss this action as moot.

      3.      *The Voluntary Cessation Exception to Mootness is Irrelevant.*

Plaintiffs' discussion of the "voluntary cessation" exception to mootness is

irrelevant because, as discussed above and in Defendants' initial motion at 10, there is

clearly no risk of recurrence of the mistake as to the Plaintiffs and, independently,

because the payments did not arise "*because* of the litigation." *Sze v. INS*, 153 F.3d 1005,

1008 (9th Cir. 1998), *overruled in part on other grounds* (quoting *Public Utilities*

*Comm'n of State of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1460 (9th Cir. 1996))(emphasis in

original). Instead, the payments occurred after the filing of the complaint only because

Plaintiffs chose to commence litigation in lieu of participating in the administrative

process that they initiated. In addition, the application of the exception to unnamed

individuals not before the Court is irrelevant because, as discussed in the prior section,

Plaintiffs may not defeat mootness by relying on the claims of such individuals, at least

prior to the certification of the class.

It is nonetheless worth noting that, even assuming the relevance of non-plaintiff

claims, there is no basis for Plaintiffs' attempt to invoke the exception. Plaintiffs'

argument requires the Court to believe that there is a reasonable risk that Defendants

intend to withdraw the modifications to the payability form and other measures described

---

[8] Plaintiffs rely on *Brown v. Payne*, Superior Court Civ. Action No: 2006 CA 005089,[8] but nowhere does that opinion state that an agency is prohibited from reimbursing funds owed to a recipient because of pending litigation, let alone that such payment constitutes a prohibited communication under the Rules of Professional Conduct. Counsel in *Brown* is the same counsel in this action.

in Defendants' initial motion as soon as the lawsuit is dismissed and/or that such measures were merely a stalking horse for Defendants' real plan to disallow post-dismissal deductions of pre-eligibility medical expenses. The patent implausibility of this notion, and one unsupported by any facts, is heightened still further by the absence of any reason to believe that there was a past policy of disallowance and the related fact that Plaintiffs never even allowed the administrative process to run its course. Plaintiffs' suggestion contradicts the basic principle that when defendants are "'public officials,'" courts "'place a greater stock in their acts of self-correction so long as they appear genuine.'" *Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003), *cert denied* (quoting *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991)).[9] *Compare also Clarke v. United States*, 915 F.2d 699, 705 (D.C. Cir. 1990) ("[a]t least in the absence of overwhelming evidence (and perhaps not then), it would seem inappropriate either for the courts to imputer such manipulative conduct to a coordinate branch of government, or to apply against that branch a doctrine that appears to rest on the likelihood of a manipulative purpose.").

---

[9]    See also Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.7 at 353-54 (2d. ed. 1984) (stating that courts "are more apt to trust public officials than private defendants to desist from future violations" and that "self-correction again provides a secure foundation for mootness so long as it seems genuine"). Indeed, when "government laws or policies have been challenged, the Supreme Court has held almost uniformly that cessation of the challenged behavior moots the suit." *Troiano v. Supervisor of Elections in Palm Beach County*, 382 F.3d 1276, 1283 (11th Cir. 2004)(citing cases and further holding that "when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will not recur") (emphasis in original). See also *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990) (dismissing challenge as moot based on a subsequently enacted statute and the related state and federal regulations and holding that "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties") (quoting *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1998)); see also note 3, supra (citing various cases dismissing challenges as moot based on repeals or revisions that occurred after the commencement of litigation); *Jews for Jesus, Inc. v. Hillsborough County Aviation Authority*, 162 F.3d 627, 629 (11th Cir. 1998) (holding that there was no reasonable likelihood of recurrence of an airport policy repealed after the commencement of litigation, and stating that if the airport chose to reinstitute its policies "the courthouse door is open for" the plaintiff "to reinstate its lawsuit" and that the "case would not be moot" under such circumstances because "such 'flip-flopping' would create a reasonable expectation" of recurrence).

Plaintiffs have made no showing how recurrence could be possible – these Plaintiffs' cost of care contribution has been recalculated and reimbursed. *See Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment* ("Defendants' Mot.") at 9-12. Plaintiffs' repeated allegations regarding the insufficiency of the remedial measures that the District has taken to prevent future occurrences not only are irrelevant to the Plaintiffs, but are wholly conclusory. Plaintiffs present no theory on which these Plaintiffs could be harmed again – these Plaintiffs are the only ones to whom the harm must be likely to recur since this matter is not a class action. Defendants have reimbursed these Plaintiffs, thus, it is "absolutely clear" that the alleged wrongful behavior could not reasonably be expected to recur and Defendants have "completely or irrevocably eradicated" the effects of the violation Plaintiffs allege.[10] *Plaintiffs' Opposition* at 12, quoting language from *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968) and *Los Angeles County v. Davis*, 440 U.S. 625, 631; *Cf.* Defendants' Motion at 9, also citing *Concentrated Phosphate.*

**B.    Plaintiffs' Section 1983 Claims Must be Dismissed Because Plaintiffs Have Not Adequately Alleged a Policy, Custom or Practice Sufficient to Create Liability Under § 1983 and Because The Undisputed Facts Establish That No Such Policy Existed, Let Alone Continues To Exist.**

Plaintiffs' § 1983 claim cannot survive dismissal because they have not sufficiently alleged a policy of denying pre-eligibility medical expenses and because the undisputed facts demonstrate that any such assertion, even if properly made, would be

---

[10] Plaintiffs' allegations that Defendants erred in "how they derived the benefit offered," though not a material fact in genuine dispute, is yet another reason why the administrative process in Medicaid claim-oriented cases is preferential to litigation.

frivolous.  The District's clearly articulated policy, as both sides agree, is to allow for the deductions at issue here.  *Plaintiffs' Opposition*, p. 7; *Cunningham Declaration*, ¶ 2-3. Plaintiffs' reliance on *Baker v. District of Columbia*, 326 F.3d 1302 (D.C. Cir. 2003), to control this case is misplaced because the circumstances of a "policy" here are inapposite. *Baker* describes, as Plaintiffs cite in their opposition at p. 23, a myriad of methods for arriving at a "policy,"  but the circumstances here hardly amount to the "deliberate indifference" required to establish § 1983 liability on the part of a municipality.

Plaintiffs' assertion that the District has "ignored the law and created a policy to deny the required Medicaid benefit" is an unsubstantiated conclusion that *Twombley* holds to be insufficient to state a claim for relief, and stands in stark contrast with the undisputed facts.  *Plaintiffs' Opposition*, p. 23; *Twombley*, 127 S.Ct. 1965.  Specifically, it is undisputed that Plaintiffs' initial application did not submit proof of their pre-eligibility medical expenses.  Additionally, it is undisputed that at the time this lawsuit was filed, both Plaintiffs had already requested administrative hearings and Plaintiff Janigian already had notice of his upcoming hearing date.   Although Defendants appreciate that § 1983 itself does not require the exhaustion of administrative remedies, Plaintiffs should not be able to "game the system" simply for the purpose of attempting to maintain a putative class action.

Further, the arguments in Plaintiffs' opposition demonstrate that their assertion of a policy rests on nothing more than sophistic wordplay.  For instance, Plaintiffs incessantly assert that Defendants have "conceded" or "admitted" the existence of a policy.  Twisting and turning Michael Cunningham's declaration regarding these two plaintiffs where a deviation from policy occurred simply cannot rise to the level of a

systemic problem sufficient to support a § 1983 violation and, moreover, Plaintiffs cannot

bootstrap this into a putative class action.  Cunningham specifically states that the

District's Medicaid program allows for the type of deduction at issue here *when proof of*

*the expense is presented* to Medicaid by the patient. *Cunningham Declaration*, ¶ 9

(emphasis added).  This proof was not provided in the initial applications, as Plaintiffs

would have this court believe; rather the application specifically advises the applicant to

contact the program if they have medical bills.  Plaintiffs' Exhibit 1.

        While Plaintiffs argue that they put the District effectively on notice in the initial

application for Medicaid coverage, they fail to mention the fact that the application form

tells the applicant that if they have medical expenses, there is a number for them to call.

Plaintiffs' Exhibit 1.  Plaintiffs implication that there is some State duty to *investigate* an

applicant's debt history is wholly unfounded; rather, it is an affirmative duty on the part

of the applicant.  This is clearly stated on the form: "If you get Medical Assistance, you

can get paid back for some bills that you have paid.  We can also pay some unpaid bills.

**Call (202) 689-2009**."  Plaintiffs' Exhibit 1.[11]

        Here, there was no "systemic failure" to deduct this expense at the time of the

Plaintiffs' application.  There is no indication that Plaintiffs informed the District of the

expenses with "proof of the expense" until July, 2006, and Plaintiffs do not suggest

otherwise.  Therefore, the fact that Michael Cunningham did not know why the expense

was not deducted is simply because the District, by Plaintiffs' own admission, did not

---

[11] Counsel Ron Landsman submitted Plaintiff Richard Janigian's application for Medicaid on January 23, 2006, with a list of documents enclosed, none of which was the "proof of medical expenses" that is required for the deduction.  There is no information known to the District to support the claim that the District had received "proof of medical expenses" from the Plaintiffs prior to July, 2006.  Plaintiffs' statements that Defendants knew that they had medical expenses simply from the box checked is insufficient – the box where the applicant checks "yes" for medical bills also explicitly states to call the given number. In their presentation of "facts," Plaintiffs just ignore this fact in plain view on their own exhibit.

have proof of the medical expenses until July, 2006. This, standing alone, and which is all there is, does not present an indication of a system-wide failure to deduct this type of expense.

At the very worst, failure to credit Plaintiffs' pre-eligibility incurred medical expenses was an administrative mistake, but only after the July, 2006, notification – prior to that it was the applicant's duty to contact the program, not the program's duty to investigate. Even calling this a mistake is difficult because there is no indication of a precise wrongdoing – the Medicaid form instructs the applicant to make further inquiry of the agency if he or she has a medical expense concern. Plaintiffs do not allege that such occurred until long after their application was processed. But even a mere mistake on the part of a municipality, which is, at the absolute most, all that the facts here could possibly support, does not establish § 1983 liability. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).[12] Plaintiffs cannot create a § 1983 claim, nor a class action, out of two isolated instances which, by the facts presented, can be no greater than a mistake. Further, any subsequent remedial measures the District took to prevent future instances like the two in this case from occurring are inadmissible to prove liability. *See, e.g., Ray v. American Nat'l Red Cross*, 696 A.2d 399, 408 (D.C. 1997) ("Whether the [defendant changed its policy] as a result of new information or simply because it wished to forestall future litigation is immaterial . . . .").

---

[12] *See* also *Defendants' Motion* at 13.

Plaintiffs' hyperbolic tirade of inaccurate "admissions" and "concessions" by Defendants to support a "program-wide" practice is misleading. *Plaintiffs' Opposition*, p. 8-9.[13] First, Plaintiffs state that the form used to calculate the patients' cost of care "omitted a line for listing the amount of pre-eligibility medical expenses." *Id.* The term "omitted" is misleading because that means that something was missing in the first place. Rather, as Michael Cunningham stated, this deduction was allowed by the program. When his office learned that it had been missed in these two cases, the agency took an extra measure to *include* a line to the calculation forms to minimize the chance of this deduction being missed in the future. *Cunningham Decl.*, ¶ 8. Plaintiffs relentlessly mischaracterize the declaration of Cunningham regarding new forms, policy and procedure as an admission that the process was flawed system-wide. However, since Cunningham stated that he did not know how the particular problem with these two Plaintiffs occurred, one could hardly say that the problem was system wide. Instead, the forms were revised out of an abundance of caution.

Plaintiffs' second and third allegations of admissions by Defendant – failure to instruct and flawed procedures, respectively – supporting a program-wide practice of deliberate indifference simply have no evidentiary support whatsoever and are therefore entirely speculative, which is completely contradictory to the pleading threshold that *Twombley* requires Plaintiffs to meet. *Cf. Plaintiffs' Opposition*, p. 9, with *Twombley*, 127 S. Ct. at 1965 (plaintiff must assert facts that "raise a right to relief above the speculative level."); see also *Kowal v. MCI Communications Corp., Inc.*, 16 F.3d 1271,

---

[13] Plaintiffs rely on a declaration by one of the Plaintiffs' attorneys to counter the Defendants' declaration of facts by the Supervisory Policy and Program Analyst in the Income Maintenance Administration. *Cf.* Plaintiffs' Declaration of Ron Landsman with Defendant's Declaration of Michael Cunningham. It is troublesome that one of Plaintiffs' attorneys has presented as a fact witness thereby subjecting himself to cross-examination if this case proceeds and, further, blurring the lines between advocate and fact witness.

1276 (D.C. Cir. 1994) (courts "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations.").  Plaintiffs beg the court to accept their legal conclusion – that the District's Medicaid program "has long failed as a matter of policy and practice" to allow for this deduction – without any facts beyond that of a mistake in the calculation of cost of care payability for these two Plaintiffs. *Plaintiffs' Opposition*, p. 23.

Plaintiffs' argument that revising the forms and procedures is an "admission" that previous procedures were deficient across the board goes too far.  There is nothing in the Plaintiffs' allegations to support this claim.  Instead, the District took notice of the oversight in the case of these two Plaintiffs and, out of an abundance of caution to prevent a potential reoccurrence, it revised the payability forms to specifically delineate "pre-eligibility medical expenses."  These two particular Plaintiffs' incidents raised the question as to whether the line for "medical expenses" was the best it could do, not that there was a system-wide failure or deliberate indifference, as Plaintiffs would have the Court believe.   Plaintiffs' provide no evidence that the District's incorrect denial of pre-eligibility incurred medical expenses in these two cases was a deliberate attempt to violate the law.  It simply was an error that the agency corrected, the type of which is contemplated in the State Medicaid Manual.  *Defendants' Motion* at 6, n. 5.

Rule 12(b)(6) requires Plaintiffs to plead grounds for their entitlement to relief with facts that are neither "labels and conclusions" nor "formulaic recitation of the elements of the cause of action." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1965 (2007).  Plaintiffs have failed to meet this pleading burden because their allegations of a

policy are unsupportable.  Plaintiffs' position appears to be that every mistake allegedly

made by a municipality states a § 1983 claim and supports a putative class action.  None

of the cases cited by Plaintiffs support such a sweeping result.[14]

Plaintiffs' affidavit of Counsel Cyril Smith states that without discovery on

"issues of material facts, Plaintiffs are unable at the present time to present by affidavit or

other sworn testimony facts essential to support their Opposition to Defendants'

alternative Motion for Summary Judgment." *Smith Declaration*, ¶ 7.   This is because

Plaintiffs have nothing to support their allegation of a system-wide policy of deliberate

indifference, and if they cannot plead it, certainly they cannot embark on this exploration

for a class action – especially since the claims of the two Plaintiffs actually before the

Court have been mooted.  Plaintiffs state that "only by exploring the actual practices of

the District's Medicaid program can the contours of Defendants' policy to deny the

challenged deduction truly be established."  *Plaintiffs' Opposition* at 26.  The problem

with this statement is that the heart of the matter – the deduction – is not "challenged."

Both sides agree that it is the policy to allow for this deduction, and how Plaintiffs can

call it a "challenged deduction" is unintelligible.   Both sides agree that there is absolutely

no "challenge" to the allowability of this deduction.  Plaintiffs bear the burden of

pleading an actual case or controversy, not an exploration plan for a fishing expedition,

which is all Smith's declaration, as well as Plaintiffs' bare allegations of an

unconstitutional "custom or policy," appear to be.

---

[14] Plaintiffs' rely on *Monell  v. Dept. of  Soc. Servs*., 436 U.S. 658 (1978), but the only facts presented are those regarding the processing of these two Plaintiffs' payabiliy determinations by employees or agents of the District.  *Plaintiffs' Opposition*, 22, 26.  *Monell* states that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 683.  There are simply no facts to support the latter.

**C.    The Exhaustion Doctrine Forecloses Plaintiffs' Medicaid Claim.**

The same body of federal law that Plaintiffs seek redress under clearly encompasses administrative processes for the states to follow as part of their Medicaid programs. 42 C.F.R. 431.205, *et seq*. The legislative intent that Medicaid claims be first addressed administratively by the agency is clear. Although the federal Medicaid statutes guide the states on grievance processes and fair hearings for Medicaid complaints, and in spite of that fact that Plaintiffs themselves requested fair hearings, Plaintiffs now say that that there are no statutory administrative remedies, or if there are, such should be excused. *Plaintiff's Opposition* at 26, 28-31. This assertion is unsound.

As Defendants have previously noted, Plaintiffs failed to exhaust administrative remedies, choosing instead to file a lawsuit twelve days in advance of a scheduled administrative hearing that they had previously requested. The District responded to these named Plaintiffs' requests for fair hearings by incorporating the requested deduction, recalculating payability amounts for each plaintiff, and repaying the overpayments plaintiffs made to their respective long term care facilities. Plaintiffs now argue that the District should not have done exactly what they wanted, essentially placing the District between the horns of the bull. Plaintiffs' argument that the District's knee only jerks to the tap of a lawsuit is plainly bogus from the facts present in this case. What is clear, however, is the reason for this action – Plaintiffs, or their representatives, did not want the administrative process to resolve the claims because such a resolution unquestionably would have foreclosed their ability to file a class action.

Plaintiffs' response to this basic point fails elementary logic and is impossible to take seriously. For example, Plaintiffs argue that resort to the administrative process was

"futile" because Defendants paid Plaintiffs after the Plaintiffs filed suit and thereby abandoned the administrative process with a scheduled hearing a mere twelve days away. *Plaintiffs' Opposition* at 32-33. But the fact that Defendants paid Plaintiffs after Plaintiffs abandoned the administrative process does not mean that Plaintiffs would not have received their funds if they had continued with the process. If anything, the payment of funds proves precisely the opposite – *i.e.*, that the administrative process would have reached the same result – but at a minimum, Plaintiffs have offered nothing to support the suggestion that their administrative hearing would not have resulted in the payment of the funds they were owed. Plaintiffs provide no support for the argument that this case would necessitate excusal from the administrative process because "purposes served by the requirement cannot be achieved." *Plaintiffs' Opposition* at 28-29, citing *Bowen v. City of New York*, 476 U.S. 467, 484 (1986), the same also cited and discussed in *Defendants' Motion* at 16. In fact, all evidence points to the contrary – their purpose of having this particular deduction applied ***was*** achieved administratively.

Plaintiffs stated that they notified the District of their desire to have these pre-eligibility incurred medical expenses deducted from their cost of care contribution in July, 2006. They followed up these notices with requests for fair hearings. The agency responded and fair hearings were scheduled. Delay, if any could even be argued here, is not grounds for relief – Janigian's October 31, 2006, request was responded to on March 2, 2007, with a scheduled hearing date of March 28, 2007 (although Janigian's attorney, Mr. Landsman, requested a continuance on March 15, 2007, of this hearing until April 18, 2007, which was granted[15]). Exhibit 1. Ms. Anderson's January 17, 2007, request

---

[15] This fact is suspiciously missing from Mr. Landsman's declaration, and consequently, omitted from Plaintiffs' Opposition in their discussion of this sequence of events at page 9. Surely Mr. Landsman knew

was responded to on May 11, 2007, with a scheduled hearing date of May 30, 2007.
Exhibit 2. While this hearing date may not have been set before the instant lawsuit was
filed, Plaintiffs cannot expect an immediate hearing date be set with the OAH.

OAH handles an extraordinarily voluminous caseload – the administrative
hearings for multiple agencies of the District of Columbia, such as the Department of
Health, the Department of Human Services, the Department of Consumer and Regulatory
Affairs and the Office of Tax and Revenue, just to name a few. D.C. Code § 2-1831.03.
Notably, the comparable time spans from request to notification of hearing further
confirms that a routine administrative process was underway when Plaintiffs filed this
unnecessary lawsuit. Routine delay substantially required by administrative needs does
not amount to a constitutional violation. *City of Los Angeles v. David*, 538 U.S. 715
(2003), citing *Mathews v. Eldridge*, 424 U.S. 319 (1976).[16] Plaintiffs' only basis for
asserting that they should be excused from the administrative process is that they excused
themselves from the administrative process.

Plaintiffs also argue that the exhaustion requirement is discretionary rather than
jurisdictional and that the Court should not apply it here because "there is nothing to be
gained by any deference to Defendants' administrative procedures." *Plaintiffs'
Opposition* at 29. Regardless of the accuracy of the first point, the second point is
frivolous. The point of exhaustion is to allow the agency to correct its errors short of

---

on March 15, 2007, when he made the request for the continuance of the administrative hearing that he was
going to be filing a lawsuit the very next day.

[16] It is interesting that Plaintiffs cite benefit deprivation cases like *Mathews v. Eldridge* because this case is
void of any deprivation – Plaintiffs were declared eligible for Medicaid's long term care coverage and
received that benefit without reservation. They were not terminated from the program; rather, each plaintiff
had other conditions removing them from the District's long term care facilities. The benefit Plaintiffs
argue of the medical expense deduction is hardly equal to the actual medical care itself such to warrant
anything greater than routine administrative response procedures. Plaintiffs' attempt to explain how this
mistake amounts to a constitutional violation is tenuous since it was not a mistake in eligibility or
termination.

litigation.  By resorting to litigation without allowing the administrative process to run its course (and with a hearing pending), Plaintiffs deprived the agency of the ability to pay the Plaintiffs the money that they owed them short of litigation.  Indeed, the headlong rush to litigation here is so at odds with the purposes of the exhaustion doctrine that Plaintiffs' representatives even sought to prevent the agency from paying the Plaintiffs the over $20,000 owed to their clients even *after* the commencement of litigation.

Plaintiffs are not excused from the administrative process because of their desire to assert the claims of others that they would lack standing to assert if they had exhausted their administrative remedies.  As evidenced by this lawsuit, Plaintiffs or their representatives did not want to exhaust administrative remedies because they wanted to go to federal court to bring a class action.

WHEREFORE, Defendants respectfully request this Honorable Court grant the instant Motion to Dismiss or, in the alternative, grant the Motion for Summary Judgment in favor or the Defendants.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia


GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


_____/s/ Ellen A. Efros_____
ELLEN A. EFROS [250746]
Chief, Equity I Section
Civil Litigation Division

_____/s/ Jayme B. Kantor_____
Jayme B. Kantor [488502]
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
P(202) 724-6627
F(202) 727-3625

# EXHIBIT 1

OFFICE OF THE
GENERAL COUNSEL

2007 MAR -6 ℗ 2: 26

**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**
441 4ᵗʰ Street, NW, Suite 540-S2
Washington, DC  20001-2714
(202)727-8280

DISTRICT OF COLUMBIA
OFFICE OF
ADMINISTRATIVE HEARINGS

2007 MAR -2 ℗ 3: 02

RICHARD JANIGIAN JR.
                    Petitioner,


        v.


DISTRICT OF COLUMBIA
DEPARTMENT OF HUMAN SERVICES
        Respondent

Case No.:   HS-P-06-101366
Related Former DHS Case No. 419221

### HEARING NOTICE

#### Notice of Hearing Date and Time

On November 7, 2006, Richard Janigian Jr. requested a hearing about Medicaid/Medicare (MA) benefits.

The hearing will be held on <u>March 28, 2007</u> at <u>1:30:00 PM</u>.

The hearing will be held at the Office of Administrative Hearings, 441 4ᵗʰ Street, N.W., Suite 540-South, Washington, D.C.

The closest Metro station is Judiciary Square (Red Line).  Metro buses D-1, D-3, and D-6 stop nearby.

#### Asking for a New Date or Time

If you need a new date or time, please see the enclosed form "Request for a New Hearing Date."

#### Missing the Hearing

If you do not show up for the hearing, and do not have a good reason, you may lose your case.

If you have a good reason for not showing up for the hearing, you should fill out the enclosed form "Request for a New Hearing" and bring it or fax it to the Office of Administrative Hearings at 441 4ᵗʰ Street, NW, Suite 540-South, Washington, DC 20001 as soon as possible.

Examples of a good reason for not showing up for a hearing would be a serious illness, an accident, a childcare problem, or another emergency.

Case No.: HS-P-06-101366

**Certificate of Service:**

**By First Class Mail (Postage Paid):**

Richard Janigian Jr.
4211 Alton Place, NW
Washington, DC 20016

Ron M. Landsman
200 A Monroe Street Suite 110
Rockville, MD 20850

I hereby certify that on March 2, 2007 this document was caused to be served upon the parties named on this page at the addresses listed and by the means stated.

*Rochelle Thompson*
Clerk / Deputy Clerk

**By Inter-Agency Mail:**

Deborah Carroll, Esq.
Department of Human Services
Office of the General Counsel
64 New York Avenue, NE, 6th Floor
Washington, DC 20002

Ellen Wells
Department of Human Services
Income Maintenance Administration
645 H Street, NE, Suite 5000
Washington, DC 20002

-4-

# EXHIBIT 2

04/17/2007 11:29 FAX  2027242041          DHS/IMA ADMIN                                        ☒002/004

**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**
441 4th Street, NW, Suite 540
Washington, DC 20001-2714

DISTRICT OF COLUMBIA
OFFICE OF
ADMINISTRATIVE HEARINGS

2007 MAR 28  A 9: 29

RICHARD JANIGIAN JR.
            Petitioner,

v.

DISTRICT OF COLUMBIA                        Case No.:  HS-P-06-101366
DEPARTMENT OF HUMAN SERVICES
            Respondent

## ORDER FOR CONTINUANCE

On October 31, 2006, Petitioner Richard Janigian, Jr. filed a hearing request with regard to the Medicaid ("MA") Long Term Care program administered by Respondent District of Columbia Department of Human Services ("DHS").  On March 8, 2007, this administrative court issued a Hearing Notice scheduling a hearing for March 28, 2007 at 1:30 PM.

On March 15, 2007 this administrative court received via facsimile[1] a request for a new hearing date from the Petitioner's attorney, citing that he needed additional time to prepare for the hearing.  Additionally, Petitioner suggested April 18, 2007 as a new date for the hearing, and having no objection from the Respondent at this time, the status conference will be rescheduled for Wednesday, April 18, 2007 at 1:00 P.M.

Therefore, upon consideration of Petitioner's motion for continuance, and the entire record of this case, it is this 28th day of March 2007:

---

[1] A duplicate copy of the motion for a continuance was faxed on March 25, 2007, but no hard copy has been noted as being received by this administrative court.

☑ 004/004

Case No.:  HS-P-06-101366

## Certificate of Service:

**By Interagency Mail:**

**By First Class Mail (Postage Paid):**

Ron M. Landsman, P.A.
200-A Monroe Street, Suite 110
Silver Spring, MD  20850

Deborah Carroll, Esq.
Department of Human Services
Office of the General Counsel
64 New York Avenue, NE  6th Floor
Washington, DC 20002

Ellen Wells
Department of Human Services
Income Maintenance Administration
645 H Street, NE, Suite 5000
Washington, DC 20002

I hereby certify that on March 28 , 2007 this document was caused to be served upon
the above-named parties at the address(es) and by the means stated.

_Rochelle Thompson_
Clerk / Deputy Clerk