IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD JANIGIAN, JR., et al.,                    )
                                                  )
                Plaintiffs                        )
                                                  )    Civil Action No.:  1:07-cv-00508
        v.                                        )    Judge Paul L. Friedman
                                                  )    Next Event:  No Event Scheduled
CARLOS CANO, M.D., et al.,                        )
                                                  )
                Defendants.                       )
                                                  )

PLAINTIFF'S REQUEST FOR A SCHEDULING
CONFERENCE AND A HEARING ON PENDING MOTIONS

Named Plaintiff Richard Janigian, by counsel, submits this Request for a Scheduling

Conference pursuant to Local Civil Rule 16.4 and for a Hearing on Pending Motions pursuant to

Local Civil Rule 7(f), and in support hereof states:

1.      This action began with the filing of a class action complaint on March 16, 2007

(Docket Entry #1) (hereafter "D.E.").[1]  An amended class action complaint was filed on June 4,

2007 (D.E. # 6).   The amended complaint asserts causes of action under 42 U.S.C. § 1983 and

state law because of past, present, and continuing violations of federal law by the District of

Columbia in the manner in which it administers the Medicaid program, specifically by

unlawfully withholding a required Medicaid benefit from elderly, medically impoverished

Medicaid beneficiaries receiving long-term nursing home care.      Plaintiff seeks restitution,

declaratory, and injunctive relief on behalf of the class of all persons who, during the class period

or in the future, have been or will be recipients of Medicaid long-term care benefits in the

District of Columbia.

---

[1]    Plaintiff originally named Dr. Gregory Pane, director of the District of Columbia Department of Health, as a
Defendant sued in his official capacity.   On or about October 19, 2007, Dr. Pane was replaced as director of the
Department of Health by Dr. Carlos Cano.      See http://dc.gov/mayor/news/release.asp?id=1165&mon=200710.
Pursuant to Fed. R. Civ. P. 25(d)(1), Dr. Cano has been automatically substituted for Dr. Pane as a Defendant.

2.    Defendants moved to dismiss the amended complaint, or in the alternative for summary judgment, and that motion was fully briefed and has been pending since July 30, 2007 (D.E. ## 10, 14, and 16).

3.    While Defendants' Motion to Dismiss has been pending, Defendants have refused to meet for the discovery conference required by Fed. R. Civ. P. 26(f) or permit any discovery, including discovery limited to class certification.  As a result of Defendants' unilateral and unwarranted refusal to meet for the required discovery conference or allow any discovery, timetables set forth in the Local Civil Rules for the orderly administration of this case have been suspended, including (a) scheduling conferences and orders under Fed. R. Civ. P. 16 and 26; (b) discovery under Local Civil Rule 26.2 and class certification discovery as permitted by Local Rule 23.1(b); and (c) the filing of Plaintiff's class certification motion under Local Civil Rule 23.1(b).    See Plaintiff's Motion for Extension of Time to File Class Certification Motion and exhibits thereto (D.E. # 19).

4.    In short, no scheduling order has been issued in this case, and nothing – not even class certification discovery – is taking place, because Defendants refuse to comply with their Rule 26 conference obligations while their motion to dismiss is pending.

5.    There is no authority for Defendants' refusal to meet for a Rule 26 conference, and their unilateral action should not be permitted to halt all proceedings, block discovery, prevent the filing of Plaintiff's class certification motion, and forestall litigation of Plaintiff's federal and state claims.    Instead of complying with their obligations under the Local Civil Rules, Defendants on August 20, 2007 filed a Motion to Stay Discovery Conference and Discovery (D.E. # 23), asking that the required discovery conference and all discovery in this case, including class certification discovery, be stayed pending a ruling on Defendants' Motion

1646420.2

to Dismiss. That Motion to Stay has been fully briefed and pending since September 10, 2007 (D.E. ## 23, 25, and 26).

6.    For all of the foregoing reasons, Plaintiff therefore requests that this Court hold a prompt scheduling conference pursuant to Local Civil Rule 16.4 and thereafter issue a scheduling order governing future proceedings in this case, including (a) discovery on class certification issues; and (b) a deadline for Plaintiff to submit his class certification motion pursuant to Local Civil Rule 23.1(b).

7.    In addition, Plaintiff also requests that this Court schedule a hearing on pending motions, including Defendants' Motion to Dismiss (D.E. # 10), Plaintiff's Motion for Extension of Time to File Class Certification Motion (D.E. # 19), and Defendants' Motion to Stay Discovery Conference and Discovery (D.E. # 23) so that this action can move forward once the Court decides those motions.

8.    The urgency of action by the Court to end Defendants' unwarranted obstruction in this case is underscored by the  nature of the putative class, i.e., poor and mostly elderly recipients of long-term nursing home care who are, to use the colloquial, not getting any younger. Further delay will therefore substantially prejudice the ability of class members to obtain a vindication of their federal and state rights.

9.    It is also important to note that the identical legal question – the scope of the Medicaid benefit in this case – has just been resolved in favor of plaintiffs in a parallel class action proceeding in the Circuit Court for Baltimore City, Maryland, Smith v. McCann, No. 24-C-05-007421. See January 18, 2008 Memorandum Opinion, attached as Exh. A.

WHEREFORE, Plaintiff respectfully requests that this Court (a) hold a prompt scheduling conference pursuant to Local Civil Rule 16.4 and thereafter issue a scheduling order

1646420.2

governing future proceedings in this case; and (b) schedule a hearing on pending motions, including Defendants' Motions to Dismiss and to Stay Scheduling Conference and Discovery and Plaintiffs' Motion for Extension of Time to File Class Certification Motion.

Dated:  January 23, 20008                    Respectfully submitted,


                                             _____/s/_____
                                             Cyril V. Smith
                                             D.C. Bar No. 413941
                                             ZUCKERMAN SPAEDER LLP
                                             100 East Pratt Street, Suite 2440
                                             Baltimore, Maryland 21202
                                             (410) 332-0444
                                             (Fax) (410) 659-0436
                                             csmith@zuckerman.com


                                             _____/s/_____
                                             Ron M. Landsman
                                             D.C. Bar No. 209452
                                             RON M. LANDSMAN, P.A.
                                             200-A Monroe Street, Suite 110
                                             Rockville, Maryland 20850-4412
                                             (240) 403-4300, ext. 101
                                             (Fax) (240) 403-4301
                                             RML@ronmlandsman.com


                                             _____/s/_____
                                             René H. Reixach
                                             WOODS OVIATT GILMAN LLP
                                             700 Crossroad Building
                                             2 State St.
                                             Rochester, New York 14614
                                             (585) 987-2858
                                             Fax:  (585) 987-2958
                                             Rreixach@WoodsOviatt.Com

4

*Attorneys for Plaintiff*

1646420.2

## STATEMENT OF POINTS AND AUTHORITIES

Fed. R. Civ. P. 26(f)

Local Civil Rule 16.3

Local Civil Rule 16.4

Local Civil Rule 7(f)

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of January, 2008, a true copy of the foregoing

Plaintiff's Request for a Scheduling Conference pursuant to Local Civil Rule 16.4 and for a

Hearing on Pending Motions pursuant to Local Civil Rule 7(f) and proposed Orders, was filed

electronically with the Court for ECF service upon:

Jayme Kantor
Assistant Attorney General
Civil litigation Division – Equity I Section
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
Jayme.Kantor@dc.gov


_____/s/_____
Cyril V. Smith

1646420.2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

RICHARD JANIGIAN, JR., et al.,        )
                                      )
              Plaintiffs              )
                                      )        Civil Action No.:  1:07-cv-00508
      v.                              )        Judge Paul L. Friedman
                                      )        Next Event:  _____
CARLOS CANO, M.D., et al.,            )
                                      )
              Defendants.             )
_____)

## ORDER

Upon consideration of Plaintiff's Motion for a Scheduling Conference and for a Hearing

on Pending Motions, and it appearing to this Court that good cause for the relief therein prayed

has been shown, it is this ____ day of _____, 2008 by the United States District

Court for the District of Columbia,

ORDERED that Plaintiff's Motion for a Scheduling Conference and for a Hearing on

Pending Motions be, and the same hereby is, GRANTED;

ORDERED that all parties attend a scheduling conference in this matter to be held on

_____ __, 2008 beginning at ____ o'clock _.m. in Courtroom _____; and

ORDERED that a hearing on all pending motions shall be held on _____

__, 2008 beginning at ____ o'clock _.m. in Courtroom _____.


                                        _____
                                        Paul L. Friedman, Judge

1646420.2

# EXHIBIT A

| | | | | | |
|---|---|---|---|---|---|
| **EUNICE SMITH, et al.** | | | * | | **IN THE** |
| **Plaintiffs** | | | | | |
| | | | * | | **CIRCUIT COURT** |
| **v.** | | | | | |
| | | | * | | **FOR BALTIMORE CITY** |
| **S. ANTHONY McCANN, et al.** | | | | | |
| **Defendants** | | | * | | **Case No.: 24-C-05-007421** |

        *     *     *     *     *

## MEMORANDUM

This case is before the court upon motions for summary judgment filed by the parties. Plaintiffs are nursing home residents who are recipients of long-term care benefits under the Medical Assistance (Medicaid) Program. They seek injunctive and declaratory relief on their own behalf, and on behalf of a class of persons similarly situated, against defendants, who administer the Medicaid program in the state of Maryland. The suit challenges defendants' actions relating to the deduction of certain expenses from the income of Medicaid recipients for the purpose of calculating the recipients' responsibility to contribute to the cost of their nursing home care. Plaintiffs contend that defendants' actions are contrary to the requirements of the federal Medicaid statute, and that defendants have violated the Maryland Administrative Procedure Act.

Count I of the complaint asserts that defendants have violated the federal Medicaid statute by failing to deduct for expenses for necessary medical care that are not covered by the Maryland State Medicaid plan because the expenses were incurred prior to financial eligibility for benefits, and which were not the subject of any limits in Maryland's State plan. In Count II, plaintiffs contend that defendants have violated the Maryland Administrative Procedure Act by promulgating a rule relating to the deduction of expenses without compliance with the rulemaking requirements of the Act.

# I. INTRODUCTION

The issues presented by the motions are legal in nature and do not depend upon the resolution of any factual disputes. In support of their summary judgment filings, the parties have submitted documents relating to defendants' actions, as well as documents concerning actions and statements of the federal agency that oversees the Medicaid program. The following is an overview of the legal and factual framework of this controversy.

The Medicaid program is authorized by Title XIX of the Social Security Act. 42 U.S.C. § 1396 *et seq.* The statute authorizes the provision of benefits to help finance medical care for the indigent. The federal government provides partial financial support for the costs incurred by a participating state in providing medical care for the poor. The program is administered by the states subject to oversight by the federal government. A participating state must comply with Title XIX and its implementing regulations, including eligibility requirements. 42 U.S.C. § 1396a. The Centers for Medicare and Medicaid Services (CMS)[1], a unit of the Department of Health and Human Services, oversees the operation of the program. A state must submit a State Medicaid plan for approval by CMS and administer its Medicaid program in accordance with that plan, which must comply with numerous prescriptive requirements. 42 U.S.C. §§ 1396; 1396a.

The Medicaid statute requires states that participate in the program to provide coverage to the "categorically needy," those persons with incomes low enough to qualify for cash assistance. States are also permitted to provide benefits to the "medically needy," persons whose income or resources exceed the financial eligibility standards for cash assistance programs.

---

[1] Prior to 2001, this agency was known as the Health Care Financing Administration.

Under section 1902(a)(17)(D) of the Act, such individuals may qualify for benefits if they incur medical expenses in an amount that reduces their income to the eligibility level.    This provision allows individuals whose incomes are otherwise too high for Medicaid eligibility to offset the portion of their income or assets that exceeds the maximum allowed under eligibility criteria by the amount of incurred medical expenses.  This is known as the "spenddown" process, as the individuals are said to spend down their excess income to meet the eligibility criteria.

The current provisions of 42 C.F.R. §435.831(e) governing the spenddown calculation require the deduction of the following types of medical expenses:

> (1) Expenses for Medicare and other health insurance premiums, and deductibles or coinsurance charges, including enrollment fees, copayments, or deductibles imposed under §§ 447.51 or §§ 447.53 of this subchapter;
> (2) Expenses incurred by the individual or family or financially responsible relatives for necessary medical and remedial services that are recognized under State law but not included in the plan;
> (3) Expenses incurred by the individual or family or by financially responsible relatives for necessary medical and remedial services that are included in the plan, including those that exceed agency limitations on amount, duration, or scope of services.

The incurred medical expenses that the states are required to deduct to determine eligibility are limited to expenses incurred within three months prior to the month of application (the retroactive period) and current payments on bills that are more than three months old.  42 C.F.R. §435.831.

Once eligible to receive benefits, Medicaid recipients who are nursing home residents are required to contribute all of their available income to the facility to help pay for the cost of their care, with the balance of the cost of care being paid for by the program.  These beneficiaries are permitted to deduct certain items in determining the available income that must be contributed to

3

cost of care.[2] These items include a personal needs allowance, and a maintenance allowance for

an institutionalized individual's spouse or family. Certain medical expenses may be deducted as

well.

Section 1902(r)(1)(A) of the Act, 42 U.S.C § 1396a(r)(1)(A), provides as follows:

> (r) Disregarding payments for certain medical expenses by institutionalized individuals
>
> (1)(A) For purposes of sections 1396a(a)(17) and 1396r-5(d)(1)(D) of this title and for purposes of a waiver under section 1396n of this title, with respect to the post-eligibility treatment of income of individuals who are institutionalized or receiving home or community-based services under such a waiver, the treatment described in subparagraph (B) shall apply, there shall be disregarded reparation payments made by the Federal Republic of Germany, and there shall be taken into account amounts for incurred expenses for medical or remedial care that are not subject to payment by a third party, including--
>
> (i) medicare and other health insurance premiums, deductibles, or coinsurance, and;
>
> (ii) necessary medical or remedial care recognized under State law but not covered under the State plan under this subchapter, subject to reasonable limits the State may establish on the amount of these expenses.

The primary controversy between the parties, which is the subject of Count I, involves

the issue of whether amounts owed for medical care expenses incurred prior to the date on which

an individual becomes eligible for benefits are included within the amounts to be deducted under

this section, as expenses for "necessary medical and remedial care recognized under State law

but not covered under the State plan." Count II, a claim under Maryland law, involves the issue

of whether defendants established a reasonable limit upon the expenses.

---

[2]   This process is referred by the parties as the "post-eligibility calculation."

4

## A. THE INSTANT CONTROVERSY

Prior to 2004, defendants followed a policy of not permitting the application of pre-eligibility expenses in the determination of beneficiaries' available income. The State Eligibility Manual explicitly stated that the allowance for incurred medical expenses did "not include medical expenses that would have been covered by the State Plan had the person been eligible for Medical Assistance at the time the expense was incurred, nor . . . any other expenses incurred prior to MA eligibility." (Pl. Ex. 8)(underlining in original).

On December 18, 2003, one of the attorneys who represent plaintiffs in this action wrote to CMS concerning an instance in which the Maryland Medicaid Program declined to permit the deduction from a recipient's income of the unpaid portion of his pre-eligibility nursing home expenses in determining available income to meet his current cost of care. The letter questioned whether this position was consistent with federal law and regulations. (Pl. Ex. 11). CMS responded on September 13, 2004 (Pl. Ex. 5), observing that while the limitation in question was set forth in the State's Medical Assistance Manual, this limitation was not included in the State Medicaid Plan. It opined that because it was not included in the State Medicaid Plan, the limit could not be imposed; while states have the right to impose reasonable limits on expenses, such limits must be set forth in the State Plan.

In response to CMS's position, the State adopted and submitted Plan Amendment 04-27 (Pl. Ex. 12), intended to "clarify current eligibility policy for the post-eligibility determination of available income." This amendment was submitted on June 14, 2004, and was approved by CMS on August 18, 2004, with an effective date of April 1, 2004. It proposed the following limit: "disallow as a deduction any amount of medical expenses for dates of service before the retroactive period associated with the effective date of Medical Assistance eligibility."

5

According to defendants, SPA 04-27 was adopted as a result of CMS's direction that the only limit that could be placed on the deduction of pre-eligibility expenses was a provision limiting deductible expenses to those incurred within the three month retroactive period.

In 2005, the State submitted a second plan amendment, SPA 05-06, which would have provided that no pre-eligibility expenses could be allowed as a deduction in the post-eligibility cost of care calculation. CMS disapproved this amendment on April 25, 2005. The State petitioned for reconsideration of this denial, and on March 28, 2007, the request for reconsideration was denied in a Decision of the CMS Administrator, representing the final administrative decision of the Secretary of Health and Human Services. Defendants have petitioned the United States Court of Appeals for the Fourth Circuit for review of this decision, and that petition is currently pending.

According to plaintiffs (and not contradicted by defendants), there was no public notice of the change effected by SPA 04-27, and no deductions, even for expenses within the three month retroactive period, were allowed until May 2005. The Eligibility Manual was amended effective August 1, 2005. (Def. Ex. 6). The amendment states that unpaid bills may now be deducted for services received when the recipient was not Medicaid eligible, limited to the three month retroactive period. According to defendants, the timing of the implementation of the 2004 State Plan policy occurred when it became apparent that CMS would not approve the limits that were the subject of rejected plan amendment SPA 05-06. On January 20, 2006, defendants issued Notice of Proposed Action in the *Maryland Register*, proposing to amend COMAR § 10.09.24.10 to conform the Maryland Assistance Regulations to the State Plan Amendment previously approved by CMS.

6

## B. THE PARTIES' CONTENTIONS

Plaintiffs' Motion for Partial Summary Judgment asserts that there is no genuine dispute that prior to April 1, 2004 defendants had not established any reasonable limits on deduction of pre-eligibility expenses and, therefore, that defendants' policy of denying deductions for such expenses violates section 1902(r)(1)(A). The motion further asserts that there is no genuine dispute that after April 1, 2004 defendants did not promulgate any regulation in accordance with Maryland law to establish reasonable limits on the deduction of pre-eligibility expenses, and therefore that the denial of deduction of such expenses violated the Maryland Administrative Procedure Act. Alternatively plaintiffs assert that after April 1, 2004 the state failed to follow its State Plan provision allowing deduction of expenses incurred for three months prior to eligibility.

In their Motion for Partial Summary Judgment, defendants acknowledge that prior to April 1, 2004, they had not established any reasonable limits on the deduction of incurred expenses. But they argue that as a matter of law the Medicaid statute does not provide for the deduction of pre-eligibility expenses, and, therefore, that defendants violated no provision of federal law. In response to the claimed noncompliance with the Administrative Procedure Act that is the subject of Count II, defendants assert that they began to effectuate a State Plan amendment approved by CMS by developing Manual instructions directing eligibility workers to deduct pre-eligibility expenses incurred during the three months prior to application, and concurrently developing implementing regulations with an effective date retroactive to the effective date of the Manual instructions. In further response to plaintiff's APA argument, defendants state that if the policy adopted in 2004 is ineffective, the *status quo ante* is that recipients are not entitled to deduct any such expenses, as there is no statutory requirement for

7

the deduction and no authority for it other than defendants' policy. As to plaintiffs' alternative

argument, defendants concede that some individuals may not have received the benefit of the

deduction after April 1, 2004, and may have a right to deduct expenses incurred in the three

month period, but in no event are entitled to deduct expenses incurred prior to the three month

period.

It thus appears that the parties' positions revolve around the issue of whether the statute

requires the State to permit the deduction of these expenses. If, as plaintiffs contend, the statute

requires the deduction of such expenses, then plaintiffs are entitled to deduct them, subject to

any reasonable limit validly adopted by defendants, and the court must go on to determine

whether defendants have imposed a reasonable limit and how it applies to plaintiffs and the

class. If, on the other hand, the statute does not require the allowance of the deduction, then the

court must determine the effect of the adoption of SPA 04-27.[3]

## II. COUNT I - THE FEDERAL STATUTE

Plaintiffs assert that the statutory language "not covered by" the State Plan means not

paid for by the State Plan. Therefore, in plaintiffs' view, an expense that is not paid for by the

state, for whatever reason, is an expense not covered by the State Plan, regardless of the reason.

Accordingly, expenses incurred before a recipient is eligible for Medicaid, which the state will

not pay because the applicant is not eligible to receive benefits, are not "covered" by the State

Plan, because the state will not pay for them.

---

[3] It also appears that decision of Count I cannot be avoided on the theory that defendants' current
policy confers a right to the deduction. Defendants apparently take the position that SPA 04-27 confers a
right to the deduction of expenses incurred within the three month retroactive period. However, the
language of the Plan amendment does not expressly state that these expenses may be deducted; rather it
imposes a temporal limitation on expenses that may be deducted, without specifying what those expenses
might be.

8

In defendants' view, "not covered" by the State Plan means expenses of a type that the state will not pay for if the recipient is eligible for Medicaid. The State Plan specifies the expenses that will be paid on behalf of a Medicaid recipient. "Not covered" refers to those expenses which the state has excluded from payment by not including them in the Plan. Implicitly, in defendants' view, the statute refers only to expenses incurred during a period of eligibility, because inherently the statute does not provide for payment of expenses on behalf of person not eligible for Medicaid.

In the court's opinion, neither view is an implausible reading of the words of the statute. In one sense, pre-eligibility expenses are not "covered" by the state plan, since the plan will not pay for them because they were incurred while the participant was ineligible for benefits. In another sense they are "covered" by the state plan because they are expenses of the sort which the plan would pay if they were incurred while the participant was eligible. *Per sese*, the words permit either interpretation, and, therefore, the issue cannot be resolved from the words of the statute itself without resort to other sources of statutory construction.

Each party marshals several arguments concerning statutory construction. Plaintiffs contend that the legislative history reveals a Congressional intent to require the deduction of such expenditures. They also assert that CMS interprets the section to include such expenses and that deference is due to this interpretation. Additionally, plaintiffs argue that it would be incongruous to permit these expenses to be used to render the participant poor enough to qualify as needy (referring to the fact that these expenses may be deducted to determine eligibility) but then require the participant to pay them anyway.

Defendants contend that the statute is not intended to apply to such expenditures. Defendants assert that the purpose of the deduction is to permit recipients to have funds to pay

9

for necessary medical services needed for their care while in a nursing home, and that deducting expenses incurred prior to eligibility does not further this goal. They observe that to the extent that such expenses are deducted from the recipient's contribution to the cost of care, the State indirectly pays for these expenses, as its contribution to the cost of care is correspondingly increased. Defendants argue that it would be incongruous to require the State to pay for expenses that are by definition not within the State's responsibility, i.e., are incurred during a period when the individual was not eligible for benefits. Finally, they attack the interpretation given to the statute by CMS, arguing that it is entitled to no deference.

In order to consider the parties' arguments relating to the statutory history and subsequent administrative interpretation, it is necessary to review that history at some length.

## A. LEGISLATIVE HISTORY

The statutory language that is the subject of this debate was inserted as part of the Medicare Catastrophic Coverage Act of 1988. It is identical to the language that appeared in the HCFA regulations prior to 1988, requiring the deduction of expenses not covered by the State plan. *See* 42 C.F.R. § 435.832 (1987). That regulatory language appears first in the regulations that were adopted in 1978. *See* 43 Fed.Reg. 45176. At that time HCFA reorganized the regulations for the Medicaid program. According to the preface to the new regulations, the changes were not intended to make any policy changes, but rather to make clarifying editorial changes.

Included among the regulations adopted in 1978 was section 435.725, relating to post-eligibility treatment of income of institutionalized individuals, which contained the language "necessary medical or remedial care recognized under State law but not covered under the State's Medicaid plan, subject to reasonable limits the agency may establish on amounts of these

10

expenses." Also adopted at the same time were regulations relating to spenddown, which require deductions of "expenses . . . for necessary medical and remedial services that are recognized under State law but not included in the plan." 42 C.F.R. 435.831 (1987)(43 Fed. Reg. 45215).

The regulations do not contain any more specific indication of the meaning of these terms. There is no contemporaneous explanation of what the agency intended the language to mean at the time it was promulgated. Prior to 1978, the regulations existed in a different organizational format. The only provision in the prior regulations that seems to be somewhat comparable is former 42 C.F.R. §448.3(c)(2) relating to the definition of available income for contribution to cost of care, which stated: "income will be applied to costs incurred for medical insurance premiums . . . , for any co-payments or deductibles . . . , and for necessary medical or remedial care recognized under State law and not encompassed within the state plan for medical assistance. States may set reasonable limits on such medical services for which excess income may be applied." 42 C.F.R. §448.3(c)(2)(ii)(1977).

In 1985, HCFA issued a Notice of Proposed Rulemaking proposing several changes to the regulations relating to post-eligibility determinations for institutionalized individuals. Among the changes proposed were changes relating to deduction of incurred medical expenses. 50 Fed.Reg. 10992. With respect to this proposed change, HCFA stated:

> [W]e would amend the regulations to allow States greater
> flexibility in determining allowable medical deductions from the
> patient's income when establishing his or her contribution to the
> cost of care. When considering the individual's allowable medical
> expenses, there are two types which would fit the general category
> of "noncovered" medical expenses, i.e., medical expenses incurred
> by the recipient for which title XIX will not be making any
> payment. These are:
> (1) Medical expenses for services which are recognized under
> State law, but not covered at all under the State plan; and

11

> (2) Medical expenses for services which exceed State plan limitations on amount, duration or scope.
>
> For example, assume a State's plan does not cover dentures, but will pay for up to two dental services per month. An institutionalized individual with income to be considered towards cost of care sees the dentist several times one month which results in charges for five dental services in that month. In the same month, the individual incurs a charge for dentures.
>
> Under this proposal, States may deduct none, some, or all of the cost of the dentures from this individual's income. However, the State must deduct some amount for the three dental services expenses which exceed its State plan limit on those services.

50 Fed. Reg. 10993.    The regulation proposed in 1985 would have required that the States

deduct expenses for services that exceeded plan limitations on amount, duration or scope, but

would have made the deduction for expenses for services not covered at all optional.

In 1988, HHS issued its final regulations.    53 Fed.Reg. 3586-01.    A large volume of

comments had been received from States and from others, which were discussed at length. The

position relating to deduction of medical expenses covered in the plan but beyond amount,

duration and scope limits was revised based on comments received in response to the Notice of

Proposed Rulemaking.    It was determined that this deduction would also be made optional.    In

the comments to the proposed rule, the Agency discussed its reasons for permitting states to

make this deduction optional.

> On the basis of numerous comments against the proposal to require States to deduct from an individual's income medical expenses that are covered in the State plan, but beyond amount, duration and scope limits, we are revising our position on this issue.    Several States said that our proposal requires them to subsidize indirectly services for which they have chosen not to pay.    They believe that it also increases Medicaid program costs because recipient income that is used for noncovered medical expenses is not applied to the cost of institutional care.    The result is higher payments by the State Medicaid program to a facility to compensate for smaller amounts of income from recipients. . . .

12

> After careful consideration of the numerous comments on this
> issue, we have come to the conclusion that requiring States to
> deduct medical expenses for services included in the State plan,
> but which exceed State plan limits, would be inconsistent with our
> intent to provide States with greater flexibility. Moreover, the
> comments convince us that these services fall into the same
> category as services not covered under the plan, in that no payment
> is made for them. We believe that it is reasonable to treat these
> services in the same way as services not covered under the State
> plan. Consequently, we are not requiring that States deduct these
> services, but are making these deductions optional.

53 Fed. Reg. at 3588.

The regulators then went on to discuss other comments that had been received. In

discussing a request from commenters that the regulations be revised to place limits on

deductions for expenses incurred during a period of ineligibility, the Agency stated:

> 3. Comment: Several commenters suggested that we revise the
> regulations to place limits on medical deductions for expenses
> incurred during a period of ineligibility. One of these commenters
> argued that deductions should be permitted only for services
> furnished within a budget period. Otherwise, a State is subsidizing
> medical expenses for a period during which an individual was
> ineligible. The second commenter asked if States may limit the
> amount of deductions for institutional expenses during periods of
> ineligibility to no more than the Medicaid reimbursement rate. A
> third commenter asked for specific examples of limits or
> parameters in guidelines.
>
> Response: Services furnished to an individual during a period of
> ineligibility are services not covered under the State plan.
> Therefore, the State is not required to deduct medical expenses for
> services furnished during a period of ineligibility, and may limit
> deductions to services within the budget period. If the State
> chooses to allow deductions for medical expenses furnished during
> a period of ineligibility, it may place reasonable limits on these
> deductions. This includes institutional expenses incurred during a
> period of ineligibility and expenses for other covered services.
> States have the option to deduct institutional expenses at the
> private rate or at the Medicaid reimbursement rate, subject to
> reasonable limits imposed by the State.

13

53 Fed. Reg. at 3589.

Congress took action to prevent the changes in the regulations from becoming effective. The Medicare Catastrophic Coverage Act of 1988 added the language that now appears as section (r)(1)(A). As stated previously, it incorporated the prior regulatory language in the statute. The intent expressly stated by Congress was to overrule the proposed regulation allowing states to eliminate the deduction for "uncovered medical costs" and to reinstate the previous rule. H.R. Conf. Rep 100-661, 1988 U.S.C.C.A.N. 923, 1044. The passage relating to the provision at issue here states:

> With respect to the deduction for incurred medical expenses, the conference agreement requires that, with respect to any Medicaid-eligible individual in an institution (regardless of whether the individual has a spouse in the community), States must take into account amounts for incurred expenses for medical or remedial care that are not subject to payment by a third party, including Medicare and other health insurance premiums, deductibles, or coinsurance, and, subject to reasonable limits a State may establish, necessary medical or remedial care recognized under State law but not covered under the State's Medicaid plan. The conferees note that, until recently, HCFA regulations required that Medicaid-eligible nursing home residents be allowed to deduct uncovered medical costs from their income before contributing toward the cost of nursing home care. However, a recent HCFA regulation, 53 Fed.Reg. 3586 (Feb. 8, 1988), altered this rule to allow States to limit this deduction substantially, or to eliminate it altogether. The conference agreement is intended to reinstate the previous rule, retroactive to the effective date of the recent change (April 8, 1988). As under the previous regulation, States will have the ability to place "reasonable limits" on a resident's expenditures for medical or remedial care. The conferees wish to emphasize that these limits must ensure that nursing home residents are able to use their own funds to purchase necessary medical or remedial care not covered by the State Medicaid program, while minimizing opportunities for providers to take financial advantage of either the program or the residents. For example, it would be reasonable for a State to provide that only uncovered services prescribed by a physician may be deducted. It would also be reasonable for States to impose specific dollar limits for specific services or items,

14

> provided that these limits reflect annual increases in the cost of
> medical care services and supplies. However, it would not be
> reasonable for States to set an overall dollar limit, such as $50 per
> month, for all noncovered services. Similarly, it would not be
> reasonable for States to impose a limit on the number of medically
> necessary services or items that an individual could deduct in any
> month. In providing these examples of "reasonable limits" for
> deductions of uncovered medical expenses incurred by nursing
> home residents, the conferees do not intend any approval of
> comparable limitations in the "spenddown" process for medically
> needy programs.

1988 U.S.C.C.A.N. 1044.     There is nothing in the Committee report that reveals any intent
specifically relating to the question of whether pre-eligibility expenses are expenses "not
covered" by a State plan.

Plaintiffs also refer to another statement in the legislative history that appears in a House
Committee Report that accompanied the original bill. The bill that eventually became the
Medicare Catastrophic Coverage Act of 1988 was initially introduced in 1987 as H.R. 2470. It
was referred to the House Committee on Energy and Commerce, which reported favorably on
the bill on July 1, 1987. H.Rep. 100-105(II), reprinted in 1988 U.S.C.C.A.N. 857. In that report,
the Committee, describing the deductions from the income to be attributed to an institutionalized
spouse, said that there would be deducted "amounts for incurred expenses for medical care for
the institutionalized spouse not paid for by Medicaid, Medicare, or another liable third party."
1988 U.S.C.C.A.N. at 895. Plaintiffs argue that this demonstrates Congress's intent to include
in the deduction all medical expenses "not paid for" by Medicaid.

There are multiple reasons why this argument is fallacious. First, the language of the bill
that is the subject of this commentary is not the same language that appears in the statute that
was eventually enacted. Section 214 of H.R. 2470, as the bill existed at the time of this report in
1987, described the deduction as follows: "Amounts for incurred expenses for medical or

15

remedial care for the institutionalized spouse that are not subject to payment by a legally liable third party." The commentary that plaintiffs cite deals with completely different language that expressly phrases the deduction in terms of payment, not coverage.    The language that eventually became law was, as stated above, the same language that previously appeared in the regulations, and was not inserted until many months later as section 303 of an amended H.R. 2470.

The context in which the quoted language appears also indicates that it does not have the significance that plaintiffs attribute to it. The original bill, as it related to Medicaid,[4] was concerned primarily with provisions relating to impoverishment of the community spouse. The primary focus of the passage in which the language appears was the community spouse allowance, which was the subject of extensive discussion. 1988 U.S.C.C.A.N. at 888-902. There is absolutely no indication that the drafters of the original bill gave any thought to the distinction at issue here, and the indications from reviewing the entire report are all to the contrary. H.R. 2470 was drafted before HCFA engaged in the final rulemaking to which Congress reacted in inserting the language that is at issue here.    Accordingly, no significant weight can be attached to the statement quoted by plainitffs.

## B. AGENCY INTERPRETATION OF THE STATUTE

Another potential source for the court to consider in determining the meaning of the statute is the interpretation of the statute by the administrative agency charged with its implementation. In this case, there are various pronouncements by CMS concerning the statute that have been made since the provision in question was enacted in 1988. Plaintiffs rely heavily

---

[4] The greater part of the bill, by far, concerned Medicare.

16

upon these statements, arguing that they are entitled to deference. Defendants also make extensive reference to CMS's pronouncements, arguing that they are contrary to the purpose of the statute, and illogical. To assess the weight of these statements, it is necessary to review them in some detail.

In 1994, HCFA adopted a final regulation relating to the medical expenses that could be deducted in the spenddown process. 59 Fed.Reg. 1659. This action took into account comments that had been made in response to proposed rules issued in 1983. 48 Fed.Reg. 39959. As revised in 1994, the regulations relating to deduction of incurred medical expenses provide that the states are required to deduct only current medical expenses, medical expenses incurred within three months prior to the month of application, and current payments on older bills. The revised regulation requires states to deduct expenses incurred within the three month retroactive period for all medical and remedial services recognized under state law, whether or not such services are included within the state plan and whether or not the expenses exceed state limitations on the amount, duration and scope of such services.

In the same rulemaking, HCFA also discussed a separate proposal that had been made in the 1983 Notice of Proposed Rulemaking to allow states to limit deductible medical expenses to services covered under the state plan. *See* "Provision E - Allow States to Limit Deductible Medical Expenses to Services Covered Under the State Plan." 59 Fed. Reg. at 1670. There were a number of comments from different sources concerning this proposal. The agency determined not to adopt this proposal, stating that "offering the states this administrative option would reduce a person's Medicaid eligibility or the amount of medical assistance provided." *Id.* Further, referring to the 1988 legislation, the agency stated that "it would be inconsistent with

17

the direction taken by Congress in the post-eligibility process to allow a similar limitation in the

spenddown process." 59 Fed.Reg. at 1670.

There also was a response to a comment from several states concerning the proposal that

states may not place "amount, duration and scope limits on covered services in the spenddown

process." The response stated:

> Under existing regulations, which have not been revised, States
> may place reasonable limits on the deductible amount of expenses
> not included in the State plan but may not limit the deduction of
> expenses included in the State plan. (Expenses "included in the
> State plan are those for services which are listed in the State plan,
> whether or not Medicaid will pay for them. By contrast, "covered"
> expenses are a subset of "included" expenses. Covered expenses
> are expenses for which Medicaid will pay if furnished to the
> individual by a Medicaid provider. Expenses incurred for services
> which are for care which exceed State plan limits on amount,
> duration, and scope are not considered to be covered expenses.)
> The basic requirement in section 1902(a)(17) is that incurred
> expenses recognized under State law be taken into account in the
> spenddown process. We believe that this is in keeping with the
> thrust of this requirement to require the deduction from income of
> expenses recognized under State law when the State has also
> included the expenses in the State plan, even though the State
> limits the amount of such expenses it pays for. We, therefore,
> allow States to limit the deductions only for incurred expenses
> recognized under State law that are not included in the State plan.

59 Fed. Reg. at 1671.

The first explicit statement by the agency concerning the application of the statutory

language "expenses not covered in the State plan" to expenses incurred while an applicant was

not eligible for benefits was a 1995 letter from HCFA Region V (Def. Ex. 1). That letter

essentially equated "not covered by" with "not payable by" Medicaid in the context of expenses

not payable by Medicaid because a recipient was ineligible due to a prohibited transfer of

resources. The agency reasoned that because the Medicaid statute prohibits payments for

18

services incurred during such a period of ineligibility, these expenses are literally services "not covered" by the Plan, citing the language from the 1994 rulemaking quoted above as defining "covered expenses" as expenses for which Medicaid will pay if furnished by a Medicaid provider. Acknowledging that this result created a "loophole," the letter concluded that it was compelled by the literal language of the post-eligibility regulations.

On March 19, 2004, CMS disapproved a State Plan Amendment submitted by Louisiana that would have precluded the deduction in the post-eligibility process of expenses incurred prior to eligibility. (Pl. Ex. 4). It concluded that the limit was not reasonable within the meaning of section 1902(r)(1(A). It stated that the intent of section 1902(r)(1)(A) "is to afford an institutionalized individual with income an opportunity to pay uncovered medical expenses for medical and remedial care." By enacting the section, which reversed proposed regulations that would have authorized a limit of the type proposed by Louisiana, Congress "specifically rejected this approach." Furthermore, it reasoned, the proposal undercut the purpose of requiring states to deduct incurred expenses for purposes of the spenddown.

The agency view concerning the statute is also explained in the letter dated April 25, 2005, in which CMS disapproved SPA 05-06. (Def. Ex. 5). Its reasoning was largely identical to the March 19, 2004 letter. It stated that limits imposed by the State "must ensure nursing home residents are able to use their own funds to purchase necessary medical or remedial care not covered; i.e., not paid for, by the State Medicaid program."

The Decision of the Administrator rejecting Maryland's exceptions to the disapproval contains a discussion concerning the reasons for the rejection of SPA 05-06 that expands upon the discussion set forth in the letter rejection, and makes CMS's position more explicit. One part of CMS's reasoning revolves around the relation between the spenddown process and the

19

deduction of expenses in the post-eligibility process.   The Decision notes the comments in the 1994 rulemaking in which the Secretary relied on Congress's action in overriding the Secretary's action in the post-eligibility process and decided that it would be inconsistent with that action to allow a limitation similar to the rejected one in the spenddown process. Opining that the intent of section 1902(r)(1)(A) "is to afford an institutionalized individual with income the ability to pay non-covered medical expenses for medical or remedial care," the Decision reasoned that failure to protect income to pay for non-covered expenses that were used to establish eligibility under the spenddown process would undercut the purpose of requiring States to deduct expenses under that process. Because the limit proposed by the State failed to protect income to enable the individual to pay for these expenses, the limit was unreasonable.

In the course of this discussion, the Administrator also discussed the agency's interpretation of the language of section 1902(r)(1)(A).     After reviewing the history of the regulations leading up to the 1988 regulatory action and Congress's enactment, the Decision concluded that because Congress incorporated the prior regulatory language, "the Secretary reasonably concluded that Congress was ratifying the Secretary's interpretation of 'services not covered under a state plan' as including medical expenses incurred during a period of ineligibility." Decision p. 9.

## C. DISCUSSION

The conclusions to be derived concerning the construction of the statute in light of the foregoing involve the legislative history of the statute, the effect of CMS's interpretation of the statute, and the statutory purposes. Although these subjects overlap, it is convenient to divide the discussion into three segments.

20

## 1. The Legislative History

In the materials concerning Congress's consideration of the statute there is no express statement on the issue of pre-eligibility expenses. CMS regards Congress' action as manifesting a Congressional intent regarding pre-eligibility expenses. Noting the passage in its 1988 final rulemaking that relates to pre-eligibility medical expenses, CMS takes the view that because Congress adopted the language of the previous regulation, it is reasonable to conclude that it was adopting the interpretation given that language by the Secretary.    This reasoning has considerable force. The language that was placed in the statute by Congress was language that had previously been interpreted by the agency that had authored the passage in question.

The Supreme Court has held that Congress' repetition of an established term from a prior statute generally implies that Congress intended the term to be construed in accordance with pre-existing regulatory interpretations. *See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002); *Bragdon v. Abbott*, 524 U.S. 624 (1998); *United States v. Board of Com'rs*, 435 U.S. 110 (1978). Although the court has not located any authority relating to a situation precisely like this one, this principle should apply with even greater force where Congress adopts the language of a regulation that was the subject of an interpretation by the agency that promulgated the regulation.

Defendants argue that CMS's inference concerning Congress' intent is unfounded. They state that there is no indication in the reports accompanying the statute that Congress intended that Medicaid should pay for expenses incurred by individuals who were ineligible at the time the services were rendered.    They point to the statement in the Conference Report that states would have the ability to place reasonable limits on expenditures for medical care. They argue that because the purpose of Congress' action was to reverse the proposal to permit the states to

21

make the deduction for incurred medical expenses optional, a proposal of significantly broader scope than the issue of whether pre-eligibility expenses would be covered, that action cannot be read as expressing any intent concerning the pre-eligibility rule. Defendants also state that it makes no sense to attribute an intent to Congress based on the comments in the rulemaking because Congress actually rejected the regulatory language that was being interpreted by the agency in the passage from the proposed rulemaking which reliance is placed.

It is true that there is nothing that indicates a specific Congressional intent to mandate the deduction of pre-eligibility expenses. On the other hand, there is also nothing that indicates a specific Congressional intent not to include pre-eligibility expenses within "non-covered expenses." Furthermore, the language in the Conference Report cited by defendants does not appear to the court to indicate any particular view on the subject of pre-eligibility expenses. The fact that the Committee gave examples of limits that might be imposed does not appear to have any particular bearing on the issue of pre-eligibility expenses or to indicate any legislative disposition concerning them; nor does the nature of the examples that were included.

Despite the absence of any explicit indication of intent, it is significant that the language that Congress adopted had been expressly interpreted by HCFA as applying to pre-eligibility expenses. The context was somewhat different; at the time that the comment was made, HCFA was proposing to make the deduction optional, and the interpretation given in Comment 3 would have applied differently than it did when the deduction was made mandatory by Congressional action. Nonetheless, that interpretation was explicit, concerned the very subject at issue, and it was the product of several years of sustained study by the agency that had written the language that was the subject of the interpretation, after extensive commentary from entities interested in the Medicaid process. The rulemaking specifically indicated that pre-eligibility expenses were

22

"not covered." While there is no explicit expression of Congressional intent concerning the specific issue of pre-eligibility expenses, the inference that by adopting this language Congress adopted the interpretation previously expressed by CMS is not unreasonable.

## 2. The Administrative Interpretation

In certain circumstances, a court must give deference to the interpretation accorded a statute by the agency charged with the administration of that statute. *See Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). The Supreme Court has held that "administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead*, 533 U.S. 218, 226-227 (2001). Where *Chevron* deference is due, the court must first determine whether the plain language of the statute speaks directly to the issue. 467 U.S. at 842. If not, then the court must determine whether the agency's position is based on a "permissible" construction of the statute. 467 U.S. at 843. In so doing, the court does not substitute its own construction of the statute for the agency's, even if it would not have reached the same result if presented with the issue in the absence of the agency interpretation.

With respect to the Medicaid statute, the Supreme Court has repeatedly spoken of the deference due to HHS. "[R]eliance on [the] Secretary's significant expertise [also is] particularly appropriate in the context of a complex and highly technical regulatory program" like Medicaid. *Wisconsin Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 497 (2002) (internal quotation marks omitted). "Perhaps appreciating the complexity of what it had wrought, Congress conferred on the Secretary exceptionally broad authority to prescribe standards for

23

applying certain sections of the [Medicaid] Act." *Schweiker v. Gray Panthers*, 453 U.S. 34, 43 (1981); "[W]e must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation. This broad deference is all the more warranted when, as here, the regulation concerns a complex and highly technical regulatory program" that "require[s] significant expertise and entail[s] the exercise of judgment grounded in policy concerns." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (internal quotation marks and citation omitted). *See also Atkins v. Rivera*, 477 U.S. 154 (1986).

Courts have extended deference to HHS in the context of the Medicaid statute without regard to whether the interpretation was made in the course of formal rulemaking. *See, e.g., Harris v. Olszewski*, 442 F.3d 456, 467 (6th Cir.2006); *Alaska Dep't of Health & Social Servs. v. Ctrs. for Medicare & Medicaid Servs.*, 424 F.3d 931, 938-39 (9th Cir.2005); *Pharmaceutical Research & Manufacturers of America v. Thompson*, 362 F.3d 817, 822 (D.C.Cir.2004); *Texas v. Dep't of Health & Human Servs.*, 61 F.3d 438, 440 (5th Cir.1995); *Rosen v. Goetz*, 410 F.3d 919, 927 (6th Cir.2005); *S.D. v. Hood*, 391 F.3d 581, 596 (5th Cir.2004); *Alaska Dep't of Health & Soc. Servs. v. Ctrs. for Medicare & Medicaid Servs.*, 424 F.3d 931, 939 (9th Cir.2005); *Georgia v. Shalala*, 8 F.3d 1565, 1572-73 (11th Cir.1993).

Many of these decisions involve approval of State plans, authority expressly committed to the agency by Congress.    Furthermore, section 1902(a)(17) of the Act, 42 U.S.C. § 1396a(a)(17) provides that a State plan must include standards that provide for determining eligibility for and the extent of medical assistance "in accordance with standards prescribed by" HHS. The issue before this court does not involve a State plan, or the issue of reasonable limits, but rather the interpretation of the statutory phrase "not covered by," i.e., whether the expenses

24

are within the statute in the first place.    However, whether or not CMS's interpretation of the

statute was made in the exercise of an express delegation is not the only consideration is

determining whether to defer. Deference is also based on the agency's expertise. *See West*

*Virginia v. Thompson*, 475 F.3d 204 (4th Cir. 2007)("The Medicaid statute is a prototypical

'complex and highly technical regulatory program' benefitting from expert administration,

which makes deference particularly warranted.") *See also Community Health Center v. Wilson-*

*Coker*, 311 F.3d 132 (2d Cir. 2002):

> In cases such as this, where a highly expert agency administers a
> large and complex regulatory scheme in cooperation with many
> other institutional actors, the various possible standards for
> deference begin to converge. First, of course, we must defer to
> agency interpretations appearing in valid regulations issued
> through notice and comment or adjudication . . .    Less formal
> interpretations may also be entitled to mandatory deference,
> depending upon to what extent the underlying statute suffers from
> exposed gaps in its policies, especially if the statute itself is very
> complex, as well as on the agency's expertise in making such
> policy decisions, the importance of the agency's decisions to the
> administration of the statute, and the degree of consideration the
> agency has given the relevant issues over time. . . .We describe
> such deference as 'mandatory' because in those circumstances we
> can properly infer that Congress intended the agency to "enjoy
> primary interpretational authority," and it is our duty to carry out
> Congress' will. . . . Even if we are not *required* to defer to a
> permissible agency interpretation, we still *may* defer, based largely
> on a similar set of concerns: the agency's expertise, the care it took
> in reaching its conclusions, the formality with which it
> promulgates its interpretations, the consistency of its views over
> time, and the ultimate persuasiveness of its arguments.

311 F.3d at 138 (citations omitted)(emphasis in original).    The court concludes that CMS's

statements concerning the interpretation of the statutory section in question are a potential

subject of *Chevron* deference, and the court must determine whether to defer to that

interpretation.

CMS's discussion of the deductibility of pre-eligibility expenses in the cost of care calculation takes into account its perception of the need to protect a recipient's ability to pay expenses used in the spenddown process. Both parties here have both devoted substantial argument to the issue of the relation *vel non* of the post-eligibility calculation to the spenddown process. However, while that issue may have a bearing on the issue of whether a limit should be approved as reasonable, it has little bearing on what the words of the statute mean. As defendants observe, the two issues are the subject of different statutory provisions, and there is no necessary connection between them for purposes of construing the statute.

CMS does not, however, rest its interpretation solely upon a relation between the post-eligibility calculation and the spenddown process. It also relies upon Congress's adoption of the regulatory language previously interpreted by the agency. As such, it has explicitly adopted an interpretation on the precise issue before the court - the meaning of the words of statute. Defendants argue that the court should not give deference to CMS's position for multiple reasons. First, they assert that CMS's position has not been consistent. They also contend that CMS's position contravenes the purpose of the statute.

Defendants assert that statements by the agency, both before and after the 1988 statute, indicate a view contrary to its present position that expenses not covered by the plan are not equivalent to expenses not paid by the plan. They also state that CMS initially would have permitted deduction of expenditures made during a period of ineligibility due to prohibited transfer of resources, but retreated from this position, arguing that this change casts doubt on the agency's justification for its position.

In contending that CMS has not always equated coverage with payment, defendants point to statements made by the agency in 1991. In 1991, the agency adopted regulations to

26

conform to Congress's 1988 action. 53 Fed. Reg. 8832. In the commentary that accompanied the rulemaking, the agency characterized the 1988 regulations as follows: "Final regulations published on February 8, 1988 (53 FR 3586), to be effective April 8, 1988, amended Medicaid rules with the intent of making optional for States what had previously been required: The disregard of income needed to cover expenses incurred for necessary medical and remedial care recognized under State law but not included in the State Medicaid plan." 56 Fed Reg at 8836. It went on to say that it was revising the regulations relating to post-eligibility calculations for institutionalized individuals "[t]o conform to section 1902(r)(1) by revising the paragraphs that deal with expenses incurred for necessary medical and remedial care recognized under State law but not included in the State Medicaid plan, to restore the requirement that was in effect before publication of the February 8 rules." *Id.*

Defendants view the fact that the agency equated "not covered" with "not included" in 1991 as highly significant. However, on several occasions the agency seems to have used these terms interchangeably without appearing to convey any specific intent by this usage. *See, e.g.*, 53 Fed. Reg. 3588; 48 Fed. Reg. 39961-62. Prior to 1994, the regulations included the words "encompassed," "included" and "covered" in different contexts; to the extent that any implication from the words themselves can be derived, it is arguable that "covered" is closer to "paid for" than is "included," but there is no contemporaneous indication that the agency made a distinction among these terms as they applied to pre-eligibility expenses. For this reason, it is difficult to attach any dispositive significance to the use of the word "included" in 1991. In any event, three years later, in the rulemaking relating to the spenddown provisions, the agency expressly enunciated a distinction between "not included" and "not covered," which clearly was a considered conclusion, unlike the expressions used in 1991.

27

In further support of their argument that CMS's position is not consistent, defendants assert that CMS has receded from the position taken in the 1995 letter from Region V that nursing facility expenses incurred during a penalty period were services "not covered under the State plan." They point to a letter dated April 18, 2006 from CMS Region III that reflects CMS's current position authorizing the states not to deduct such expenses. (Def. Ex. 7.) However, this letter does not prove defendant's point. Although CMS closed the "loophole" that existed, it did so by opining that states could prevent the deduction of such expenses by adopting a limit of zero for such expenses.    This change did not alter the agency position that these expenses were not covered; to the contrary, it stated that CMS continued to believe that these expenses were not covered. Instead, CMS permitted states to establish a limit of zero for such expenses, under the provisions of the statute and regulations that permit states to impose reasonable limits.

Defendants correctly assert that the consistency of an agency's position is a factor in assessing the weight that is due to that position. *Cf. United States v. Mead Corp.*, 533 U.S. 218, 228 (2001)(weight that should be accorded to an agency interpretation depends " 'upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.' "). However, changes in the agency position are not necessarily fatal to deference. One of the authorities on which defendants place great reliance is *Good Samaritan Hospital v. Shalala*, 508 U.S. 402 (1993), which involved the Medicare reimbursement provisions of the Social Security Act. In that case, the Court, while noting that an agency interpretation that conflicts with an earlier interpretation is entitled to considerably less deference than a consistently held view, also observed that the Secretary is not estopped from changing a view believed to have been

28

grounded on a mistaken interpretation. It said that the weight to be given to the agency's views in such a situation depends on the facts of the individual case. The Court went on to accord deference to the agency, observing that "[i]n the circumstances of this case, where the agency's interpretation of a statute is at least as plausible as competing ones, there is little, if any, reason not to defer to its construction." 508 U.S. at 417.

To the extent that the interpretation of the statute espoused by CMS has been the product of development over the years since the passage of the statute, the court concludes that this fact does not compel the conclusion that deference should not be afforded. The position that CMS takes appears to have been the product of extensive thought and the result of some twenty years of study.    While it may not have been expressed contemporaneously with the passage of the statute, it has been applied in several different contexts in a consistent way. Furthermore, it is not inconsistent with any considered earlier interpretation that has been brought to the court's attention. Finally, it is noteworthy that the language that is the subject of the interpretation originated in a regulation of the agency, enhancing the deference that is due to the interpretation. *See Thomas Jefferson Univ. v. Shalala, supra,* 512 U.S. 504 (1994)

### 3. The Statutory Purposes

Defendants argue that their interpretation of "not covered" as meaning expenses not included in the plan and excluding expenses incurred during a period of ineligibility is implicit in the statute. This argument is not based upon any specific textual source. Rather, they rely on the underlying purposes of the Medicaid statute.

Defendants argue that "to the extent that CMS interprets 1902(r)(1) to override threshold eligibility requirements of the Medicaid law, CMS exceeds its authority by seeking to mandate state and federal spending contrary to the Social Security Act." (Def. Memorandum at 7). They

29

state that the conclusion that the statutory post-eligibility deduction is "not inherently limited to expenses incurred during periods of eligibility" focuses on section 1902(r)(1) "to the exclusion of the remainder of the Act, with absurd results.' (Def. Memorandum at 10).

Defendants' position is that "not covered under the State plan" refers to medical care that is excluded from coverage by the terms of the State plan, including limitations on amount, duration and scope.    They contend that the construction adopted by plaintiffs and CMS contradicts inherent limits upon required payment by the State because it forces the State to pay for expenses that by, definition, are not payable by Medicaid. In support, they posit the example that the State would be required to pay for expenses incurred at the private pay rate at a time when the individual was not eligible, or even expenses that violated state or federal requirements respecting quality of care, licensor or certification. (Def. Memorandum at 17). Defendants argue vigorously that such a result would "pervert" the purposes of the statute and lead to absurd results.

Defendants' policy argument is not without substance. It is undeniable that the potential effect of this interpretation is to require the Medicaid plan to pay indirectly for expenses which, by definition, are not payable by the program in that they were incurred during a period when the recipient was ineligible for benefits. Furthermore, plaintiffs' argument that the statutory purposes require that a recipient be entitled to deduct expenses employed in the spenddown process is not altogether convincing. If the applicant's excess income is applied to these expenses, it is not clear why they remain unpaid.

On the other hand, permitting the deduction of other incurred expenses (to which the statutory language unquestionably applies) also has the effect of requiring the states to subsidize expenses not covered by Medicaid. For example, requiring the states to deduct expenses that are

30

not covered because they are beyond limits on type, requires a state to subsidize expenses it has decided not to cover. In fact, this was the very reason expressed by CMS for adopting the 1988 regulations, and Congress explicitly rejected that position.    The purposes of the statute, not expressed in the text at issue, do not compel the adoption of defendants' argument in the face of the construction to the contrary by the agency charged with administering the statute.

For these reasons, the court concludes that it is appropriate to defer to the construction of the statute expressed by CMS.    The statute is ambiguous, and CMS's interpretation is permissible. Because it is permissible, it is irrelevant whether the court would have adopted this construction. In this court's view, the words of the Supreme Court in *Good Samaritan Hosp. v. Shalala* are apt: "The issue is not without its difficulties whichever way we turn."    Though not the sole permissible one, the agency's interpretation . . . "give[s] reasonable content to the statute's textual ambiguities." 508 U.S. at 420. Under the circumstances presented here, it is appropriate to defer to a permissible interpretation of an ambiguous statutory provision espoused by the agency entrusted with its implementation.

Therefore, the court holds that pre-eligibility expenses are expenses "not covered by" the State Plan, within the meaning of 42 U.S.C. § 1396a(r)(1)(A).

### III. COUNT II - COMPLIANCE WITH STATE LAW

The second issue is whether the adoption of the limit contained in SPA 04-27 was valid without the publication of the change in the Maryland Register. Plaintiffs rely on the Maryland Administrative Procedure Act. Md. Ann. Code, State Government Article §10-101 et seq. That statute provides that an agency may not adopt a proposed regulation without undertaking certain steps, including publication in the Maryland Register and opportunity for public comment. *Id.* § 10-111(a). A regulation is defined as:

31

> a statement or an amendment or repeal of a statement that:
> (i) has general application;
> (ii) has future effect;
> (iii) is adopted by a unit to:
> > 1. detail or carry out a law that the unit administers;
> > 2. govern organization of the unit;
> > 3. govern the procedure of the unit; or
> > 4. govern practice before the unit; and
> (iv) is in any form, including:
> > 1. a guideline;
> > 2. a rule;
> > 3. a standard;
> > 4. a statement of interpretation; or
> > 5. a statement of policy.

Section 10-101(g)(1). A regulation that is adopted without the necessary rulemaking procedures is ineffective. *See Delmarva Power & Light Co. v. Public Service Com'n*, 370 Md. 1, 38 (2002).

Defendants have made no argument that the new policy does not constitute a regulation within the meaning of the statute. Defendants assert that it is difficult to engage in the rulemaking procedure simultaneously with the adoption of a Plan amendment, given the requirement that they obtain CMS approval of the amendment. However, defendants have not pointed to any authority that would excuse compliance with the requirements of APA based upon this difficulty.[5] Moreover, even if such an argument had potential validity, in this case there was a delay of sixteen months between the approval of the Plan Amendment and the publication of the regulation. At the hearing upon the motions, defendants conceded that their actions violated the APA. Therefore, the court holds that as a matter of state law, the limitation in Amendment 04-27 was not valid to the extent it was adopted in accordance with the APA, including public notice.

---

[5] Nor do defendants raise any contention that the Medicaid statute's requirement that they administer the program in accordance with the terms of the plan overrides any state law requirements for adoption of regulations.

Prior to the proposed change that was published in the Maryland Register, COMAR §

10.09.24.10, relating to the definition of available income for institutionalized persons, permitted

the following deduction:

> (f) The following incurred medical expenses that are not subject to
> payment by a third party:
> (i) Medicare and other health insurance premiums, deductibles or
> co-insurance charges; and
> (ii) Necessary medical care or remedial service recognized under
> State law but not covered under the State Plan.

This language tracks the language of section 1902(r)(1)(A) and 42 C.F.R. § 435.832. Therefore,

it should be interpreted in the same manner as the federal law and regulations. COMAR §

10.09.24.16. As set forth in detail hereinabove, the court concludes that the import of this

language is that pre-eligibility expenses are deductible as not covered under the Plan. The

regulations in effect prior to the amendment plainly contained no limitation on the expenses that

could be deducted that would exclude expenses incurred prior to eligibility. The amendment

published in 2006 inserted a limitation comparable to that included in SPA 04-27, i.e., it

excludes "medical expenses for dates of service before the retroactive period associated with the

month of Medical Assistance application." As the court holds that the amendment to the

regulation was required to be effectuated in compliance with the Administrative Procedure Act,

it follows that this limit was not effective prior to the date of compliance with the Act.

## IV. CONCLUSION

Based on the foregoing discussion, the court will grant plaintiffs' Motion for Partial

Summary Judgment and deny defendants' Motion for Partial Summary Judgment. There remain

issues about the appropriate scope of relief. That determination will be the subject of further

proceedings, which the court will schedule after communication with the parties.

Dated: _Jany 18 2008_

Judge W. Michel Pierson
The Judge's signature appears
on the original document

FRANK M. CONAWAY, CLERK

34