IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD JANIGIAN, JR., et al.,<br><br>Plaintiffs<br><br>v.<br><br>CARLOS CANO, et al.,<br><br>Defendants. | Civil Action No. 1:07-cv-00508<br>Judge Paul L. Friedman<br><br>Next Event: None Scheduled |

### PLAINTIFFS' STATEMENT OF SUPPLEMENTAL AUTHORITY

Plaintiffs, by their undersigned counsel, pursuant to this Court's directive on February 5, 2008, submit this statement of supplemental authority in further opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defendants' Motion") (D.E. # 10).

I.  **MOOTNESS**

*Sheely v. MRI Radiology Network*, 505 F.3d 1173 (11th Cir. 10/24/07), provides additional authority demonstrating that this case presents a live controversy. There, the plaintiff was a blind individual who had been denied the use of her guide dog at an MRI clinic. She sued for declaratory and injunctive relief under the Americans with Disability Act. Eight months into discovery, the clinic suddenly announced that it had changed its animal policy to prevent the challenged practice and moved for summary judgment on the ground of mootness. The district court granted the motion.

The Eleventh Circuit reversed and remanded. Because "mootness" eliminates the "case or controversy" requirement that is a basis for the court's exercise of

jurisdiction, the court began by re-characterizing the district court's grant of summary judgment under Rule 56 as a grant of a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. The difference was important, because "a defendant seeking dismissal on mootness grounds under the doctrine of voluntary cessation bears the extremely heavy burden of showing that it is absolutely clear that he will not revert to his old ways." *Id.* at 1183-84, citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000). The court went on to identify three factors for determining whether a defendant has met the heavy *Laidlaw* burden:

(1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice;

(2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and

(3) whether, in ceasing the conduct, the defendant has acknowledged liability.

503 F.3d at 1184.

In considering these factors, the court first determined that the challenged conduct was not an isolated act, but rather the defendant's actual policy, created by the clinic's owner, communicated to employees, and enforced on multiple occasions. 505 F.3d at 1185.[1] Indeed, that the challenged conduct wasn't isolated but was in fact the defendant's stated policy only made the chance of recurrence <u>greater</u>. *Id.*

Second, in *Sheely*, the court noted that the changed policy came nine months into the lawsuit and two days before the defendants moved for summary judgment on

---

[1] These and other facts relevant to defendant's policy were obtained during the eight months of discovery which preceded the summary judgment motion. In this case, there has been <u>no</u> discovery, and Plaintiffs have submitted two affidavits under Fed. R. Civ. P. 56(f) attesting to the discovery needed to respond to Defendants' summary judgment motion.

2

mootness. This suggested that the change in policy was motivated by litigation strategy and an attempt to avoid liability. *Id.* at 1186-87. Thus, the court concluded this second factor weighed against defendant.

Third, the defendants in *Sheely* refused to acknowledge wrongdoing, which "suggests that cessation is motivated merely by a desire to avoid liability, and furthermore ensures that a live dispute between the parties remains." *Id.* at 1187. In sum, the Court in *Sheely* concluded that defendant

> has not met its "formidable," "heavy burden" of meeting the Supreme Court's "stringent" standard for mootness in a private voluntary cessation case--showing that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Laidlaw, 528 U.S. at 189, 120 S.Ct. 693 (internal quotation marks omitted). In short, we cannot say that this case is moot.

*Sheely* is identical to this case in terms of Defendants' mootness argument. Just as in that case, each of these three factors weighs heavily in favor of Plaintiffs in this action.

### (1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice;

This is not a lawsuit about an isolated incident. This is a lawsuit about Defendants' policy, as alleged in the very first sentence of the class action complaint ("this is an action to establish that a policy of Defendants . . . and the implementation of that policy, violate the federal Medicaid statute"). The policy being challenged is the one that denied the required PEME benefit to Plaintiffs and similarly-situated elderly Medicaid beneficiaries.[2]

---

[2] To the extent that Defendants deny or seek to controvert these facts, this is further evidence that discovery – outlined painstakingly in Plaintiffs' Rule 56(f) declarations – must be permitted.

3

That the denial of Plaintiffs' PEME benefit was the result of Defendants' policy is not seriously disputed: In their opposition papers, Defendants admit that the system for calculating a beneficiary's post-eligibility cost of care was flawed and claim to have changed their forms and their procedures to prevent the problem from happening again. See Cunningham Affidavit ¶¶ 8-9. They claim that they have even begun training nursing home representatives about the new forms and the PEME procedures. See Cunningham Affidavit ¶¶ 11. The inescapable inference from Defendants' admitted changes to correct a flawed policy is that there was a flawed policy to begin with, and that it was that policy, not any isolated incident, that caused Defendants to deny Plaintiffs their required PEME benefit. Thus, this first factor favors Plaintiffs.

### (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit;

There is no serious dispute that the changes Defendants made to their post-eligibility policy are a direct result of this litigation.[3] Defendants admit they didn't even know there was a problem until Plaintiffs complained and later began this class action. See Cunningham Aff. ¶ 9. The timing also suggests a causal relationship between this litigation and Defendants' actions. Just as in Sheely, the changes to the challenged policy <u>followed</u> the lawsuit, with defendants now claiming the controversy has been resolved. Similarly, Defendants' attempts to pay off the claims of the named Plaintiffs – which were executed through litigation counsel, not the Department of Health – were plainly the result of this lawsuit. However, as in Sheely, such litigation-prompted changes cannot satisfy Defendants' "heavy burden" to show mootness.

---

[3] And if there were a dispute, Plaintiffs would be entitled to discovery on this point as well.

4

> **(3) whether, in ceasing the conduct, the defendant has acknowledged liability.**

This final *Sheely* factor also weighs against Defendants, because here too, Defendants deny any wrongdoing. In *Sheely*, the court held that "a defendant's failure to acknowledge wrongdoing similarly suggests that cessation is motivated merely by a desire to avoid liability, and furthermore ensures that a live dispute between the parties remains." The same is true here. Defendants have not acknowledged any wrongdoing, but only launched defensive measures designed to "pick off" named Plaintiffs, render the action moot, and defeat a class action (without paying the claims of other class members). These actions are surely insufficient to meet Defendants' "heavy burden" to show mootness.

In sum, *Sheely* is additional, powerful authority against Defendants' Motion. Defendants' attempts to moot the case with an illusory "pause" of illegal conduct are similar in both cases, and the Eleventh Circuit's analysis in *Sheely* provides a framework for denial of the Motion here.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants' exhaustion of administrative remedies argument is premised upon the opportunity of Medicaid beneficiaries denied the required PEME to request a "fair hearing." Defendants argue that because the named Plaintiffs could have sought relief pursuant to an administrative "fair hearing" process, the entire class action should be dismissed.

This argument is wrong for the many reasons cited in Plaintiffs' original papers. Among other things, the District's analysis would require a hugely inefficient administrative process to attack Defendants' wrongful conduct one-by-one, rather than

5

in this class action proceeding. Using Defendants' logic, there could <u>never</u> be class actions challenging wrongful Medicaid policies and practices, because administrative hearings would always be available as a substitute.

But Defendants' argument also collapses in the face of federal and District regulations which establish a strict 90-day time limit for bringing such an administrative claim, a restriction that would bar the vast majority of class members from getting relief through the administrative process.

Federal law requires states to provide hearings for action or inaction in the Medicaid program. See 42 U.S.C. § 1396(a)(3) (a state plan shall provide for a fair hearing process). The regulations which govern the fair hearing process are set forth at 42 C.F.R. § 431.200, et seq. (e.g., requests must be in writing). These regulations include a strict 90-day time limit during which to request a fair hearing:

> The agency must allow the application or recipient a reasonable time, <u>not to exceed 90 days</u> from the date that notice of action is mailed, to request a hearings [sic].

42 C.F.R. § 221(d).

This federally-required 90-day limit for fair hearing requests is reflected in the District's IMA Policy Manual, which states:

> All applicants/recipients shall be afforded the right to request a hearing on any action taken by the agency, including loss of benefits, <u>which occurred in the prior 90 days</u>.

IMA Policy Manual, Part VIII, Chapter 7.4.2.[4]  Thus, under both federal and District regulations, the state may not grant a "fair hearing" request made more than 90 days

---

[4] Available as of February 18, 2008 at
http://dhs.dc.gov/dhs/cwp/view,a,1345,q,604145,dhsNav_GID,1728,.asp

after the action (or inaction) complained about.

This class action seeks relief on behalf of all Medicaid recipients of long-term care benefits for the period of March 16, 2004 (three years before the filing of suit) to the present. The administrative process Defendants offer as a substitute for this class action would provide zero relief to any Medicaid recipient who did not request a fair hearing within 90 days of his or her cost-of-care calculation. In addition, the administrative process would not serve Medicaid recipients who either (a) left the program during the class period; or (b) died during the class period. In short, the administrative process which Defendants seek to impose as a prerequisite to litigation is not available to many, if not most, class members and cannot serve to block the only option left to these other class members, i.e., this class action.

## CONCLUSION

For these additional reasons, this Court should deny Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment and permit discovery on class certification and on the merits to proceed.

Dated:      February 19, 2008.                    Respectfully submitted,


                                                  _____/s/_____
                                                  Cyril V. Smith
                                                  D.C. Bar No. 413941
                                                  William K. Meyer
                                                  ZUCKERMAN SPAEDER LLP
                                                  100 East Pratt Street, Suite 2440
                                                  Baltimore, Maryland 21202
                                                  (410) 332-0444

(Fax) (410) 659-0436
csmith@zuckerman.com


Ron M. Landsman
D.C. Bar No. 209452
RON M. LANDSMAN, P.A.
200-A Monroe Street, Suite 110
Rockville, Maryland 20850-4412
(240) 403-4300, ext. 101
(Fax) (240) 403-4301
RML@ronmlandsman.com



René H. Reixach
WOODS OVIATT GILMAN LLP
700 Crossroad Building
2 State St.
Rochester, New York 14614
(585) 987-2858
Fax: (585) 987-2958
Rreixach@WoodsOviatt.Com

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of February, 2008, true copies of the foregoing Plaintiffs' Statement of Supplemental Authority were filed electronically with the Court for ECF service upon:

Jayme Kantor
Assistant Attorney General
Civil litigation Division – Equity I Section
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
Jayme.Kantor@dc.gov

                                                    /s/
                                      Cyril V. Smith