IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD JANIGIAN, JR., *et al.*, )
)
) Civil Action No. 1:07-cv-00508
) Judge Paul L. Friedman
Plaintiffs )
) Next Event: None Scheduled
v. )
)
CARLOS CANO, *et al.*, )
)
Defendants. )

## PLAINTIFFS' MOTION FOR LEAVE TO FILE ADDITIONAL AFFIDAVITS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Plaintiffs, by their undersigned counsel, move pursuant to Fed.R.Civ.P. 56(e)(1) and Fed.R.Civ.P. 56(f) for leave to file additional Affidavits, setting forth newly-discovered evidence, in opposition to Defendants' Motion to Dismiss or in the Alternative, for Summary Judgment ("Defs' Motion") (D.E. # 10), and in support hereof state:

1. Defs' Motion was filed on June 21, 2007 and was fully briefed by the parties by July 30, 2007. On February 5, 2008, this Court held a status conference, following which the parties submitted additional argument and authorities addressing Defs' Motion. On July 23, 2008, the parties submitted a Joint Statement to respond to a question raised by the Court. Defs' Motion is still pending before the Court.

2. Plaintiffs seek to file two sworn affidavits (Exhibits A and B hereto) in further opposition to Defs' Motion to put before this Court newly-discovered evidence that contradicts critical assertions made by Defendants. This new evidence goes to the

heart of the case and undermines Defendants' claim that this case is moot because they have supposedly eradicated their past unlawful conduct.

3. In their Motion, Defendants admit past violations of federal Medicaid law in refusing to allow a deduction for beneficiaries' pre-eligibility medical expenses ("PEME"), but assert that they have changed their policies, forms and procedures to prevent future denials of the PEME deduction. *See* Defs' Motion at 11 ("the District has altered its conduct as relates to the basis of the claims"). To support that assertion, Defendants submitted a single affidavit from Michael Cunningham, Supervisory Policy and Program Analyst in the Income Maintenance Administration ("IMA") within the District of Columbia Department of Human Services, who testified:

- "The District has taken measures to prevent this type of allowable deduction from being missed for other long term care Medicaid patients. On April 13, 2007, the IMA payability form was adjusted to include a line for medical expenses such as the ones described in Plaintiffs' complaint and instructions on the new form from the IMA administrator." Cunningham Decl. ¶ 8

- "IMA has meet with nursing home representatives to review the revised patient payability forms as part of new training procedures and has pointed out that prior uncovered medical expenses can be deducted from patient payability." Cunningham Decl. ¶ 11

4. Plaintiffs have recently discovered that these assertions by Mr. Cunningham are not accurate. As set forth in the Rule 56(f) Affidavit of William K. Meyer (attached hereto as Exhibit A), an executive of one nursing home in the District has personal knowledge of the fact that on multiple occasions since April 2007 (the date of IMA's alleged change of policy), IMA has denied that nursing home's application for PEME benefits. In these instances, the facility was told that it was IMA's policy to disallow the PEME benefit for nursing home "room and board." However, as this executive

explained, "room and board" at his facility (and all other nursing homes) comprise the bulk of nursing care provided to patients, *i.e.*, a bed, 24-hour nursing care, food, and other related aspects of custodial care. By denying the PEME deduction for custodial "room and board," this executive explained that IMA has effectively "nullified" and "gutted" the PEME deduction. *See* Meyer Affidavit ¶ 7.

5. This limitation on the PEME benefit to exclude nursing home "room and board" bills is not part of the District's State Plan (or District law), and has never been approved by the federal Centers for Medicare & Medicaid Services ("CMS") as a limit on benefits, but apparently has been imposed by fiat by the IMA.

6. Moreover, the CFO of another District nursing home facility has recently explained to counsel that, contrary to Mr. Cunningham's assertions, there have been no meetings, training, or communications from IMA concerning that agency's alleged change of policy regarding the PEME benefit. This CFO stated that he would be aware of any contacts from IMA regarding changes in reimbursement policy, and that none have occurred. *See* Meyer Affidavit ¶ 8.

7. Neither nursing home executive is willing to provide voluntary testimony by way of affidavit of a well-founded fear of retribution from Defendants. *See* Meyer Affidavit ¶ 6. For this reason, and because discovery has not yet begun in this action, Plaintiffs are unable to present this evidence by affidavit on personal knowledge. *See* Fed.R.Civ.P. 56(f).

8. In addition, a supervisor at IMA has recently admitted in the case of another application for PEME benefits that IMA has arbitrarily imposed a three-month limit on this benefit. *See* Affidavit of Thomas J. Hennrikus (Exhibit B hereto) at ¶ 5 (admission

of Cynthia Wiggins).  Like IMA's policy of denying the PEME benefit for nursing home "room and board" bills, this three-month restriction is not part of the District's State Plan (or District law), and has never been approved by CMS.  The Hennrikus Affidavit is submitted pursuant to Fed.R.Civ.P. 56(e)(1) (court may permit additional opposing affidavits on personal knowledge).

9. The Meyer and Hennrikus Affidavits establish the existence of a genuine dispute concerning the following material facts:  (a) whether and to what extent Defendants are continuing to deny the PEME deduction for incurred but unpaid nursing home bills; and (b) whether Defendants have imposed an arbitrary and illegal three-month restriction on the PEME benefit.

10. These genuine disputes preclude the granting of summary judgment based on Defendants' "mootness" defense.  As discussed in Plaintiff's papers in opposition to Defs' Motion, this defense requires that Defendants establish **both** that (1) it is "absolutely clear" that the allegedly wrongful behavior could not reasonably be expected to recur, United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct. 361, 364 (1968); **and** (2) they have "completely or irrevocably eradicated" the effects of the alleged violation, Los Angeles County v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383 (1979).  See Nat'l Black Police Ass'n v. District of Columbia, 108 F.3d 346, 349 (D.C. Cir. 1997); Matson Navigation Co. v. United States, 825 F.2d 502, 503-04 (D.C. Cir. 1987). See also Alba Conte & Herbert Newberg, Newberg on Class Actions (4th ed. 2002), § 2:15 at 138 ("voluntary action will not render the controversy moot unless the defendant meets a heavy burden to show that its change of heart is permanent and that the defendant will not return to its old ways").

11. The Meyer and Hennrikus Affidavits directly contradict Defs' Motion and the Cunningham Declaration on both points. The Meyer Affidavit relates how, according to one District nursing home CEO, Defendants' wrongful conduct is actually recurring, *i.e.*, Defendants are refusing to allow the PEME deduction for nursing home "room and board," a restriction which effectively guts the entire PEME benefit. Moreover, the Meyer and Hennrikus Affidavits establish that Defendants have failed to "completely or irrevocably eradicate" the effects of the alleged violation because Defendants have apparently imposed two unlawful limitations on the PEME benefit, *i.e.*, a "room and board" limitation and a "three-month" limitation. Neither limitation is currently permitted by federal or District law. Moreover, as set forth in the Meyer Affidavit at ¶ 8, Defendants have failed to inform District nursing homes of IMA's alleged change of policy, contrary to Mr. Cunningham's assertion that such "outreach" had taken place. For these reasons, dismissal or summary judgment in Defendants' favor on the ground of "mootness" would be unwarranted.

12. This newly-discovered evidence also underscores the need for discovery in this case so that the exact nature of the Defendants' current policies and procedures regarding the PEME deduction may be ascertained. For example, a deposition of Mr. Cunningham would elucidate Defendants' recent actions regarding the PEME deduction, the restrictions on this benefit which Defendants are imposing, the legal bases for such restrictions (if any), and other matters which are material to Defendants' liability in this action (and to Defs' Motion). Similarly, subpoenas directed to nursing home officials would permit Plaintiffs to present admissible evidence showing that there is at least a genuine issue of the material fact regarding Defendants' supposed change

of policy.

WHEREFORE Plaintiffs respectfully request that this Court grant them leave to file the Meyer and Hennrikus Affidavits (attached as Exhibits A and B, respectively) in further opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

Dated:    August 14, 2008.                    Respectfully submitted,


                                           /s/
Cyril V. Smith
D.C. Bar No. 413941
William K. Meyer
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
(410) 332-0444
(Fax) (410) 659-0436
csmith@zuckerman.com


Ron M. Landsman
D.C. Bar No. 209452
RON M. LANDSMAN, P.A.
200-A Monroe Street, Suite 110
Rockville, Maryland 20850-4412
(240) 403-4300, ext. 101
(Fax) (240) 403-4301
RML@ronmlandsman.com


René H. Reixach
WOODS OVIATT GILMAN LLP
700 Crossroad Building
2 State St.
Rochester, New York 14614
(585) 987-2858
Fax:  (585) 987-2958

6

Rreixach@WoodsOviatt.Com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of August, 2008, a true copy of the foregoing Plaintiffs' Motion for Leave to File Additional Affidavits in Opposition to Defendants' Motion to Dismiss or for Summary Judgment was filed electronically with the Court for ECF service upon:

Jayme Kantor
Assistant Attorney General
Civil litigation Division – Equity I Section
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
Jayme.Kantor@dc.gov

                                                        /s/
                                      Cyril V. Smith

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD JANIGIAN, JR., *et al.*, <br><br> Plaintiffs <br><br> v. <br><br> GREGG A. PANE, *et al.*, <br><br> Defendants. | Civil Action No. 1:07-cv-00508 <br> Judge Paul L. Friedman |

### RULE 56(f) AFFIDAVIT OF WILLIAM K. MEYER

I, William K. Meyer, being first duly sworn on oath, deposes and states:

1. I am over 18 years of age and competent to testify in this action.

2. I am an attorney representing the named Plaintiffs and the putative class members in this action. I make this affidavit of my own personal knowledge.

3. I have reviewed Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment and Memorandum of Points and Authorities ("Defs' Motion") as well as the supporting Declaration of Michael Cunningham, the Supervisory Policy and Program Analyst in the Income Maintenance Administration ("IMA") within the District of Columbia's Department of Human Services (the "Cunningham Decl.").

4. In their Motion, Defendants admit past violations of federal Medicaid law in the disallowance of a benefit for beneficiaries' pre-eligibility medical expenses ("PEME") when calculating patient pay amounts (*i.e.*, a patient's contribution to the cost of his or her medical care), but assert that they have changed their policies, forms, and procedures to prevent future denials of the PEME deduction. *See* Defs' Motion at 11

EXHIBIT A

1913215.1

("the District has altered its conduct as relates to the basis of the claims"). To support that claim, Mr. Cunningham in his Declaration asserts:

- "The District has taken measures to prevent this type of allowable deduction from being missed for other long term care Medicaid patients. On April 13, 2007, the IMA payability form was adjusted to include a line for medical expenses such as the ones described in Plaintiffs' complaint and instructions on the new form from the IMA administrator." Cunningham Decl. ¶ 8

- "IMA has meet with nursing home representatives to review the revised patient payability forms as part of new training procedures and has pointed out that prior uncovered medical expenses can be deducted from patient payability." Cunningham Decl. ¶ 11

5. Counsel have not yet held their Rule 26 meeting in this action and, as a result, there is no discovery order and no discovery is currently permitted. Thus, Plaintiffs have been precluded from taking discovery concerning, *inter alia*, the assertions of Mr. Cunningham as to the alleged changed practices of Defendants.

6. However, Plaintiffs' counsel have recently became aware of instances where IMA has acted contrary to Mr. Cunningham's assertions. On August 12, and 13, 2008, I spoke with two executives of nursing homes operating in the District of Columbia concerning Defendants' actual policies and practices regarding the PEME benefit. (My calls were prompted by the fact that I learned, in the last ten days, that District policy might not have changed.) Both executives contradicted Mr. Cunningham's statements above, but both were unwilling to provide an affidavit in this matter, or even to allow me to identify them in this Affidavit, because of their fear of retribution by District officials. As the first executive stated: "I've dealt with these people. I know what they'll do. I have a payroll to meet, and I can't stick my chin out. They'll jerk me around and find some excuse for denying me reimbursement."

2

7. This first executive is CEO of a non-profit nursing home in northwest Washington with more than 100 beds. His stated that his facility attempts to time patient Medicaid applications to follow immediately the end of a patient's ability to pay for services, so that there are no unpaid nursing home bills as of the date of Medicaid eligibility. However, despite their best efforts, his facility still has cases of a "gap" between private pay and Medicaid eligibility, resulting in incurred but unpaid nursing home bills. During the last 12 months on more than one occasion, his facility has applied to have IMA include the amounts of these incurred but unpaid PEME in its calculation of patient pay amounts, but in all instances, IMA has refused. According to this executive, IMA has told the facility that its policy is to allow a PEME deduction only for outside medical costs in the community (e.g., dialysis) and to deny a PEME deduction for "room and board" by the nursing facility. This executive explained that, at his and all other nursing home facilities, "room and board" comprise the bulk of nursing care provided to patients, i.e., a bed, 24-hour nursing care, food, and other related aspects of custodial care. By denying the PEME deduction for custodial "room and board," this executive explained that IMA has effectively "nullified" and "gutted" the PEME deduction.

8. The second executive is CFO of a non-profit nursing home in northwest Washington with less than 100 beds. He stated that he was aware of the District's past practice of denying the PEME benefit but, contrary to Mr. Cunningham's assertions, there had been no meetings, training, or communications from IMA about any supposed change in policy to now allow the PEME benefit. As CFO of the facility, this executive stated that he would be aware from business records maintained in the ordinary course

3

1913215.1

of business of any such contacts from IMA concerning changes in IMA's reimbursement policies.

9. In addition, filed herewith is the Affidavit of Thomas J. Hennrikus, a paralegal in the office of Ron M. Landsman, counsel for Plaintiffs. In his Affidavit, Mr. Hennrikus describes how an IMA supervisor admitted to him in connection with an application for a PEME deduction that District policy was to allow the PEME benefit only for expenses incurred in the three months prior to eligibility. *See* Hennrikus Affidavit ¶ 5.

10. The discrepancies between the actual practices by Defendants as described by the two executives and Mr. Hennrikus, and the assertions by Mr. Cunningham in his Declaration about current IMA policy and practice, create genuine disputes of material fact in this action for which discovery is needed, including:

   a. Defendants' actual policies and procedures regarding allowance of the PEME benefit;

   b. Whether Defendants deny applications for allowance of the PEME benefit where the PEME include nursing home billings for "room and board";

   c. Whether Defendants impose any other restrictions on allowance of the PEME benefit, such as restricting it to expenses incurred within three months of a nursing home patient's application for Medicaid;

   d. The number of applications made by Medicaid beneficiaries for inclusion of PEME in calculating their patient pay amount which have been filed, approved or denied since April 2007 (the date, according to Mr. Cunningham, when the District changed its forms and practices in this regard);

   e. The reasons for any denials for allowance of PEME since April 2007;

   f. The identities of all employees or agents of the D.C. Medicaid office responsible for such denials;

   g. The amount of money disallowed as a deduction for PEME in those

1913215.1

    denials; and

    h.  Other relevant matters set forth in the Rule 56(f) Declaration of Cyril V. Smith, filed in this matter on or about July 19, 2007 in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

    11.    This Affidavit is provided pursuant to Fed.R.Civ.P. 56(f) to provide additional explanation why Plaintiffs are unable to present facts by affidavits made on personal knowledge or other sworn testimony essential to justify their previously-filed Opposition to Defendants' alternative Motion for Summary Judgment, *i.e.*, because (a) discovery is not yet permitted in this case, and (b) as set forth above, nursing home executives are unwilling to provide voluntary testimony adverse to Defendants for fear of retribution, absent a subpoena or other compulsory process.

Further affiants saith not.

    I do solemnly declare and affirm under the penalties of perjury that the contents of the foregoing Affidavit are true and correct.

_____          _8/14/08_
William K. Meyer                                                 Date

1913215.1

STATE OF MARYLAND)
) SS:
HARFORD COUNTY)

Subscribed and sworn to before me, a notary public in the above-noted jurisdiction, this 14th day of August 2008.

Witness my hand and official seal.

_____
Notary Public

My Commission Expires: 10-01-2010

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RICHARD JANIGIAN, JR.**, *et al.*,<br><br>　　　　　　　　　Plaintiffs<br><br>　v.<br><br>**CARLOS CANO**, *et al.*,<br><br>　　　　　　　　　Defendants. | Civil Action No. 1:07-cv-00508<br>Judge Paul L. Friedman<br><br>Next Event:  None Scheduled |

### AFFIDAVIT OF THOMAS J. HENNRIKUS

I, Thomas J. Hennrikus, being first duly sworn on oath, deposes and states:

1.　　I am over eighteen (18) years of age and competent to make this Affidavit.

2.　　I am a paralegal in the office of Ron M. Landsman, P.A. My business address is 200A Monroe Street, Suite 110, Rockville, MD 20850

3.　　On or about July 27, 2008, in the course of my employment, I submitted an application for Medicaid benefits under the D.C. Medicaid program for Virginia Smith on behalf of our client, her daughter, Courtney Smith. Mrs. Smith is a resident of the Washington Home. The application sought benefits as of July 1, 2008, and stated that there were unpaid medical bills, which had been incurred prior to the anticipated eligibility date.

4.　　On August 7, 2008, I telephoned a supervisor at the Medicaid Long Term Care Unit in the District's Income Maintenance Administration ("IMA"), Ms. Cynthia Wiggins (202-698-4220), to inquire about the anticipated treatment of Mrs. Smith's pre-eligibility medical expenses.  I identified myself to Ms. Wiggins and reviewed Mrs. Smith's case with her. I told Ms. Wiggins that our firm had filed a Medicaid application

**EXHIBIT**

B

in July 2008 for Mrs. Smith, and that Mrs. Smith had unpaid medical bills incurred before that date. I indicated that we would submit those bills and ask that the total amount of Mrs. Smith's incurred but unpaid pre-eligibility medical expenses be deducted from Mrs. Smith's current income in determining her patient pay cost of care.

5.   Ms. Wiggins explained that the procedure for handling such pre-eligibility medical bills was to submit them for approval to Michael Cunningham, an official in the IMA. However, she said only bills for services provided within three months prior to the month of application would be approved. Ms. Wiggins stated that bills incurred earlier than that three-month would not be allowed for deduction.

Further affiant saith not.

I do solemnly declare and affirm under the penalties of perjury that the contents of the foregoing Affidavit are true and correct.

_____         8/11/08
Thomas J. Hennrikus                                  Date

STATE OF MARYLAND )
                  ) SS:
MONTGOMERY COUNTY)


Subscribed and sworn to before me, a notary public in the above-noted jurisdiction, this \_11TH\_ day of August, 2008.


Witness my hand and official seal

\_\_\_Grace M. Watfad\_\_\_
Notary Public

My Commission expires: \_9/1/09\_

3